1
2
3
4
5
6
7
8

IN THE SUPERIOR COURT OF WASHINGTON
IN AND FOR PIERCE COUNTY

9
10

CLAUDIA ARIAS, an individual,

                                        Plaintiff,

11

          v.

12
13
14
15
16
17
18
19

STATE OF WASHINGTON –
UNIVERSITY OF WASHINGTON
TACOMA ("UWT"), a state educational
institute; VERN HARNER, officially and
individually; CLAUDIA SELLMAIER,
officially and individually; ANDREA HILL,
officially and individually; KEVA MILLER,
officially and individually; and ELAVIE
NDURA, officially and individually,

                                        Defendants.

No.

**COMPLAINT FOR DISCRIMINATION
(WLAD), WASH. CONST. ART. I SEC.
11, TORTIOUS INTERFERENCE,
OUTRAGE, NEGLIGENT INFLICTION
OF EMOTIONAL DISTRESS,
NEGLIGENCE, AND 42 U.S.C. § 1983**

20
21

          Claudia Arias states the following Complaint against Defendants:

22

                              **I.        PARTIES**

23
24
25

1.01    **Plaintiff**. Claudia Arias is the Plaintiff in this matter. She was enrolled in the University of

26

Washington Tacoma's Bachelor of Art of Social Welfare program and was a student of Defendant

Vern Harner.

27
28

1.02    **Defendant**. State of Washington – University of Washington Tacoma ("UWT") is a

29

Defendant in this matter. UWT is a state-funded institution created pursuant to RCW 28B.45

30

engaged in the provision of higher education pursuant to the laws of the State of Washington.

31

1.03    **Defendant**. Vern Harner is a Defendant in this matter. Harner is an individual who is

32
33

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

employed as a faculty member at UWT. This suit is brought against Harner in Harner's official and individual capacities. Acts performed by Harner in an official capacity were performed by and on behalf of UWT. Acts performed by Harner outside the scope of Harner's employment or that abused the power of Harner's position are acts for which Harner may be liable individually or in a personal capacity.

1.04    **Defendant**. Claudia Sellmaier is a Defendant in this matter. Sellmaier is an individual who is employed as a faculty member at UWT and is a member of the Professional Standards Committee. This suit is brought against Sellmaier in Sellmaier's official and individual capacity. Acts performed by Sellmaier outside the scope of her employment or that abused the power of her position are acts for which Sellmaier may be liable individually or in a personal capacity.

1.05    **Defendant**. Andrea Hill is a Defendant in this matter. Hill is an individual who is employed as a faculty member at UWT and is a member of the Professional Standards Committee. This suit is brought against Hill in Hill's official and individual capacity. Acts performed by Hill in an official capacity were performed by and on behalf of UWT. Acts performed by Hill outside the scope of Hill's employment or that abused the power of her position are acts for which Hill may be liable individually or in a personal capacity.

1.06    **Defendant**. Keva Miller is a Defendant in this matter. Miller is an individual who is employed as a faculty member at UWT and is dean of the School of Social Work & Criminal Justice. This suit is brought against Miller in Miller's official and individual capacity. Acts performed by Miller in an official capacity were performed by and on behalf of UWT. Acts performed by Miller outside the scope of Miller's employment or that abused the power of her position are acts for which Miller may be liable individually or in a personal capacity.

1.07    **Defendant**. Elavie Ndura is a Defendant in this matter. Ndura is an individual who is

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

employed by UWT as the Vice Chancellor for Equity and Inclusion. This suit is brought against Ndura in Ndura's official and individual capacity. Acts performed by Ndura in an official capacity were performed by and on behalf of UWT. Acts performed by Harner outside the scope of Ndura's employment or that abused the power of her position are acts for which Nudura may be liable individually or in a personal capacity.

## II.     JURISDICTION AND VENUE

2.01    The Court has jurisdiction over the subject matter and parties to these proceedings.

2.02    Venue is proper in Pierce County because the causes of action arose in Pierce County.

2.03    Arias presented her claims to the Office of Risk Management, Department of Enterprise Services, on June 25, 2024.

2.04    Arias' claim form was sufficient and conformed with the requirements of RCW 4.92.100. More than sixty days has expired since the claim form was received. Defendant State UWT rejected any pretrial resolution. This lawsuit has followed.

## III.     FACTS SUPPORTING RELIEF

3.01    UWT's mission statement provides as follows:

> The primary mission of the University of Washington is the preservation, advancement, and dissemination of knowledge… As one of the nation's outstanding teaching and research institutions, the University is committed to maintaining an environment for objectively and imaginative inquiry and for the original scholarship and research that ensure the production of new knowledge in the free exchange of facts, theories, and ideas. To promote their capacity to make humane and informed decisions, the University fosters an environment in which its students can develop mature and independent judgment and an appreciation of the range and diversity of human achievement. The University cultivates in its students both critical thinking and the effective articulation of that thinking.

3.02    UWT failed to achieve its stated mission for its student Arias.

3.03    In 2015, UWT launched its Race & Equity Initiative. UWT committed that "[a]nti-racism and equity must be at the core of everything we do. We reaffirm this commitment: that together

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

we continue to combat the racism and inequities, both individual and institutional, that persist at the University of Washington and throughout our society."

3.04    UWT's Diversity Blueprint stated its number one goal as:

> Cultivate an Accessible, Inclusive, and Equitable Climate: The University must actively work to create and maintain learning, working, living, and healthcare spaces in which students, faculty, and staff from diverse backgrounds believe they can thrive. Our goal is to foster a welcoming climate that is accessible, inclusive, and equitable across our research, healthcare, virtual, and campus environments.

3.05    Defendants failed to adhere to their Diversity Blueprint when excluding Arias from the Social Work program and denying her access to academic achievement in the school of social work based upon the false narrative that she was transphobic and had framed the topic of women's rights in a "harmful" manner that was "not aligned with social work values & ethics."

3.06    Arias was born in 1977 in El Salvador. She immigrated to the United States with her family in 1981, fleeing the war.

3.07    Spanish is Arias' native language. English is her second language.

3.08    Arias spent her younger years in Southern California doing office work and later becoming a para educator.

3.09    Arias achieved citizenship in 2011.

3.10    Arias is Catholic and holds conservative values in adherence to her faith and culture.

3.11    From 2010—2019, Arias worked while taking classes at Mount San Jacinto College in California, achieving academic success with a GPA over 3.5.

3.12    Arias relocated to Anderson Island, Washington and enrolled in Pierce College to further pursue her education. She achieved academic success at Pierce College and transferred to UWT to complete her bachelor's degree in social work.

3.13    Arias earned a 3.82 GPA in Autumn 2022, 3.9 in Winter 2023, 3.85 in Spring 2023, and a

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

3.87 in Autumn of 2023, and was on the Dean's List. The lowest academic score she received at UWT was 3.3 in Harner's TSOCWF 404 course Cultural Diversity and Social Justice. In her other two Spring 2023 courses she earned a perfect 4.0.

3.14    Arias was selected for the Phi Alpha Honor Society.

3.15    Arias was part of the National Leadership Society for First Generation College Students.

3.16    But for Defendants' misconduct described further below, Arias would have fulfilled all academic requirements to receive her Bachelor of Arts Degree in Social Work from UWT, graduating with honors on the Dean's List in June of 2024.

3.17    In March 2023, Arias enrolled in "Cultural Diversity and Social Justice." This was a required course and one of the last classes she needed to complete prior to her scheduled upcoming graduation.

3.18    Defendant Harner taught "Cultural Diversity and Social Justice."

3.19    Harner is transgender. Harner works to improve the lives of queer and trans communities through advocacy and other interventions.

3.20    Harner's curriculum included a "zine" project. A zine was a mini-magazine format with illustrative headlines of a social justice subject.

3.21    The zine could be on a topic of the student's choosing.

3.22    Harner required the topic be "appropriate."

3.23    Harner gave no definition of an "appropriate" topic.

3.24    The connection of the topic to social justice was required to be "clear."

3.25    No definition was given of what constituted a "clear" connection.

3.26    Harner required the Zine include "at least one reference or resource."

3.27    In an e-mail, Harner stated [t]hough your sources aren't required to be academic, they must

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

be trustworthy sources."

