UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CLAUDIA ARIAS,<br><br>　　　　　　　　Plaintiff,<br>　　v.<br><br>UNIVERSITY OF WASHINGTON TACOMA et al.,<br><br>　　　　　　　　Defendants. | CASE NO. 3:25-cv-05079-DGE<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND COMPLAINT (DKT. NO. 34) |

　　　　Plaintiff moves to amend her complaint (Dkt. No. 34) after the Court granted Defendants' motion to dismiss all of Plaintiff's original causes of action except for her fourth cause of action for retaliation under the First Amendment (Dkt. No. 31).  Plaintiff's proposed amended complaint seeks to resurrect all the dismissed claims as well as assert two additional claims: negligent supervision and breach of contract.  (*See* Dkt. No. 34 at 6–75.)

　　　　Plaintiff's proposed amended complaint suffers from many of the same defects found in the original complaint.  While it contains many statements and assertions, more often than not such statements and allegations are conclusory and lacking in factual support.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND COMPLAINT (DKT. NO. 34) - 1

For the reasons articulated herein, the Court GRANTS Plaintiff's motion in part and DENIES Plaintiff's motion in part.

## I.     BACKGROUND

The Court's prior order granting Defendant's motion to dismiss all claims except Plaintiff's fourth cause of action contains a detailed description of the key facts previously alleged.  (*See* Dkt. No. 31.)  Those facts are incorporated herein by reference.

Plaintiff has added certain new facts in her proposed amended complaint.  Plaintiff states her faith includes the belief that each person is male or female and that the "rejection of one's biological sex is a rejection of the image of God within that person." (Dkt. No. 34 at 12.) Plaintiff further asserts that "[a]ffirming that sex can change and that males can become females and vice versa violates [her] religious beliefs." (*Id.*)  Plaintiff also claims that "[a]s of April 27, 2023, Defendants knew or should have known that [Plaintiff] was first generation American," her first language was Spanish, "she was not transgender, and that she did not embrace transgender expression." (*Id.* at 13.)[1]  Plaintiff also asserts she "dressed conservatively[,] spoke openly about her faith in God[,]" and wore a "visible" cross necklace.  (*Id.*)  Plaintiff also did not designate a pronoun when invited to do so in class and "challenged [professor Vern] Harner in the classroom telling Harner students were afraid to express their honest viewpoints that did not align with Harner." (*Id.*)

Plaintiff asserts Harner's April 27, 2023 email conveyed that Plaintiff "failed to adopt Harner's minority transgender viewpoint in her zine." (*Id.* at 24.)  She also asserts that Harner

---

[1] Plaintiff asserts she "opposes discrimination against transgender people," and "is not adverse to, or afraid of transgender people," but rather believes her professor's viewpoint on transgender individuals is a "minority viewpoint" and inconsistent with her "conservative" religious values. (*Id.* at 13.)

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND COMPLAINT (DKT. NO. 34) - 2

initiated the Professional Standards Committee ("PSC") process "because [Plaintiff] was not speaking and expressing herself as a transgender person would or would want" and that Harner "sought to expel her because [her] values were not transgender endorsing." (*Id*. at 26.) Plaintiff claims the "fact that Harner did not make *any* effort to resolve the concern prior to referring to PSC reflects how extremely offended Harner was by [Plaintiff's] views that did not mirror Harner's transgender viewpoint." (*Id*. at 28.) Plaintiff also asserts that her interactions with the Defendants and "Defendants' internal communications all reveal the issue was [her] beliefs and how they related to transgender individuals, like Harner," not any academic failure. (*Id*. at 29.) Despite the reference to internal communications, the proposed amended complaint does not identify what was said in those internal communications.

Plaintiff claims it was "personally offensive" to the Defendants for her "to express that there is a problem with individuals presenting as transgender perpetrating violence against women in prison." (*Id*.) Plaintiff asserts she "'framed' the topic from her perspective grounded in a differing minority/majority viewpoint that transgender identity is a choice with adverse faith based consequences."[2] (*Id*.)