3.28    Harner gave no definition of what constituted a "trustworthy source."

3.29    In an e-mail, Harner provided a link to a website with an "interactive media bias chart."

3.30    This website was to be used by the students to check if sources were "reputable."

3.31    The website was found at https://adfontesmedia.com/interactive-media-bias-chart/.

3.32    Arias chose the topic of "women's rights" for her zine.

3.33    Specifically, Arias decided to examine women's rights in prison.

3.34    Arias' research on this topic led her to discussions about the Prison Rape Elimination Act.

3.35    Arias was concerned generally with the issue of rape in women's prisons.

3.36    Harner provided the following rubric for the zine assignment:

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

VHarner | 2023 | TSOCWF 404

## Assignment 2 - Zine - Rubric

| Area | Details | Comments | Points |
|------|---------|----------|--------|
| Format & Topic | Zine is made using one 8.5x11" piece of paper folded into eights; Topic is appropriate and connection to social justice is clear; zine content is legible; student provided 6+ copies for classmates & submitted PDF online or paper copy to instructor | | ____/1 |
| Intro / Overview | Opening is brief but appropriate; Overview of the issue being responded to (what, where, when) | | ____/3 |
| Details | Basic details about movement / community response (who, what, where, when, how) are provided; additional details provide more depth and meaning | | ____/3 |
| Conclusion | The main takeaway and impact are clearly stated, overall content of zine is tied together nicely in closing statement/section | | ____/2 |
| Reference | At least one reference or resource is included (okay to just put the main URL or provide a book title etc, full APA format not needed) | | ____/1 |
| Total | | | ____/10 |

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

3.37    Arias prepared the following draft zine response to Harner's rubric instruction:



III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510



III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

Example: Woman in Prison
Poor infrastructure, unsatisfactory prison living conditions, the possibility of physical or sexual abuse, solitary confinement, intimidation and harassment by correctional officers, inadequate trauma care, and restricted access to counseling services and social support are conditions that build upon one another and exacerbate negative health outcomes for female inmates.

https://sph.umich.edu/pursuit/2019posts/inadequate-healthcare-a-significant-problem-affecting-incarcerated-women.html

The Eighth Amendment to the U.S. Constitution prohibits the infliction of "cruel and unusual punishments."

Differ

**Accommodations**

Example: Transgender
Denying her medically necessary therapeutic doses of hormone therapy and medically necessary gender expression allowances, including access to permanent hair removal, female undergarments, female canteen items, and accommodations for a female hairstyle and grooming standards, which fall short of the adequate medical care.
Ashley Diamond vs. Timothy Ward

Male prisoners may also be vulnerable and at risk of assault in the male estate. Vulnerable men may include: BAME males, old males, young males, disabled males, gay males. All these male prisoners as well as those who identify as transgender, have the right to be safe in prison.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33



According to the PREA standards, prison officials must use information from the prisoners' risk assessments "to inform housing, bed, work, education, and program assignments with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive." 28 C.F.R. § 115.42(a).

Safety

This is important for data analysis and for service planning and development. We believe that when a male is arrested, commits a crime or is imprisoned, biological sex should be recorded. However, this doesn't always happen. Some arrests and convictions of males are recorded in the female data where the male in question has a GRC, or even on the basis of self-reported gender identity. This also happens in prison in respect of incident reporting. This means that male crime is hidden in the female data.

The Public Health  Problem
The lack of access to quality health care for female inmates remains a serious issue as countless individuals continue to die or see their health status deteriorate while in prison

COMPLAINT - 11 of 47

Keep Prisons Single Sex was established in 2020 to campaign for the sex-based rights of women in prison to single-sex accommodation and same-sex searching. We also campaign for data on offending to be recorded by sex throughout the criminal justice system

https://kpssinfo.org/

https://www.who.int/news-room/fact-sheets/violence-against-women

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

3.38    Arias included in her zine, among other sources, a link to a report by James O'Keefe who had done research inside Washington correctional facilities.

3.39    The website to which Defendant Harner had directed students for checking media bias (https://adfontesmedia.com/interactive-media-bias-chart/) had both free and paid features.

3.40    The free version of https://adfontesmedia.com/interactive-media-bias-chart/ did not provide any information on James O'Keefe to suggest bias.

3.41    James O'Keefe interviewed female prison inmates in Washington who were housed with transgender women (people whose assigned or biological sex was male).

3.42    The interview responses raised concerns that individuals were manipulating the system in order to have sex with female prison inmates. An inmate's birth gender, regardless of chosen identity, presented security issues in confinement.

3.43    Arias expressed no agreement or disagreement with the sources contained within her zine.

3.44    On April 26, 2023, Harner sent an e-mail to the class about the zine assignment, stating students were required to "check in with" Harner the next day about their topics.

3.45    On Thursday, April 27, 2023, Arias brought a draft of her zine to class for review and feedback by Harner.

3.46    Harner reviewed the zine and provided negative feedback that was unclear.

3.47    Harner displayed examples that did not clarify what Harner found objectionable.

3.48    Arias queried Harner, "I am confused, I don't understand how this is not a community response, this is a social justice issue, it's something that is happening to women in prison." She then repeated, "I don't understand, I'm confused as to what I'm doing wrong.

3.49    Harner reacted negatively to Arias' query. Harner stood up dramatically, and with a flared arm and in a loud tone pronounced, "this is targeting transgender."

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

3.50    Harner then quickly backed into the desk/podium with an exaggerated response conveying disdain towards Arias and her zine.

3.51    Another student asked for help, and Harner said, "not right now, give me a minute," dramatizing Harner's response to Arias with an unprofessional display of feigned injury that was clearly biased and without any objectivity or clear educational purpose.  Harner was belittling and attempting to humiliate Arias.

3.52    Arias collected her belongings to go to her next class, feeling disparaged, insulted, and ostracized.  The exchange disrupted Arias' learning and interfered with her educational goals.

3.53    On the way to her next class, Arias remembered she had an assignment to turn in to Harner and returned to the classroom.

3.54    When Arias returned, she asked Harner if she could have her draft zine reviewed later that day with Harner one-on-one.

3.55    Harner said "I am unavailable for additional meetings this afternoon," and did not offer any other time.

3.56    Arias asked if Harner could schedule feedback for the following Tuesday.

3.57    Harner discouraged Arias saying, "I am not sure right now."

3.58    Approximately one and a half hours later, Harner e-mailed Arias the following:

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

**W**

Claudia Arias <arias1@uw.edu>

## Following up from class today (404B)
2 messages

Vern Harner <vharner@uw.edu>                                    Thu, Apr 27, 2023 at 2:12 PM
To: arias1@uw.edu
Cc: Claudia Sellmaier <sellmaic@uw.edu>, Chris Barrans <barransc@uw.edu>

Hi Claudia,

I am unavailable for additional meetings this afternoon. If you'd like to talk about any concerns or questions you have, you can email Dr. Sellmaier (chair of the BASW program) or Chris Barrans (your faculty advisor) -- I've copied both of them on this email.

To reiterate from our conversation in class today: violence against women is an important topic and there are many ways that community members have responded to this issue. However, the current discussion and framing of the topic that I saw in your project today is harmful and not aligned with social work values & ethics (source 1, source 2, source 3).

While it is your choice of whether to continue with this topic or make adjustments, the current language/framing in your project (that I saw today) means that it is not a zine that will be able to be shared during our informal presentations next week on Thursday.

As social workers and social work students, the expectation is that we approach topics we are unfamiliar with by seeking to understand and striving to align our practice skills and knowledge with our professional values and standards. This includes conversations and discussions in the classroom. There is more information in the links above and I am always happy to provide more resources or talk about the intersection of trans rights and women's rights when that conversation is approached appropriately and in good faith.

Dr. Vern

--
**Vern Harner, PhD**
Assistant Professor | UWT School of Social Work & Criminal Justice
Co-Chair | LGBTQ Caucus of Faculty/Students in Social Work
VernHarner.com | pronoun: they

3.59    The e-mail from Harner stated, "the current discussion and framing of the topic that I saw

in your project today is harmful and not aligned with social work values & ethics."

3.60    Harner did not explain how Arias' project was "harmful."

3.61    Harner did not explain how Arias' zine was "not aligned with social work values & ethics."

Harner labeled Arias as inappropriate in her zine communication, and her actions not in "good

faith." Both criticisms and characterizations were false.