Plaintiff also asserts that the essay assignment as detailed in the May 24, 2023 letter from the PSC "required [Plaintiff] to demonstrate 'reflexivity, learning, and growth,' meaning transform herself into a transgender advocate like Harner." (*Id*. at 32.) Plaintiff further asserts the direction to "reflect on herself, indicat[ed] a demand that she adopt without limitation a

---

[2] It appears Plaintiff also considered asserting that she "'framed' the topic from her perspective based in her Catholic religion and Salvadoran cultural heritage that individuals who are female deserve special protection from violence at the hands of males, especially in prison. This was apparently based on her asserted religious and cultural belief that only people who were 'assigned female at birth' deserve this special protection; transgender 'females' do not." (*Id*.) These and other statements are redlined in the proposed amended complaint and presumably are not intended to be considered.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND COMPLAINT (DKT. NO. 34) - 3

transgender minority viewpoint and abandon her own minority/majority viewpoint." (*Id*. at 33.) Plaintiff no longer asserts the reasons she refused to write the essays were because doing so would require an admission of wrongdoing and would discriminate against her religious and race-based beliefs; instead, she now asserts she could not "write the essays that 'provide[d] evidence of . . . growth' without violating her religious and cultural beliefs." (*Id*. at 34.) Plaintiff identifies she informed Defendants "she would not write the essays, as she found them 'unduly burdensome and unjust.'" (*Id*.) Plaintiff does not allege she told Defendants she would not write the essays because doing so would violate her religious and cultural beliefs.

Plaintiff's proposed amended complaint also re-summarizes her claims (*see id*. at 9) and asserts several new conclusory statements. Among them, Plaintiff offers that the "law is well established" in several areas. (*See id*. at 48–49.)

Defendants oppose Plaintiff's request to file an amended complaint. (Dkt. No. 38.)

## II.    DISCUSSION

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). While courts favor granting leaves to amend, five factors can lead courts to deny such motions: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) [if] the plaintiff has previously amended [their] complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").

### A.  Claim 1: Washington Law Against Discrimination ("WLAD")

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND COMPLAINT (DKT. NO. 34) - 4

Plaintiff's proposed amended complaint does not allege facts indicating objectively discriminatory conduct based on a protected class. Recall, for a WLAD claim

> [t]o be actionable, the asserted discriminatory conduct must be *objectively discriminatory*. By this we mean that it must be of a type, or to a degree, that a reasonable person who is a member of the plaintiff's protected class, under the same circumstances, would feel discriminated against (as described in subsections [Washington Revised Code 49.60].040(14) and .215(1)). *This is an objective standard.*

*Floeting v. Grp. Health Coop.*, 434 P.3d 39, 44 (Wash. 2019) (quoting *Floeting v. Grp. Health Coop.*, 403 P.3d 559, 567 (Wash. Ct. App. 2017)). A plaintiff must allege more than "mere rhetoric that is subjectively offensive." *Id*. (internal quotation marks omitted). Moreover, the objective test "requires a finding of a particularized kind of treatment, consciously motivated by or based upon the person's" protected class. *Evergreen Sch. Dist. No. 114 v. Wash. State Hum. Rts. Comm'n, on Behalf of Johnson*, 695 P.2d 999, 1004 (Wash. Ct. App. 1985), *opinion modified on denial of reconsideration* (March 11, 1985).

The WLAD protected classes identified in the proposed amended complaint are creed, race, national origin, and "viewpoint." (Dkt. No. 34 at 38.) "Viewpoint" alone is not recognized in Washington Revised Code § 49.60 as a protected class. Notwithstanding, Plaintiff's claims are that Defendants' actions were motivated by Plaintiff's views on transgender individuals, which Plaintiff asserts are inextricably tied to her religious and cultural beliefs. But the facts alleged do not indicate Defendants' actions were consciously motivated by or based on Plaintiff's religious or cultural beliefs. Plaintiff fails to allege a connection between Defendants' actions and Plaintiff's religious or cultural beliefs because there is no indication Defendants knew of Plaintiff's particular religious or cultural beliefs.

The proposed amended complaint describes how Plaintiff's religion informs her beliefs on transgender individuals. (Dkt. No. 34 at 12.) However, it fails to allege these specific beliefs

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND COMPLAINT (DKT. NO. 34) - 5

were expressed to Defendants such that there is a plausible correlation between Plaintiff's religious beliefs and Defendants' motivation. At most, Plaintiff—in conclusory fashion—asserts Defendants "knew or should have known" she had some type of religious belief as of April 27, 2023, because Plaintiff "dressed conservatively," "wore a cross necklace," and "spoke openly about her faith in God." (Dkt. No. 34 at 13.)