3.62    The e-mail from Harner contained links to three "sources."

3.63    The three "sources" were: a webpage of the National Association of Social Works'

(NASW) Code of Ethics (https://socialworker.org/About/Ethics/Code-of-Ethics/Code-of-Ethics-

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

English/Social-Workers-Ethical-Responsibilities-to-Clients); a webpage of the NASW called "Sexual Orientation and Gender Diversity" (https://www.socialworkers.org/Practice/LGBTQIA/Sexual-Orientation-and-Gender-Diversity#:~:text=Social%20workers%20have%20an%20ethical,sexual%20orientation%2C20and%20sex%20characteristics.); and an article published on the ACLU's website "Trans Rights are Women's Rights" (https://www.aclu.org/news/lgbtq/rights/trans-rights-are-womens-rights).

3.64    None of these "sources" addressed what resources were appropriate to use in a social welfare class assignment.

3.65    None of these "sources" prohibited a social welfare student from discussing transgender issues in confinement or conveying reported complaints of exploitation and safety concerns expressed by women in prison.

3.66    Arias never communicated any personal belief that transgender people fabricated gender preferences or were otherwise "faking it."

3.67    Arias never communicated that transgender people were less deserving of recognition - social or political.

3.68    On the second page of Arias' draft zine, she observed three examples of situations in prison that identified social welfare issues.

3.69    One of the examples concerned access to medical care: "[t]ransgender. Denying her medically necessary therapeutic doses of hormone therapy and medically necessary gender expression allowances, including access to permanent hair removal, female undergarments, female canteen items, and accommodations for a female hairstyle and grooming standards, which fall short of the adequate medical care. Ashley Diamond vs. Timothy Ward."

3.70    Arias expressed to Defendants in an October 31, 2023, e-mail that she "vehemently

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

oppose[s] all forms of discrimination, including transphobia."

3.71    In Arias' admission essay for the social welfare program she wrote, "I feel that all people should be treated with respect and dignity and their life shall be valued as I value my own."

3.72    In the April 27, 2023 e-mail from Harner, Harner directed Arias to Defendant Sellmaier or Professor Chris Barans if she had any more questions or concerns. Harner was unavailable to Arias. Harner made Arias feel unwelcome in class, the department, and on campus. Harner filed a fabricated and unwarranted professional standards complaint against Arias.

3.73    On Monday, May 1, 2023 at 11:23 a.m., Arias sent an e-mail to Sellmaier asking to meet.

3.74    Arias was scheduled to meet Sellmaier on May 2, 2023, at 12:30 p.m. Arias expected Sellmaier to assist in debunking Harner's complaints and otherwise diffusing Harner's animus.

3.75    At 11:59 a.m. on May, 1 2023, before Arias had any opportunity to be heard or meet with Sellmaier, Arias received an e-mail from Defendant Andrea Hill with the subject "Professional Standards Committee – Your Attendance Required.

3.76    The May 1, 2023, e-mail from Hill stated "[t]here has been a request to convene the Committee to discuss some issues related to TSOCWF40 [Harner's class]." This e-mail was obscure and gave insufficient notice to Arias of any professional standards complaint, its content, or the purpose and objectives of the meeting.

3.77    When Arias received this e-mail, she felt shocked and could not believe it. She was not given sufficient notice nor a fair opportunity to prepare. She did not have any knowledge of what offended Harner or anyone else or why she would have to defend herself before the professional ethics committee.

3.78    Arias replied to the May 1, 2023, e-mail from Hill noting her availability for the required meeting and explaining that she was meeting with Sellmaier the following day to discuss Arias'

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

concerns about Harner.

3.79   On May 2, 2023 Arias met with Sellmaier.

3.80   At the beginning of the May 2, 2023, meeting, Sellmaier told Arias she had spoken to Harner and was already aware of the issue. Sellmaier was unwelcoming and had adopted Harner's animus before Arias was given any opportunity to speak.

3.81   As Arias talked about the draft zine, she attempted to explain to Sellmaier that she did not understand why she was being sent to the Professional Standards Committee because she did not have an opportunity to review any complaint from Harner with Harner, which was a pre-requisite to any professional standards involvement.

3.82   A document titled "University of Washington Tacoma Social Work and Criminal Justice Professional Standards Committee" states, "[t]he Professional Standards Committee (PSC)… is a body of faculty whose role is to address concerns that cannot be resolved by those directly involved in the situation… Those individuals who are directly involved should make a concerted effort to resolve the concern prior to a referral to the PSC."

3.83   After Arias expressed that she did not understand why she was being sent to the PSC, Sellmaier accused her of being transphobic.

3.84   When Sellmaier accused Arias of being transphobic, Arias felt offended, attacked, belittled, and overwhelmed.

3.85   When Arias tried to say anything to defend herself, Sellmaier repeatedly insulted Arias with the offensive slur accusing Arias of being transphobic.

3.86   When Arias pointed out to Sellmaier that the professional standards policy had a requirement of exhausting other avenues, Sellmaier was dismissive and said the document was irrelevant, saying "[d]on't follow what's on here."

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

3.87    Arias asked Sellmaier to put the correct information in writing, but Sellmaier disregarded this request for clarification.

3.88    Sellmaier told Arias, "[i]t is not the end of the world."

3.89    On May 16, 2023, Arias met with the following individuals over Zoom: Hill, Sellmaier, Harner, and Roseanne Martinez, a student advocate."

3.90    Hill started the meeting by stating Arias' topic was extremely transphobic.

3.91    When Hill made this comment, she had not seen Arias' draft zine.

3.92    Harner then stated Arias' topic was not aligned with social work values.

3.93    Harner never explained how Arias' assignment did not align with social work values.

3.94    Arias informed everyone in the meeting that she was not given an opportunity to resolve the issue with Harner before being referred to the PSC. Arias referenced the professional standards policy.

3.95    Arias was not given the right or the opportunity to speak to anyone about her draft zine prior to being compelled to appear before a hostile professional standard committee that had already assimilated Harner's hostile animus and accusatory tone.

3.96    Arias expressed that her ability to learn was being compromised and that she did not understand what it was she had done wrong or that conveyed any hostility towards transgender people.

3.97    Arias explained that English was not her first language, that Spanish only uses two pronouns, and that being constantly interrupted to correct her pronoun usage made it difficult for her to think clearly and to speak.

3.98    Arias further told the committee that her religious beliefs influenced her viewpoint on gender identity.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

3.99    Having a religious belief about gender identity does not make an individual transphobic.

3.100    Arias asked the committee to respect her religious and cultural background.

3.101    The attendees other than Arias left into a private chat room for approximately 10 minutes.

3.102    When the other attendees returned to the meeting, they informed Arias that she was transphobic and was not aligning with social work values or justice.

3.103    Again, Arias felt offended, attacked, belittled, and overwhelmed.

3.104    On May, 25, 2023, Arias received an e-mail from Hill containing "requirements for moving forward."

3.105    The "requirements for moving forward" were that Arias write essays discussing "Social Work's Responsibilities to Trans Individuals" and "Ethical & Professional Behavior and Communication."  Arias understood she was to assimilate her views to those of Harner and communicate as dictated by Harner and the PSC.  Their demands conflicted with Arias' cultural and religious beliefs and were biased and discriminatory.

3.106    Based on the PSC's treatment toward her, Arias was convinced she was not being heard, nor respected because of her conservative values grounded in her race and religious beliefs.

3.107    Based on the PSC's disregard of their own standards and refusal to respect her, Arias believed she would be dropped from the program whether she wrote the essays or not.

3.108    Arias posed questions to clarify expectations that were dismissed or ignored.

3.109    The only direction Arias received was to reflect on herself.

3.110    On August 27, 2023, Arias reported the situation by e-mail to Defendant Ndura, Vice Chancellor for Equity and Inclusion, and Defendant Miller, MSSW Dean & Professor, School of Social Work & Criminal Justice.

3.111    On August 29, 2023, Miller responded to the e-mail, saying "[y]ou are strongly encouraged

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

to follow the requirements as laid out in the letter from the PSC. I understand you have posed several questions, most of which you are required to reflect upon and answer independently based on the communications with Dr. Harner, Dr. Sellmaier, and the PSC."

3.112   On September 6, 2023, Arias met with Ndura. After Arias spoke, Ndura stated, "how would you feel if someone came up to you and said you were Asian."

3.113   Arias responded that was not something that would have a negative impact on her. She stated she would let the person know where she is from and proceed with a conversation.

3.114   Ndura told Arias she had to reflect on herself because Arias did not know if she transphobic until she would reflect and think of how harmful she can be.