But the proposed amended complaint does not state Plaintiff expressed her *specific* religious beliefs to Harner or to any of the Defendants prior to them taking the actions complained of. Plaintiff does not indicate she informed anyone her decision to decline to use Harner's preferred pronoun or write the assigned essays was connected to her religious beliefs. Plaintiff's description of the April 27, 2023 meeting between her and Harner is notably missing any facts alleging Plaintiff's religious beliefs were expressed to Harner prior to or during their meeting. (*See id*. at 22–23.) As described, Plaintiff "queried Harner" by telling Harner she was confused and uncertain why her topic was not considered to be a social justice issue. (*Id*. at 22.) Harner in turn reacted "dramatically" by pronouncing, "'this is targeting transgender.'" (*Id*. at 22–23.) Plaintiff does not state she discussed with Harner her religious beliefs—and it does not follow that identifying confusion as to why Harner did not consider Plaintiff's topic to be a social justice issue means that Harner initiated a PSC complaint because Harner held animus towards Plaintiff's unexpressed religious beliefs. Put simply, the proposed amended complaint is void of any facts showing a connection between Plaintiff's religious beliefs and the Defendants' knowledge of such beliefs.[3]

---

[3] At bottom, Plaintiff's position is that each Defendant automatically had religious animus because each Defendant should have known that Plaintiff's views on transgender individuals were one and the same with her religious beliefs. This is where the disconnect occurs; Plaintiff does not allege she specifically told each Defendant what her religious beliefs were or how being

Similarly, the proposed amended complaint fails to connect the Defendants' actions with Plaintiff's language, ethnic, or cultural background.  Plaintiff states her discomfort with use of the pronoun "they" for a singular individual is "grounded on her" Hispanic and Spanish-language background.  (*Id*. at 39.)  But this does not plausibly indicate Harner's conduct was motivated by Plaintiff's ethnic or cultural background.  Plaintiff also makes the conclusory statement, "Harner unfairly assumed Arias held conservative beliefs grounded in stereotypes consistent with her ethnicity and cultural background to label [her] as transphobic." (*Id*. at 26.)  However, Plaintiff provides no facts plausibly supporting this conclusory statement nor asserting that Defendants took any action because of her language, ethnic, or cultural background.  In short, the proposed amended complaint does not assert facts plausibly supporting objectively discriminatory conduct based on Plaintiff's background.  Accordingly, the proposed amended complaint fails to state a WLAD claim.

**B.  Claim 2: Washington State Constitution – article I, section 11**

As identified in the prior order, Washington's Constitution, article I, section 11 requires Plaintiff to identify (and eventually establish) facts that plausibly show that government action burdens the exercise of religion.  (Dkt. No 31 at 10) (citing *City of Woodinville v. Northshore United Church of Christ*, 211 P.3d 406, 410 (Wash. 2009)).  Burden exists "if the coercive effect of an enactment operates against a party in the practice of his religion."  *City of Woodinville*, 211 at 410 (cleaned up).  The burden must "be substantial" and do more than "minimally affect[]'sentiment, belief [or] worship.'"  *Id*. at 411.

---

forced to write essays on social worker responsibilities to transgender individuals conflicted with Plaintiff's specific religious beliefs.

Plaintiff's proposed amended complaint does not identify how the Defendants' actions substantially affected the exercise of Plaintiff's religion in a way that more than minimally affected her sentiment, belief, or worship. Once more, Plaintiff makes broad conclusory statements that Defendants' treatment of her together with being removed from the social work program "burdened the free exercise of [her] religious sentiment or belief." (Dkt. No. 34 at 47–48.) The proposed amended complaint, however, does not identify facts explaining how requiring Plaintiff to draft essays on a social worker's responsibilities to transgender individuals and on ethical and professional behavior and communication or use the pronoun "they" (*see* Dkt. No. 13 at 10, 47) burdened religious exercise. It is insufficient to simply assert in conclusory fashion that Plaintiff was required to "assimilate through 'self-contemplation'" and otherwise "disavow her religious beliefs" (Dkt. No. 34 at 48) without explaining how completing this written assignment required Plaintiff to disavow her religious beliefs or practice.