3.115   At no time did Arias refuse to "reflect" on herself.

3.116   On October 31, 2023, Arias decided against writing the compelled essays because the expected content would require an admission of wrongdoing, when she did not engage in wrongdoing, and would otherwise discriminate against her religious and race-based beliefs in violation of her rights.  The faculty members involved refused to clarify how her draft zine did not align with social work values or what unbiased position she could express in such writings that would align with social work values.

3.117   On October 31, 2023, Arias e-mailed Hill, Harner, Sellmaier, and student advocate Roseann Martinez and informed them that she could not author writings prompted by false accusations of wrongdoing.

3.118   On November 27, 2023, Arias had a final Zoom meeting with Hill and the other faculty members.

3.119   In the November 27 meeting, Arias mentioned not receiving a response or clarification regarding the purpose of the essays.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

3.120   In the November 27 meeting, Arias also told Hill and other faculty members that they were discriminating against her religious beliefs and culture and infringing on her First Amendment rights.

3.121   On November 29, 2023, Defendants received further information regarding Arias' religious beliefs and the extreme importance of those beliefs in guiding her actions.

3.122   Once again, these deeply held religious beliefs did not comport with the orthodox views at UWT.

3.123   When Arias had transferred to the BASW program, she was required to get a COVID-19 vaccine.

3.124   Arias made the decision to get a COVID-19 vaccine, proof of which was provided to UWT.

3.125   Arias regretted that decision.

3.126   When Arias was required to get another round of COVID-19 vaccine, she consulted her pastor.

3.127   After this consultation, Pastor Bradly D. Fogal wrote a letter explaining that Arias needed an exemption from the vaccine requirement.

3.128   In this letter, which was provided to UWT and the BASW program, Pastor Fogal explained that receiving the COVID-19 vaccine was in direct conflict with Arias' religious beliefs, namely that it is morally wrong to receive a vaccine that used fetal cells in the development stage.

3.129   Because she believed receiving the vaccine was morally wrong, Arias repented for her initial decision to receive the vaccine.

3.130   Arias sought exemption from any vaccine requirement by Defendants.

3.131   Therefore, Defendants knew Arias had these deeply and sincerely held religious beliefs.

3.132   Arias never received a decision from Defendants regarding her request for a religious

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

exemption.  Defendants did not engage in any interactive process.

3.133   On December 8, 2023, Hill and Miller dropped Arias from all future classes, terminated her participation in the internship program, and dropped her from the social welfare program.

3.134   These actions left Arias unable to complete her degree with only four classes left.

3.135   Arias has inquired with three universities about completing her bachelor of social work.

3.136   Grand Canyon University told Arias she would have to reapply and start the program over.

3.137   Pacific Lutheran University told Arias she would be better off staying with Defendant University of Washington.

3.138   South Eastern University told Arias she would need to start the entire program over.

3.139   As a working mother, Arias spent fourteen years working toward her degree.

3.140   It is economically unfeasible for Arias to start over on her degree program.  She has been denied access to the social work field and has been denied an education in social work.

3.141   UWT and the BASW program arranged a practicum (internship) for Arias at Consejo Counseling and Referral Services, to begin in January 2024. The internship was intended to transition to full-time employment as a social worker at a pay rate commensurate with that credential.

3.142   As a consequence of Defendants dropping Arias from the BASW program, Consejo Counseling was not able to work with Arias to fulfill the agreed upon internship.

3.143   Consejo Counseling opted to employ Arias in an administrative role.

3.144   Because Arias does not have bachelor's degree in social work, she is paid less for her work at Consejo Counseling.

3.145   Because Arias does not have a bachelor's degree in social work, she is limited in the positions she can work at Consejo Counseling.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

3.146  Defendants' actions have prevented Arias from achieving her dream of serving her community as a social worker.

3.147  Defendants have ostracized Arias from her peers through shaming, isolation, dismissiveness, and denial of access to facilities and services and gainful employment and credentialling as a social worker.

3.148  Defendants have falsely accused Arias of transphobia and of lacking moral standards to qualify as a social worker.

3.149  Arias has suffered the usual and ordinary insults and injuries associated with discrimination.

3.150  Arias has treated her emotional injuries that have manifested physically with religious and secular behavioral health providers, and continues to do so.

3.151  Defendants have caused Arias to suffer economic losses in the past and continuing into the future to include past and future wage and benefit losses.

3.152  Defendants have caused Arias to suffer non-economic losses in the past and continuing into the future.

## IV.    CAUSES OF ACTION

The above factual allegations are incorporated into the following causes of action:

### First Cause of Action
*Washington Laws Against Discrimination ("WLAD") – RCW 49.60*

4.01    RCW 49.60.010 prohibits discrimination against any inhabitant because of creed.

4.02    RCW 49.60.010 prohibits discrimination against any inhabitant based upon race and national origin.

4.03    RCW 49.60.010 prohibits discrimination against any inhabitant based upon sex or sexual orientation.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

4.04    Arias is a Washington inhabitant.

4.05    "Creed" refers to religious belief.

4.06    Arias is Catholic and holds conservative values consistent with her faith. This includes beliefs that equate birth anatomy with gender that is either male or female and that COVID vaccinations may be unconscionable. She chose not to continue with COVID vaccinations and sought religious exemption. She believes in female empowerment and equity.

4.07    Arias immigrated from El Salvador. She is Hispanic. English is her second language. Based upon her culture, she learned to speak English using the Spanish recognized male and female pronouns when translating. Her election not to use the pronoun "they" when referencing a singular person was grounded on her Hispanic race as well as her fundamental religious beliefs.

4.08    Arias is a female who expressed academic interest in the vulnerability of women in confinement to include those who encounter men posing as transgender to exploit sexually incarcerated women as well as other empowerment issues for transgender populations in confinement.

4.09    Arias is a protected class member for purposes of WLAD.

4.10    Defendant Harner holds a hostile animus toward conservatives like Arias. Harner is a transgender activist. According to UWT, Harner has said "I'm out as trans"; "I'm embedded in the community and by doing trans-focused research I can offer additional insight because I live and breathe trans culture"; "[t]here is a need to support trans scholars, particularly trans scholars of color"; "[p]olicy is Vern Harner's love language. To me it means, walk the walk. Put your words into action through policy to enact substantive change for communities that we need to see"; "Harner is doing that with their research and with advocacy within UW." https://www.tacoma.uw.edu/news/right-fit-0.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

4.11    UWT characterizes Harner as the "The Right Fit" on its website.

4.12    Harner uses the pronoun "they" and expected Arias to use "they" rather than "she" when referencing Harner. Arias used "she," believe the pronoun proper grounded upon her religious beliefs and race.

4.13    UWT published a Harner podcast interview labeled "Beining Themself" on "Paw'd Defiance" wherein Harner stated an affinity to "prank and to mess with people," particularly on transgender topics.

4.14    Harner was intolerant of Arias who did not embrace Harner's transgender activism or otherwise share Harner's belief that "they" was the proper and exclusive pronounce reference for Harner.

4.15    Harner abused Harner's power as an educator to discredit Arias because of Arias' conservative values grounded in cultural, religious, and female gender-specific beliefs. Harner created a hostile educational environment intolerant of religious and race-based beliefs distinct from Harner's own or that did not embrace Harner's transgender activism. Those students willing to espouse Harner's transgender language and beliefs were given preferential treatment and attention while Defendants expelled Arias. Harner gave special preference to transgender students and those students aligning their interests with Harner's transgender agenda.

4.16    Harner took offense to Arias' zine on the topic of transgender issues in confinement. Harner attacked Arias, labeling Arias and her material transphobic. Harner shunned Arias publicly in the classroom in front of Arias' peers. Harner made it known that Arias and her beliefs were unwelcome. Harner withheld needed academic supports. Harner disparaged Arias to the administration and pressed for and achieved Arias' removal from the social work program.

4.17    Defendants UWT and Sellmaier, Hill, Miller, and Ndura created a hostile educational

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

environment, through repetitive and continuing acts and omissions, slighting, patronizing, and punishing Arias for her religious and race-based beliefs.

4.18    Defendants treated Arias disparately when removing Arias from UWT School of Social Work without any meaningful opportunity to be heard on the false allegations that she was "transphobic" and that her work product did not "align with social work values."

4.19    Defendants ostracized and singled out Arias, demanding she affirm Harner's transgender advocacy, repent for using "she" instead of "they," and otherwise espouse transgender doctrine that conflicted with her religious and race-based beliefs.