Accordingly, the proposed amended complaint fails to state a violation of the Washington State Constitution, article I, section 11.

### C. § 1983 Claims

Plaintiff's third through sixth causes of actions are all constitutional claims brought under § 1983. Plaintiff's third cause of action asserts a violation of the First Amendment's Free Exercise clause. Plaintiff's fourth cause of action assets a violation of the First Amendment for retaliation. Plaintiff's fifth cause of action is a First Amendment compelled speech claim. Plaintiff's sixth cause of action is a violation of the Fourteenth Amendment's procedural due process clause.

    1. Claims 3 and 5: First Amendment Free Exercise Claim and First Amendment Freedom of Speech (Compelled Speech) Claim

Plaintiff's proposed amended First Amendment Free Exercise claim fails for the same reason the proposed state constitutional Free Exercise claim fails. *See supra* § II.B.  Even assuming Defendants knew Plaintiff was religious and had certain opinions on transgender expression, Plaintiff does not show that Defendants knew her religion influenced her views on transgender expression.

In addition, Plaintiff's First Amendment Free Exercise Claim and First Amendment Freedom of Speech (Compelled Speech) Claim are barred by qualified immunity.  Plaintiff asserts the Defendants violated four well-established rights: the right to express one's "conservative religious and culturally based viewpoints" (Dkt. No. 38 at 4); the right "in the academic environment to not use 'they' to refer to" a single individual (Dkt. No. 34 at 48); the right "to academic freedom of expression" including "choosing not to write essays espousing acceptance of minority transgender viewpoints" (*id*. at 49); and the right "to have her minority/majority[4] viewpoint heard and represented in any disciplinary proceeding or when conditioning her access to education" (*id*.).  But support for these alleged well-established rights is absent.

Regarding the alleged well-established right to express one's "conservative religious and culturally based viewpoints," Plaintiff points to *Flores v. Bennett*, 635 F. Supp. 3d 1020 (E.D. Cal. 2022) (granting a preliminary injunction finding a university policy prohibiting flyers with "inappropriate or offensive" language was overbroad and/or unconstitutionally vague) and *Rosenberger v. Rector & Visitors of University of Virginia*, 515 U.S. 819 (1995) (finding denying funding for a Christian-based newspaper group constituted viewpoint discrimination) for

---

[4] Plaintiff never explicitly states what she means by this term "minority/majority viewpoint." However, it appears to refer to Plaintiff being a minority in her cultural and/or religious beliefs but a majority in her views on gender identity.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND COMPLAINT (DKT. NO. 34) - 9

support. (Dkt. No. 38 at 4.) *Flores* involved a policy that prohibited a student organization from posting flyers on a student bulletin board located in a college's academic center. The flyers included "anti-leftist and anti-communist messages" and "Pro Life Flyers." 635 F. Supp. 3d at 1027. *Rosenberger* involved a college's policy barring financial support to a student newspaper on the basis that the newspaper promoted religious activity, i.e., a particular belief in or about a deity or ultimate reality. 515 U.S. at 822–823. Neither *Flores* nor *Rosenberger* involved circumstances where a student's proposed class project was viewed as not conforming with the objectives of the student's particular college program. *Flores* and *Rosenberger*, therefore, do not support Plaintiff's assertion that it is well established that a student may express viewpoints in their classwork that, in the school's opinion, conflict with educational requirements.

Second, Plaintiff provided—and this Court could find—no Ninth Circuit precedent establishing a right to ignore an individual's requested pronouns. To support the proposition that "[r]eligious and philosophical objections to gender-based viewpoints are protected views and protected forms of expression under the First Amendment," Plaintiff cites *Defending Education v. Olentangy Local School District Board of Education.*, No. 23-3630, 2025 WL 3102072 (6th Cir. Nov. 6, 2025) (granting preliminary injunction enjoining a public school district policy prohibiting students from using pronouns for peers other than their preferred pronouns); *Wood v. Florida Department of Education*, 142 F.4th 1286 (11th Cir. 2025) (denying a preliminary injunction to enjoin a Florida statute requiring the use of pronouns correlating with biological sex); *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021) (holding a professor stated a plausible violation of the First Amendment when he was punished for refusing to call a transgender student by their preferred pronouns), and *Tennessee v. Cardona*, 737 F. Supp. 3d 510, 571 (E.D. Ky. 2024) (finding a Department of Education rule requiring the use of preferred pronouns

"raised serious First Amendment implications," but striking it down for other reasons). (Dkt. Nos. 38 at 3–4; 46 at 1.)