4.20    Defendants failed to accommodate Arias and her religious and race-based beliefs.

4.21    Defendants misinterpreted and misapplied social work ethics and values in a discriminatory manner.

4.22    Defendants failed to engage in the required interactive process with Arias to accommodate her religious and race-based beliefs.

4.23    Defendants engaged in unlawful discrimination.

4.24    WLAD prohibits discrimination in higher education.

4.25    WLAD prohibits discrimination based on contract.

4.26    WLAD prohibits discrimination in places of public accommodation.

4.27    Defendant UWT is a provider of higher education based on contract in places of public accommodation.

4.28    Defendants Harner, Sellmaier, Hill, Miller, and Ndura are "persons" subject to the anti-discrimination provisions of WLAD in an individual capacity.

4.29    All Defendants may be deemed state actors for purposes of RCW 49.60.400 which prohibits preferential treatment to any individual or group based upon race, ethnicity, national

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

origin, or sex in public education and contracting. All Defendants sought preferential treatment for students who aligned their speech and work product with that of Defendants' discriminatory beliefs.

4.30     Defendants attempted to force Arias to conform to align with their discriminatory beliefs. When she respectfully refused, Defendants punished her by removing her from the social work program and denying her access to her declared major, licensure as a social worker, and employment as a social worker.

4.31     All Defendants are persons who engaged in the unfair practices of aiding, abetting, encouraging, and inciting the commission of unfair practices in violation of WLAD, RCW 49.60.220.

4.32     All Defendants engaged in unfair practices in violation of RCW 49.60.215 when committing acts that directly and indirectly distinguished, restricted, and discriminated against Arias because of her religious beliefs and her race, ethnicity, and national origin.

4.33     For discriminatory reasons, all Defendants refused and withheld from Arias admission and presence in public accommodation and assemblage at UWT baccalaureate program for social work and her internship to fulfill her social work educational requirements for discriminatory reasons.

4.34     Arias contracted with UWT to obtain her academic credentials in the field of social work.

4.35     Defendants conditioned Arias' success and achievement of a bachelor's degree in social work on her suspending her religious beliefs and adopting Defendants' beliefs without accommodation. Defendants further conditioned Arias' success and achievement of a bachelor's degree in social work on her voluntary use of the improper pronoun "they" when referencing Harner when such use was contrary to Arias' dialect or native language to include education in proper use of the English language and her religious beliefs.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

4.36    Defendants violated WLAD when labeling Arias as "transphobic" because she used proper pronouns to include "she" when referencing Harner; when reprimanding her for expressing interest in exploring transgender issues in secure facilities grounded on male versus female anatomy; and when demanding she suspend her religious beliefs and write a paper disavowing her religious and cultural beliefs.

4.37    Defendants discriminated unlawfully against Arias.

4.38    Defendants created a hostile education environment in violation of WLAD.

4.39    Defendants treated Arias disparately from other students who did not share her religious beliefs or Hispanic background with English as a second language.

4.40    Defendants failed to accommodate Arias.

4.41    Defendants' discriminatory acts began on or about April 27, 2023, and continue to the present date and indefinitely into the future.

4.42    As a direct and proximate result of Defendants' discrimination, Arias has been harmed and damaged, in the past and continuing into the future, all in an amount to be proven at the time of trial.

4.43    As a direct and proximate result of Defendants' discrimination, Arias has incurred attorney's fees and costs all in an amount to be proven at the time of trial.

**Second Cause of Action**
***Wash. Const. Article I, Section 11***

4.44    Washington Const. art. I, Section 11 protects the free exercise of religion.  Arias was entitled to absolute freedom of conscience in all matters of religious sentiment, belief and worship.

4.45    Arias brings a direct cause of action to enforce her state constitutional rights to free exercise of religion against Defendants.  Defendants were state actors abusing the power of their state offices at UWT.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

4.46    Arias holds sincere religious beliefs that gender is determined at birth and that use of the improper pronoun "they" when referencing a single individual espouses and communicates beliefs that are contrary to her religious teachings.  Arias further believes that her zine presented genuine issues of social justice that comport with her religious beliefs and that she was punished and expelled based upon that content and her communications to include expressing religious objection to vaccination.

4.47    Defendants labeled Arias "transphobic" and her beliefs out of line with social work values and otherwise condemned her for communicating her beliefs and advocating against assimilation to Defendants' beliefs that did not align with her religious sentiments.

4.48    Defendants' expectation that Arias use the improper pronoun "they" when referencing Harner or be deemed "transphobic" burdened Arias' free exercise of religion.

4.49    Defendants' demands that Arias write essays aligning her speech and communications with their vague, ambiguous, and transgender propaganda and advocacy as a condition of her being allowed to complete her education and graduate with a social work or social welfare credential burdened her exercise of religion.

4.50    Defendants placed a substantial burden on Arias exercising her religion because they refused Arias access to the field of social work/welfare because they took offense at her zine, and that she would not align her speech with their speech and would not disavow her religious faith and integrity in her speech and communications to adopt their narrow and prejudicial perspectives on social work values.  Defendants imposed a complete bar or ban on Arias, blacklisting her and barring her from social work entirely.

4.51    Social work requires recognition of differing values that are based in religion.

4.52    Social work does not require use of the improper pronoun "they" when referencing Harner

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

or any other person who opposes gender specific pronouns. Social work does not require COVID vaccination.

4.53    Social work does not require a worker assimilate through "self-contemplation" or otherwise disavow her religious beliefs.

4.54    Defendants' total moratorium on Arias completing her social work program and graduating with her class violated her religious freedoms.

4.55    As a direct and proximate result of defendants' religious discrimination in violation of Washington Const. art. I section 11, Arias has been harmed and continues to suffer harm.

4.56    Arias seeks an order invalidating defendants' conditions upon her completing her social work education, and further an order reversing her expulsion and reinstating her into the program to complete her degree without further discrimination or blacklisting, recrimination, or retaliation.

4.57    Arias seeks to enjoin any and all future violations of her religious freedoms by Defendants.

**Third Cause of Action**
*42 U.S.C. § 1983 – First Amendment Right to Free Exercise of Religion*

4.58    Defendants Harner, Sellmaier, Hill, Miller, and Ndura violated Claudia Arias' free exercise of religion in violation of the United States Constitution, which is actionable under 42 U.S.C. § 1983.

4.59    Color of Law.  Defendants are persons who acted under color of law.  Defendants are those individuals employed by the State who abused the power of their state offices in a personal capacity to administer policies of the university that conflicted with Arias' religious freedoms, and had final decision making authority when harassing, intimidating, and expelling Arias from UWT – social work bachelor's program on false allegations that she was "transphobic" because Arias used the pronoun she in reference to Harner rather than Harner's desired improper pronoun "they" and because Arias prepared a zine and defended it that referenced transgender safety issues in

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

confinement.  Arias did not use the pronoun "they" when referencing Harner because that word choice messaged beliefs inconsistent with her religious values and cultural background.  The content of her zine was not transphobic and was consistent with her religious values and beliefs in advocating for women and protecting them from exploitation and abuse.

4.60    Defendant Harner's actions in creating a hostile educational environment where Arias' religious expression was unwelcome by belittling Arias in the classroom and before her peers, publishing communications condemning Arias and mischaracterizing Arias' actions in a negative fashion, demanding expression that adopts and aligns with Harner's transgender advocacy, refusing to recognize Arias' sincerely held religious beliefs, shunning Arias and failing to offer any intelligible explanation of what Arias had done wrong, referring Arias to a professional standards committee then advocating for Arias' condemnation, and advocating in the professional standards meeting for adverse action against Arias that led to conditioning Arias' success on intolerable punishment and conformance with Harner's values without regard to Arias' religious expression, and taking adverse action against Arias to expel her and blacklist her from obtaining a social work education at UWT among other actions to include those to be further discovered, were a direct and proximate cause of harm and damages suffered by Arias.

4.61    Defendant Sellmaier's actions in creating a hostile educational environment where Arias' religious expression was unwelcome, condemning Arias, refusing to recognize Arias' sincerely held religious beliefs, failing to offer any intelligible explanation of what Arias had done wrong, repeatedly calling Arias "transphobic," labeling use of a proper pronoun in reference to Harner rather than Harner's desired "they" as transphobic and otherwise meriting punishment, advocating in the professional standards meeting to take adverse action against Arias, and taking adverse action against Arias to ultimately expel her and blacklist her from obtaining a social work

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

education at UWT among other actions to include those to be further discovered, were a direct and proximate cause of harm and damages suffered by Arias.