However, these decisions are not binding in this Circuit, do not decisively establish a constitutional right, and do not involve a college student's opposition to using preferred pronouns. Moreover, Plaintiff provided case law in direct conflict with her claim: *Willey v. Sweetwater County School District No. 1 Board of Trustees*, 680 F. Supp.3d 1250 (D. Wy. 2023). *Willey* involved a policy requiring teachers to use a student's preferred name and prohibiting teachers from disclosing the student's preferred pronouns to the student's parent. *Willey* denied a preliminary injunction seeking to enjoin the policy requiring a teacher to use a student's preferred name. 680 F. Supp. 3d at 1291. In other words, *Willey* did not recognize a right to refuse to use preferred pronouns in a college setting. Instead, *Willey* demonstrates the clear lack of a well-established right to ignore preferred pronouns and indicates at times use of preferred pronouns or names can be required in public educational settings. *See also Foote v. Ludlow Sch. Comm.*, 128 F.4th 336, 340 (1st Cir. 2025) (per curium) (upholding K-12 policy requiring use of a student's preferred pronouns).

Third, Plaintiff's assertion she had the right not to complete the essays because they required espousing a minority view fails because she does not allege facts indicating she was required to write an essay from any particular perspective. The essay assignment focused on a social worker's responsibilities to transgender individuals and ethical and professional behavior and communication. On its face, the assignment did not require Plaintiff change her religious beliefs as to transgender individuals or identity. *See supra*, II.B. Moreover, even if Plaintiff was required to write an essay from a particular perspective, the Ninth Circuit has held that "a teacher may require a student to write a paper from a particular viewpoint, even if it is a [viewpoint] with

which the student disagrees, so long as the requirement serves a legitimate pedagogical purpose. For example, a college history teacher may demand a paper defending Prohibition." *Brown v. Li*, 308 F.3d 939, 953 (9th Cir. 2002).[5]

Finally, regarding Plaintiff's claim that she has a well-established right "to have her minority/majority viewpoint heard and represented in any disciplinary proceeding or when conditioning her access to education" (Dkt. No. 34 at 49), Plaintiff offers no argument or case law on this alleged right. (*See* Dkt. No. 38.) The Court is not aware of such a right being well-established. And even then, Plaintiff does not allege facts identifying that she was prohibited from addressing the PSC and expressing her concerns.

Accordingly, the proposed amended complaint fails to state First Amendment Free Exercise or Compelled Speech claims.

### 2. Claim 4: First Amendment Freedom of Speech (retaliation)

Plaintiff's First Amendment Freedom of Speech (retaliation) claim was not dismissed and remains active. Though the Court questions why amendment is necessary as Defendants never moved to dismiss this claim, Plaintiff is granted leave to amend this claim as Plaintiff deems necessary.

### 3. Claim 6: Fourteenth Amendment Procedural Due Process

The Court previously held Plaintiff failed to identify a "clearly established liberty or property interest in continued participation in an academic program." (Dkt. No. 31 at 17.) Plaintiff's proposed amendments to her prior claim add only conclusory statements: "Washington's public universities are open to all who qualify pursuant to the general standards

---

[5] The Court uses this case only to hold there is no "well-established right" to not write papers with which one disagrees. The Court does not hold Defendants' behavior was necessarily permitted by *Brown*.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND COMPLAINT (DKT. NO. 34) - 12

of admission" and "[Plaintiff] did not shed her constitutional rights at the door." (Dkt. No. 34 at 59.) Citing *Meyer v. University of Washington*, 719 P.2d 98 (1986) and *Regents of University of Michigan v. Ewing*, 474 U.S. 214 (1985), Plaintiff now claims she has a "protected property interest in her viewpoint" and "in her enrollment in the school of social work." (Dkt. No. 38 at 5.) Neither case is persuasive. *Meyer* involved a professor, not a student, who was reprimanded for "inappropriate responses to interdepartmental activities." 719 P.2d at 849. In addition to the fact that *Meyer* involved a professor's speech and not a student's classwork, *Meyer* concluded the professor had "no constitutional property or liberty interests affected by the reprimand." 719 P.2d at 855.