4.62    Defendant Hill's actions in creating a hostile educational environment where Arias' religious expression was unwelcome, refusing to recognize Arias' sincerely held religious beliefs, failing to offer any intelligible explanation of what Arias had done wrong, repeatedly calling Claudia Arias "transphobic," participating in the PSC meeting that led to adverse action being taken against Arias, and finally kicking Arias out of the BASW program, among other actions to include those to be further discovered, were a direct and proximate cause of harm and damages suffered by Arias.

4.63    Defendant Miller's actions in creating a hostile educational environment where Arias' religious expression was unwelcome, refusing to recognize Arias' sincerely held religious beliefs, failing to offer any intelligible explanation of what Arias had done wrong, and finally kicking Arias out of the BASW program among other actions to include those to be further discovered, were a direct and proximate cause of harm and damages suffered by Arias.

4.64    Defendant Ndura's actions in in creating a hostile educational environment where Arias' religious expression was unwelcome, refusing to recognize Arias' sincerely held religious beliefs, failing to offer any intelligible explanation of what Arias had done wrong, and calling Arias "transphobic," and generally blacklisting her from achieving academic success in the field of social work, among other actions to include those to be further discovered, were a direct and proximate cause of harm and damages suffered by Arias.

4.65    Arias' First Amendment Right to Free Exercise of Religion was violated by each individual Defendant when they:

(a)    Repeatedly insulted Arias with the label "transphobic," solely on the basis of her expressed,

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

sincerely held religious beliefs about gender;

(b) Attempted to force Claudia Arias to write essays acknowledging "gender diversity," knowing the expression of such a belief was contrary to Claudia Arias' expressed, sincerely held religious beliefs about gender; and

(c) Dropped Claudia Arias from her internship and the social welfare program because of her religiously-motivated beliefs about gender and refusal to deny those beliefs.

4.66   Arias was damaged by these violations as she can no longer complete her social welfare degree in an economically feasible manner, and she has been denied a social work position that she would have been fulfilling had defendants not infringed upon her rights.

4.67   Arias was also damaged emotionally by the many personal attacks made upon her by Defendants for her religious viewpoints.

4.68   Defendants acted with malice or callous indifference by repeatedly insulting Arias' beliefs and refusing Arias' repeated requests that her religious beliefs be respected.

4.69   Arias seeks an award of damages, past and future, penalties, fees, and costs, and injunctive relief so that she may complete her degree in social work at UWT without continuing infringement upon her religious beliefs.

**Fourth Cause of Action**
*42 U.S.C. § 1983 – First Amendment Right to Freedom of Speech (Retaliation)*

4.70   Defendants Harner, Sellmaeir, Hill, Miller, and Ndura violated Claudia Arias' free speech rights under the United States Constitution, which is actionable under 42 U.S.C. § 1983.

4.71   Defendants acted under color of state law as each were persons who held positions of authority at UWT, a state university, where they abused the power of their position to take adverse action against Arias because she would not conform her speech and redress to align with their political views on transgender issues.  Specifically, Arias referred to Harner using the pronoun

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

"she" rather than Harner's desired improper pronoun "they" and Arias prepared a zine and advocated in support of its content that defendants labeled "transphobic" and inconsistent with social work values, and then demanded she assimilate to their views and write a paper that conformed with their beliefs and rejected Arias' beliefs.

4.72   Arias engaged in protected speech and redress when presenting her zine at UWT and when defending it and when seeking redress by speaking to defendants and advocating for herself before the professional standards committee and via e-mail wherein she sought to be heard and respected on her views of public concern.

4.73   Arias did not engage in protected activities that were disruptive.  Arias directed her protected speech and redress to defendants in a manner that aligned with UWT policy.  Arias asserted that defendants were disregarding UWT policy when disregarding the requirement that Harner make good faith efforts to resolve any issues with Arias.  Harner shunned Arias in violation of policy and professional standards. Harner vilified Arias for no legitimate reason.

4.74   Arias' conservative views based in her religious and cultural identity in opposition to transgender advocacy views of defendants were matters of public interest.  Brandi Kruse has covered the conflict between Arias and defendants on her public podcast.  Conservative versus liberal views on transgender issues were of significant political weight during the 2024 presidential elections.

4.75   Defendants had no legitimate or justifiable grounds to demand Arias assimilate to their views or adopt their measures of transphobia, which were corrupt and wrong.

4.76   Defendant Harner's actions in refusing to allow Arias the freedom to speak according to her beliefs, and then retaliating against her for her constitutionally protected speech by referring Arias to the PSC and participating in the PSC meeting that led to adverse action being taken against

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

Arias, were a direct and proximate cause of damages suffered by Arias.

4.77    Defendant Sellmaier's actions in refusing to allow Arias the freedom to speak according to her beliefs, and then retaliating against her for her constitutionally protected speech by participating in the PSC meeting that led to adverse action being taken against Arias, were a direct and proximate cause of damages suffered by Arias.

4.78    Defendant Hill's actions in refusing to allow Arias the freedom to speak according to her beliefs, and then retaliating against her for her constitutionally protected speech by participating in the PSC meeting that led to adverse action being taken against Arias, and finally kicking Arias out of the BASW program, were a direct and proximate cause of damages suffered by Arias.

4.79    Defendant Ndura's actions in refusing to allow Arias the freedom to speak according to her beliefs were a direct and proximate cause of damages suffered by Arias.

4.80    Defendants retaliated against Arias for exercising her First Amendment Right to Free Speech when the Defendants:

   (a)  Convened a PSC meeting to take adverse action against Arias on the basis of her exercise of Free Speech; and

   (b)  Dropped Arias from her internship and the social welfare program because she exercised her First Amendment Right to Freedom of Speech in a way that was offensive to Defendants.

4.81    Arias was damaged by these violations as she can no longer complete her social welfare degree in an economically-feasible manner.

4.82    Arias was also damaged emotionally by the many personal attacks made upon her by Defendants for speaking ideas deemed offensive by Defendants and continues to be so harmed and damaged.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

4.83    Defendants acted with malice or callous indifference by repeatedly insulting Arias for speaking and seeking redress that aligned with her legitimate views and then ultimately depriving her, on the basis of her constitutionally protected speech, the ability to complete the social welfare degree she was so close to finishing.

4.84    Defendants' misconduct caused Arias to be denied an internship and employment opportunities as a social worker.

4.85    As a direct and proximate result of defendants' misconduct Arias has incurred losses and continues to incur losses, special and general, all in an amount to be proven at the time of trial.

4.86    Arias seeks to recover for her losses to include special and general damages, past and future, and penalties, fees, and costs for defendants' violations of her rights.

**Fifth Cause of Action**
*42 U.S.C. § 1983 – First Amendment Right to Freedom of Speech (Compelled Speech)*

4.87    Each Defendant was acting under color of state law, as they were acting within the scope of their employment at a state university, were engaged in administering policies of the university, and had responsibility for taking adverse actions against students like Arias on behalf of the university.

4.88    Defendant Harner's actions in referring Arias to the PSC, and participating in the PSC meeting, which led to Arias being compelled to speak contrary to her beliefs or be expelled, were a direct and proximate cause of damages suffered by Arias.

4.89    Defendant Sellmaier's actions in participating in the PSC meeting, which led to Arias being compelled to speak contrary to her beliefs or be expelled, were a direct and proximate cause of damages suffered by Arias.

4.90    Defendant Hill's actions in participating in the PSC meeting, demanding that Arias write an essay expressing ideas she did not agree with or be terminated from the program, and finally

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

kicking Arias out of the BASW program for refusing to express the compelled view, were a direct and proximate cause of damages suffered by Arias.

4.91    Defendant Miller's actions in demanding that Arias write an essay expressing ideas she did not agree with or be terminated from the program, and finally kicking Arias out of the BASW program for refusing to express the compelled views, were a direct and proximate cause of damages suffered by Arias.

4.92    Defendant Ndura's actions in demanding Arias "reflect on herself" to find out if she was "transphobic" were a direct and proximate cause of damages suffered by Arias.