As for *Ewing*, because the university defendant acknowledged in its answer to the plaintiff's complaint that there may be a property interest at issue, *Ewing* assumed the plaintiff had a property interest in his continued participation in the school program. 474 U.S. at 223 n.8. But the Supreme Court specifically chose not to "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Id*. at 222. Thus, *Ewing* did not pronounce the existence of a property interest in a college educational program. Plaintiff offers no caselaw establishing a college student in Washington maintains a property interest in their education.

Accordingly, the proposed amended complaint fails to identify a procedural due process claim.

**D. Seventh Claim: Outrage**

Plaintiff's proposed amended outrage claim continues to focus on the allegation that the Defendants' actions were based on animus toward Plaintiff's religious beliefs and animus for Plaintiff not "affirm[ing] minority transgender beliefs." (Dkt. No. 34 at 60–61.) Plaintiff also

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND COMPLAINT (DKT. NO. 34) - 13

alleges outrageous conduct because the Defendants "abandon[ed] social work values that dictate meeting a client where the client is at." (*Id*. at 60.)  Plaintiff also asserts Defendants "belittled and disparaged" her by referring her to PSC, denying her "deference or opportunity to confer and reconcile her respective position with Harner," and ultimately expelling her for not writing the required essays.  (*Id*. at 61.)

Because the Court concludes the amended complaint still fails to allege facts that plausibly support the conclusion that Defendants acted with religious animus or that Defendants required Plaintiff to abandon her religious views, the proposed amended complaint fails to assert an outrage claim.  Once these two bases for the outrage claim are removed, the amended complaint describes only a dispute about a class assignment and the faculty's view on whether a student was meeting program objectives and if not, what consequences were appropriate.  Accordingly, the remaining allegations fail to allege conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Robel v. Roundup Corp*., 59 P.3d 611, 619 (Wash. 2002) (quoting *Dicomes v. State*, 782 P.2d 1002, 1013 (Wash. 1989)).

Accordingly, Plaintiff's proposed amended complaint fails to state an outrage claim.

### E.  Eighth Claim: Negligent Infliction of Emotional Distress

The proposed amended complaint does not appear to contain any substantive modifications to the prior complaint.  Accordingly, for the reasons previously stated, Plaintiff fails to state a claim for negligent infliction of emotional distress.  (*See* Dkt. No. 31 at 18–21.)

### F.  Ninth Claim: Negligent Supervision

Plaintiff's ninth cause of action asserts a new claim for negligent supervision.  A claim for negligent supervision requires facts establishing that "(1) the employee acted outside the

scope of employment, (2) the employee presented a risk of harm, (3) the employer knew, or should have known, that the employee presented a risk of harm to others; and (4) the employer's failure to supervise proximately caused the harm." *Benjamin v. Stevens Cnty.*, No. 2:18-cv-204-RMP, 2018 WL 4935448, at *12 (E.D. Wash. Oct. 11, 2018); *Briggs v. Nova Servs.*, 147 P.3d 616, 622 (Wash. Ct. App. 2006).

Plaintiff asserts Harner acted outside the scope of employment when Harner "ostracized and belittled" Plaintiff based on Plaintiff's "religious and cultural beliefs." (Dkt. No. 34 at 63.) First, as already identified, Plaintiff's conclusory allegations that Harner acted with religious animus are unsupported because the proposed amended complaint does not identify Harner had knowledge of Plaintiff's religious beliefs when Plaintiff met with Harner to discuss Plaintiff's class assignment.

Second, the proposed amended complaint does not contain facts plausibly supporting the allegation that Harner acted outside the scope of employment during Harner's interactions with Plaintiff. Plaintiff claims Harner acted outside the scope of employment when Harner "ostracized and belittled" Plaintiff and singled out Plaintiff because of Harner's "own personal emotional issues and unaddressed trauma around transgender identity." (*Id*. at 64.) But Plaintiff's proposed amended complaint unmistakably identifies Harner only interacted with Plaintiff when discussing classwork or discussing whether Plaintiff was meeting objectives to remain in the BASW program. And merely asserting that Harner was motivated by "personal trauma and militant transgender advocacy" does not convert Harner's interactions with Plaintiff into conduct occurring outside the scope of employment.