4.93    Arias' speech was unconstitutionally compelled when Defendants took the following actions:

(a)    Repeatedly denigrating Arias by calling her "transphobic" when she refused Defendants' compelled speech;

(b)    Belittling Arias when she refused Defendants' compelled speech;

(c)    Singling Arias out from other students to write essays using compelled speech;

(d)    Threatening Arias with expulsion from the program if she did not engage in compelled speech;

(e)    Dropping Arias from her internship and the social welfare program because she refused to engage in compelled speech.

4.94    Arias was damaged by these violations as she can no longer complete her social welfare degree in an economically-feasible manner.

4.95    Arias was also damaged emotionally by the many personal attacks made upon her by Defendants for her refusal to speak the orthodoxy.

4.96    Defendants acted with malice or callous indifference by repeatedly insulting Arias for

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

speaking her mind and then ultimately depriving her, on the basis of her constitutionally-protected speech, the ability to complete the social welfare degree she was so close to finishing.

4.97    As a direct and proximate result of Defendants' misconduct Arias has incurred losses and continues to incur losses, special and general, all in an amount to be proven at the time of trial.

4.98    Arias seeks to recover for her losses to include special and general damages, past and future, and penalties, fees, and costs for Defendants' violations of her rights.

**Sixth Cause of Action**
*42 U.S.C. § 1983 – Fourteenth Amendment Procedural Due Process*

4.99    Defendants Harner, Sellmaier, Hill, Miller and Ndura were acting under color of state law, as they were acting within the scope of their employment at a state university, were engaged in administering policies of the university, and had responsibility for taking adverse actions against students like Arias on behalf of the university.

4.100    Arias' expression regarding gender identity was protected by the First Amendment.

4.101    Defendant Harner's actions in referring Arias to the PSC, and participating in the PSC meeting, which led to Arias being compelled to speak contrary to her beliefs or be expelled, were a direct and proximate cause of damages suffered by Arias.

4.102    Defendant Sellmaier's actions in participating in the PSC meeting, which led to Arias being compelled to speak contrary to her beliefs or be expelled, were a direct and proximate cause of damages suffered by Arias.

4.103    Defendant Hill's actions in participating in the PSC meeting, demanding that Arias write an essay expressing ideas she did not agree with or be terminated from the program, and finally kicking Arias out of the BASW program for refusing to express the compelled view, were a direct and proximate cause of damages suffered by Arias.

4.104    Defendant Miller's actions in demanding that Arias write an essay expressing ideas she did

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

not agree with or be terminated from the program, and finally kicking Arias out of the BASW program for refusing to express the compelled views, were a direct and proximate cause of damages suffered by Arias.

4.105   Defendant Ndura's actions in demanding Arias "reflect on herself" to find out if she was "transphobic" were a direct and proximate cause of damages suffered by Arias.

4.106   By expelling Arias from the BASW program for refusing to engage in compelled speech which violated her sincerely held religious beliefs, Defendants have punished Arias for engaging in expression the First Amendment protects.

4.107   The Defendants' standards by which Arias was punished are unconstitutionally vague as they relate to this issue, as there are no objective criteria, factors, or standards defining what Arias had done wrong.

4.108   This lack of objective standard allowed Defendants to punish Arias in a very damaging way based solely on their own beliefs, and on unwritten, personal interpretations of the standards, thus violating Arias' right to due process of law under the Fourteenth Amendment.

4.109   As a direct and proximate result of efendants' misconduct, Arias suffered harm and damages, past and future, all in an amount to be proven at the time of trial.

**Seventh Cause of Action**
*Outrage*

4.110   UWT, through its agents Harner, Sellmaier, Hill, Miller, and Ndura engaged in extreme and outrageous conduct against Arias in their individual and official capacities.

4.111   UWT's agents engaged in this conduct in the scope of their employment at UWT and utilizing their positions of authority at UWT, as well as the disciplinary resources at their disposal.

4.112   UWT's misconduct in repeatedly using offensive slurs against Arias, denigrating and belittling her religious beliefs, bringing punitive action against her for her sincerely-held religious

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

beliefs, and finally expelling her from the BASW program, ending her dream of becoming a social worker, went beyond the bounds of decency and was intolerable in a civilized community.

4.113   UWT's misconduct was particularly offensive because of the position of authority its agents exercised over Arias and her future.

4.114   In this case, there was repeated, damaging, highly offensive conduct engaged in by people who hold themselves out as leaders in the community, and who possessed significant authority over Arias.

4.115   According to Defendant UWT's website: "[t]he University of Washington Tacoma is committed to maintaining a campus environment that is conducive to the freedom of expression and inquiry, academic integrity and honesty, and behaviors that are free of causing harm and damage to persons or property. All members of the campus community (students, faculty and staff) have an obligation to assist in achieving this."

4.116   UWT's misconduct was particular outrageous given its stated purpose of higher education and social work values of inclusivity.

4.117   UWT's acts in repeatedly using offensive slurs against Arias, denigrating and belittling her religious beliefs, bringing punitive action against her for her sincerely-held religious beliefs, and finally expelling her from the BASW program, ending her dream of becoming a social worker, were intentional.

4.118   UWT's intentional outrageous acts were the direct and proximate cause of severe emotional distress to Arias.

4.119   As a direct and proximate result of UWT's misconduct, Arias has suffered harm and damages, economic and non-economic, past and future all in an amount to be proven at the time of trial.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

**Eighth Cause of Action**
*Negligent Infliction of Emotional Distress*

4.120   UWT, through its agents Harner, Sellmaier, Hill, Miller, and Ndura, negligently inflicted emotional distress on Arias.

4.121   UWT's agents inflicted emotional distress in the scope of their employment at UWT and utilizing their positions of authority at UWT, as well as the disciplinary resources at their disposal.

4.122   As a student in the UWT BASW program, UWT owed Arias a duty of care.

4.123   UWT's conduct in repeatedly using offensive slurs against Arias, denigrating and belittling her religious beliefs, bringing punitive action against her for her sincerely-held religious beliefs, and finally expelling her from the BASW program, ending her dream of becoming a social worker, breached that duty of care and was the direct and proximate cause of emotional distress experienced by Arias.

4.124   It was foreseeable that Arias would be harmed by these actions.

4.125   Arias' emotional distress resulted in objective symptomology that can be proven through medical diagnosis.  She suffered fear, worry, upset, anxiety, depression, sleeplessness, shame, and anger.

4.126   Arias received medical treatment related to the emotional distress.

4.127   As a direct and proximate result of UWT's negligent infliction of emotional distress, Arias was harmed and damaged, economic and non-economically, past and future, all in an amount to be proven at the time of trial.

**Ninth Cause of Action**
*Tortious Interference with Business Expectancy*

4.111 UWT, by and through its agents Harner, Sellmaier, Hill, Miller and Ndura, tortiously interfered with Arias' business expectancies and her contractual interests in her internship.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

4.128   Claudia Arias had a valid business expectancy that she would graduate with honors from UWT in Spring of 2024 and seek employment as a social worker.   Claudia Arias secured an internship, to complete her academic credentials, which was a step towards future employment as a social worker at with the internship host or other service providers.

4.129   UWT and its agents Harner, Sellmaier, Hill, and Ndura, knew that Arias expected to become a social worker for a living and that she had secured a valued practicum placement.   They knew her professional success depended upon her academic success and that her practicum was dependent upon enrollment in the academic program.

4.130   When UWT expelled Arias from the BASW program on December 8, 2023, she had already been placed in a practicum with Consejo Counseling.

4.131   It is common for students to be hired after graduation by the organization where they did their practicum.

4.132   UWT knew or should have known, that when Arias successfully complete the practicum, she would likely have a future job opportunity at that organization.

4.133   Arias is in fact currently employed at Consejo Counseling; however, she earns less and has fewer opportunities because UWT prevented her academic success when denying her academic standing to participate in a practicum and when publishing false criticisms to the effect that she lacked social work values.

4.134   UWT knew that Arias would have fewer career and economic opportunities without a social work degree and because she did not qualify academically for the competitive credentials.

4.135   UWT knew or should have known specifically that Arias would either not be placed at Consejo Counseling in a social worker role, or would have less opportunities at Consejo Counseling and elsewhere, were they to ban her from the UWT social work program.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

4.136  UWT acted intentionally in negatively impacting Arias' contractual relationship with Consejo Counseling and with regard to her broader business expectancies to work as a social worker.

4.137  UWT's interferences were for an improper purpose, namely to discriminate against Arias for her religious beliefs and retaliate against her for her constitutionally protected speech.