Third, the proposed amended complaint does not identify the risk of harm Harner posed or why the other Defendants knew or should have known of such risk. Plaintiff makes only

conclusory allegations that Harner suffered from "personal emotional issues and unaddressed trauma" such that Harner projected "personal trauma and militant transgender advocacy on interactions with students." (*Id.*) The proposed amended complaint does not allege facts indicating Harner suffered from emotional issues or unaddressed trauma. Nor are there any facts indicating the other Defendants had knowledge of any emotional issues or unaddressed trauma.

Accordingly, the proposed amended complaint fails to allege a negligent supervision claim.

### G. Tenth Claim: Tortious Interference with Contract and Business Expectancies[6]

The Court previously dismissed this claim for failure to allege the existence of a valid contractual relationship or sufficiently non-speculative future opportunity. (Dkt. No. 31 at 21–23.) Plaintiff's new allegations focus on her internship with Consejo Counseling. (Dkt. No. 34 at 65–68.)

To state a tortious interference claim under Washington law, a plaintiff must show: "(1) [t]he existence of a valid contractual relationship or business expectancy, (2) defendants had knowledge of that relationship, (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy, (4) the interference was for an improper purpose or used improper means, and (5) resultant damage." *Travelers Casualty & Surety Co. of America v. Decker*, 756 F. Supp. 3d 1097, 1104 (W.D. Wash. 2024) (quoting *Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*, 279 P.3d 487, 498 (Wash. Ct. App. 2012)).

While the relationship between Consejo Counseling and Plaintiff is unusual because it is a practicum relationship and not a traditional workplace relationship and Plaintiff does not

---

[6] This was previously brought as Plaintiff's ninth cause of action for tortious interference with business expectancy.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND COMPLAINT (DKT. NO. 34) - 16

discuss in any depth whether this relationship is sufficient, the Court will assume for purposes of this motion Plaintiff alleges a plausible contractual relationship and will allow the parties to further develop the specific relationship present here.  Plaintiff is also light on details as to the improper purpose or means being alleged.  Plaintiff alleges Defendants' interferences were for the improper purposes of "discriminat[ing] against [Plaintiff] for her religious beliefs" and "retaliat[ing] against her for her constitutionally protected speech."  (Dkt. No. 34 at 67.)  Plaintiff's proposed amended claims for religious discrimination have been dismissed as futile and cannot be the basis of her interference claim.  However, Plaintiff's cause of action under the First Amendment for retaliation remains outstanding.  While the Court has not considered the merits of Plaintiff's First Amendment retaliation claim, at this stage it may serve as a basis for an improper purpose in an interference claim.  Accordingly, Plaintiff may amend her complaint to allege facts relevant to her cause of action for tortious interference with a contractual relationship or business expectancy to the extent her claim is based on her remaining retaliation claim and not her dismissed religious discrimination claims.

### H.  Eleventh Claim: Negligence[7]

The Court previously dismissed Plaintiff's negligence claim for failing to show "an actionable duty of care."  (Dkt. No. 31 at 20.)  The proposed amended complaint includes a new allegation that Defendants "gratuitously undertook the duty of providing an education to [Plaintiff]" and must "provide a fair and equitable education free from unfair biases, prejudices, or discrimination."  (Dkt. No. 34 at 68.)  Plaintiff asserts "Washington state statutes and administrative regulations provide outline and definition to that voluntarily undertaken duty" and

---

[7] Plaintiff's prior complaint identified this claim as her tenth cause of action.

"provisions like [Washington Revised Code §] 28B.10.145 were created especially for the benefit of students like [Plaintiff.]" (*Id.*)

But Plaintiff's continued use of conclusory statements about statutes, regulations, and policies establishing a duty are unpersuasive. Washington Revised Code § 28B.10.145 requires "[e]ach institution of higher education" to "[p]rovide professional development, either existing or new, focused on diversity, equity, inclusion, and antiracism for faculty and staff" and compile and share staff evaluations of these development efforts. The statute says nothing about a duty of care owed to students. And as previously pointed out, Plaintiff again fails to provide any analysis as to why the statutes or administrative regulations Plaintiff relies on create a duty of care. (*See* Dkt. No. 31 at 19–20) (citing to *Bennett v. Hurdy*, 784 P.2d 1258, 1261–1262 (Wash. 1990)). The Court finds no basis to conclude any of the statutes, regulations, or policies Plaintiff identifies create an actionable duty of care.