4.138  UWT interfered with Arias' business expectancies by improper means, namely by violating Arias' First Amendment and Fourteenth Amendment rights and otherwise engaging in unlawful harassment and prejudice. UWT blacklisted Arias from social work on false claims that she was transphobic and prejudiced.

4.139  UWT's tortious interferences were the direct and proximate cause of harm and damages suffered by Arias in the past and continuing into the future, all in an amount to be proven at the time of trial.

### Tenth Cause of Action
*Negligence*

4.140  UWT was negligent.

4.141  UWT owed Arias a duty of care.  This duty derived from the student-university relationship.

4.142  Arias was an enrolled student exposed to Harner, Sellmaier, Hill, Miller, and Ndura, UWT's agents, obligated to Arias to provide services for her to achieve academic success in conformance with the statutory and policy obligations of UWT to higher education and academic achievement.

4.143  Aspects of this duty are elucidated in UWT's own policies, as well as state statutes governing higher education.

4.144  UWT's mission statement commits it to "maintaining an environment for objectively and

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

imaginative inquiry and for the original scholarship and research that ensure the production of new knowledge in the free exchange of facts, theories, and ideas"; "foster[ing] an environment in which its students can develop mature an independent judgment and an appreciation of the range and diversity of human achievement"; and "cultivat[ing] in its students both critical thinking and the effective articulation of that thinking."

4.145  UWT's Diversity Blueprint committed Defendants to "actively work[ing] to create and maintain learning, working, living, and healthcare spaces in which students… from diverse backgrounds believe they can thrive" and fostering "a welcoming climate that is accessible, inclusive, and equitable."

4.146  RCW 28B.10.145 requires "each institution of higher education… provide professional development" the purpose of which must be "rooted in eliminating structural racism against all races and promoting diversity, equity, and inclusion while improving academic, social, and health and wellness outcomes for students from historically marginalized communities."

4.147  UWT breached its duties to Arias to maintain "an environment for objectively and imaginative inquiry and for the original scholarship and research that ensure the production of new knowledge in the free exchange of facts, theories, and ideas" when they impeded free exchange of Arias' ideas by limiting and compelling her speech regarding transgender issues. Defendants also did not allow Arias the right or freedom of "imaginative inquiry" or expression.

4.148  Defendants breached their duty to Arias to foster "an environment in which its students can develop mature an independent judgment and an appreciation of the range and diversity of human achievement" by penalizing her independent judgment regarding transgender issues and otherwise not respecting or encouraging her independent judgment.

4.149  UWT breached its duty to Arias to cultivate "critical thinking and articulation of that

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

thinking" when they insulted and shunned Arias for her thinking and articulation of that thinking and penalized her for holding orthodox views.

4.150   UWT breached its duty to Arias to actively work to create and maintain spaces where students like Arias (a student "from [a] diverse background) believed they could thrive when they banned her from a space she was thriving and discouraged her belief in herself by ridiculing, shunning and penalizing her for her beliefs.

4.151   UWT breached its duty to Arias to foster "a welcoming climate" that was "accessible, inclusive, and equitable" by refusing to respect or accommodate her religious and cultural beliefs, and ultimately making the learning environment inaccessible to her.

4.152   UWT breached its duty to Arias to promote professional development by "improving academic, social, and health and wellness outcomes for students from historically marginalized communities." Arias is a student from a historically marginalized community and her "academic, social, and health and wellness outcomes" were actively harmed by UWT's misconduct.

4.153   UWT's breaches were the direct and proximate cause of harm and damages, economic and non-economic,  to Arias that she has suffered and will continue to suffer into the foreseeable future all in an amount to be proven at the time of trial.

4.154   Arias' damages include the fact that she can no longer complete her social welfare degree in an economically-feasible manner; she has suffered the loss of her chosen profession; loss of good will and reputation; and has endured unwarranted harassment and hostilities.

## V.    PRAYER FOR RELIEF

Plaintiff Claudia Arias prays for the following relief:

5.01    A jury trial to resolve any factual issues;

5.02    An award of damages, economic and non-economic, past and future, all in an amount to

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

be proven at the time of trial;

5.03    An award of punitive damages;

5.04    Pursuant to 42 U.S.C. § 1988 and RCW 49.60.030, an award of attorney's fees, costs, and any penalties;

5.05    An order vacating defendants' expulsion of Arias, voiding any blacklisting, enjoining any continuing restraint on Arias' free exercise of religion, and restraint on her completing her education in social work at UWT and being awarded her Baccalaureate degree from the social work program;

5.06    Other relief deemed just and equitable.

DATED January 10, 2025, at Hamilton, Montana.

III Branches Law, PLLC

_____
Joan K. Mell, WSBA #21319
Attorney for Claudia Arias

I, Claudia Arias, certify that the factual allegations set forth in this Complaint are true and correct to the best of my abilities.

DATED January 10, 2025.

_____
Claudia Arias

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

# citrix | RightSignature

## SIGNATURE CERTIFICATE



**REFERENCE NUMBER**
81894A9D-1901-4E13-8F45-16FF1E7274D4

### TRANSACTION DETAILS

**Reference Number**
81894A9D-1901-4E13-8F45-16FF1E7274D4
**Transaction Type**
Signature Request
**Sent At**
01/10/2025 06:40 -08:00
**Executed At**
01/10/2025 09:09 -08:00
**Identity Method**
email
**Distribution Method**
email
**Signed Checksum**
774f112910d7a0f4796cfbed43a5b1ddfcf64f2fefbf296634ed400864836da0
**Signer Sequencing**
Disabled
**Document Passcode**
Disabled

### DOCUMENT DETAILS

**Document Name**
2024 1 10 Arias Complaint
**Filename**
2024_1_10_Arias_Complaint.pdf
**Pages**
47 pages
**Content Type**
application/pdf
**File Size**
1.24 MB
**Original Checksum**
0280a6c3653e1ace8022ce2aa1e362201087208d16ab47d0eabc90a97234d303

## SIGNERS

| SIGNER | E-SIGNATURE | EVENTS |
|---|---|---|
| **Name**<br>Claudia Arias<br>**Email**<br>claudiasachwitz@gmail.com<br>**Components**<br>1 | **Status**<br>signed<br>**Multi-factor Digital Fingerprint Checksum**<br>64fa3a3b72a003c39dc8259c16c39bbc2dae1a38a523bddf337c54fb1d1063c7<br>**IP Address**<br>131.191.26.74<br>**Device**<br>Mobile Safari via iOS<br>**Drawn Signature**<br>_[signature]_<br>**Signature Reference ID**<br>917B5EDE<br>**Signature Biometric Count**<br>10 | **Viewed At**<br>01/10/2025 09:05 -08:00<br>**Identity Authenticated At**<br>01/10/2025 09:09 -08:00<br>**Signed At**<br>01/10/2025 09:09 -08:00 |

## AUDITS

| TIMESTAMP | AUDIT |
|---|---|
| 01/10/2025 14:40 +00:00 | Kristen Comstock (lawclerk@3brancheslaw.com) created document '2024_1_10_Arias_Complaint.pdf' on Microsoft Edge via Windows from 52.45.54.47. |
| 01/10/2025 14:40 +00:00 | Claudia Arias (claudiasachwitz@gmail.com) was emailed a link to sign. |
| 01/10/2025 16:18 +00:00 | Claudia Arias (claudiasachwitz@gmail.com) viewed the document on Mobile Safari via iOS from 131.191.26.74. |
| 01/10/2025 16:27 +00:00 | Claudia Arias (claudiasachwitz@gmail.com) viewed the document on Mobile Safari via iOS from 131.191.26.74. |
| 01/10/2025 17:01 +00:00 | Claudia Arias (claudiasachwitz@gmail.com) viewed the document on Mobile Safari via iOS from 131.191.26.74. |
| 01/10/2025 17:03 +00:00 | Claudia Arias (claudiasachwitz@gmail.com) viewed the document on Mobile Safari via iOS from 131.191.26.74. |
| 01/10/2025 17:05 +00:00 | Claudia Arias (claudiasachwitz@gmail.com) viewed the document on Mobile Safari via iOS from 131.191.26.74. |
| 01/10/2025 17:09 +00:00 | Claudia Arias (claudiasachwitz@gmail.com) authenticated via email on Mobile Safari via iOS from 131.191.26.74. |
| 01/10/2025 17:09 +00:00 | Claudia Arias (claudiasachwitz@gmail.com) signed the document on Mobile Safari via iOS from 131.191.26.74. |