Finally, Plaintiff's assertion that Defendants "gratuitously undertook the duty of providing an education to [Plaintiff]" is unsuccessful. Defendants provided an education to students in exchange for tuition, and Plaintiff herself acknowledges she has a contract with the university. (Dkt. No. 31 at 71.)

Accordingly, the proposed amended complaint fails to state a negligence claim.

**I.    Twelfth Claim: Breach of Contract**

Plaintiff asserts a new cause of action for breach of contact. Plaintiff asserts she and the University of Washington, Tacoma ("UWT") had a contractual relationship and that UWT was required to provide her with educational opportunities so long as "she satisfied her financial obligations and academic requirements and refrained from violation of disciplinary policy." (Dkt. No. 34 at 71.) Plaintiff asserts UWT breached the contract when it required her to

"assimilat[e] her expression and communication to conform with Harner's minority transgender beliefs and forms of communication" and "terminated her from her degree program for an improper reason." (*Id*. at 72.) Defendants assert this claim is futile and that timing is unduly prejudicial. (Dkt. No. 37 at 12–14.)

The Court declines to find the claim unduly prejudicial. When parties seek to add new causes of actions after orders on motions for dismissal, courts look to whether their initial order allowed novel causes of action. *See Beavers v. New Penn Fin. LLC*, No. 1:17-cv-00747-JLT, 2018 WL 385421, at *2 (E.D. Cal. Jan. 11, 2018). The Court was silent on this issue. Thus, and because parties still have time to complete discovery, the Court will not find this claim unduly prejudicial. (Dkt. No. 27.)[8]

A breach of contract claim requires (1) the existence of a contract, (2) breach of that contract, and (3) damages. *Corner Computing Sols. v. Google LLC*, 750 F. Supp. 3d 1208, 1214 (W.D. Wash. 2024). Defendants cite *Marquez v. University of Washington*, 648 P.2d 94 (Wash. Ct. App. 1982) and *Camer v. Seattle School District No. 1*, 762 P.2d 356 (Wash. Ct. App. 1988) for the proposition Plaintiff lacks a private right of action to sue for breach of contract. (Dkt. No. 37 at 13.) *Marquez*, however, held only that the defendants did not breach any contract in the dispute at issue in that case, while *Camer* involved statutes at the high school level—not at the university level. Thus, the Court will assume for purposes of this motion that Plaintiff alleges a plausible contract. Defendants further argue Plaintiff fails to state a breach of any contract. (*Id*. at 12.) Plaintiff is again unclear as to what specifically she alleges the improper reason for

---

[8] The Court has emphasized its commitment to maintaining deadlines and a disciplined discovery process. Defendants note Plaintiff's deposition was originally scheduled before this order was issued. (Dkt. No. 37 at 13–14.) To the extent parties request additional discovery because of this novel cause of action, they must state with specificity why the requested discovery could not have been done previously.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND COMPLAINT (DKT. NO. 34) - 19

dismissal is. (*See* Dkt. No. 34 at 71–74.) However, while the Court has dismissed Plaintiff's religious discrimination claims, Plaintiff's First Amendment claim for retaliation remains pending. To the extent Plaintiff alleges the breach of contract is related to her First Amendment retaliation claim, Plaintiff may add this cause of action.

### III.   ORDER

Accordingly, the Court finds and ORDERS that Plaintiff's motion for leave to file an amended complaint is GRANTED in part and DENIED in part.

Plaintiff may amend her complaint to incorporate all facts and assertions relevant to her causes of action for: (1) retaliation under the First Amendment; (2) tortious interference with a contractual relationship or business expectancy to the extent it is based on her First Amendment retaliation claim; and (3) breach of contract to the extent it is based on her First Amendment retaliation claim. Should Plaintiff wish to file an amended complaint, it shall be filed no later than **December 1, 2025**.

Dated this 17th day of November, 2025.

David G. Estudillo
United States District Judge