The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLAUDIA ARIAS, an individual,

                Plaintiffs,

        v.

STATE OF WASHINGTON – UNIVERSITY OF WASHINGTON TACOMA ("UWT"), a state educational institute; VERN HARNER, officially and individually; CLAUDIA SELLMAIER, officially and individually; ANDREA HILL, officially and individually; KEVA MILLER, officially and individually; and ELAVIE NDURA, officially and individually,

                Defendants.

CASE NO.  3:25-cv-05079-DGE

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Noted:  Monday, March 23, 2026

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

TABLE OF CONTENTS

I.      Introduction ................................................................................................................ 1

II.     Statement of Facts ..................................................................................................... 1

        A.      The Bachelor of Arts in Social Welfare Program at UWT. ................................. 1

        B.      Policies Applicable to the BASW Program. ........................................................ 2

        C.      Plaintiff Joins UWT's BASW Program and Agrees to the School's Policies. ....... 3

        D.      The Cultural Diversity and Societal Justice 404 Class. ....................................... 3

        E.      The Zine Assignment. ......................................................................................... 4

        F.      Plaintiff's Proposed Zine Topic. ......................................................................... 5

        G.      Others Share Dr. Harner's Concern About Plaintiff's Zine Topic. ....................... 7

        H.      The PSC Meeting. .............................................................................................. 8

        I.      The PSC's May 24, 2023 Two-Essay Assignment Letter. .................................... 9

        J.      Plaintiff Changes Her Zine Topic and Completes the Class. ............................... 10

        K.      Plaintiff's Repeated Questions Over the Summer of 2023. ................................. 10

        L.      Plaintiff Refuses to Write the Essays, Claiming PSC Did Not Answer Her
                Questions. ........................................................................................................ 11

        M.      Plaintiff Is Dropped from the BASW Program. ................................................. 11

III.    Argument ................................................................................................................ 12

        A.      Legal Standard. ................................................................................................ 12

        B.      Plaintiff's First Amendment Retaliation Claim Fails. ........................................ 12

                1.      *The University Has the Right to Regulate Student Curricular
                        Speech.* ................................................................................................. 13

                2.      *The University Has the Right to Ensure Adherence to Professional
                        Standards.* ............................................................................................ 15

                3.      *Plaintiff's First Amendment Claim Fails as a Matter of Law.* ................. 16

                4.      *Qualified Immunity Also Bars Plaintiff's First Amendment Claim.* ......... 18

        C.      Plaintiff's Tortious Interference with Business Expectancy Claim Fails. ............ 20

        D.      Plaintiff's Breach of Contract Fails. .................................................................. 22

IV.     Conclusion .............................................................................................................. 25

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - ii
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

TABLE OF AUTHORITIES

**Cases**

*Becker v. Wash. State. Univ.*, 165 Wn.App. 235, 266 P.3d 893 (2011) ..................................... 23, 25

*Brown v. Li*, 308 F.3d 939 (9th Cir. 2002) ................................................................. 13, 14, 19

*Doe v. Elson S. Floyd Coll. of Med. at Washington State Univ.*, No. 2:20-CV-00145-SMJ, 2021 WL 3375725 (E.D. Wash. Aug. 3, 2021) ................................................................. 24, 25

*Evans v. Skolknik*, 997 F.3d 1060 (9th Cir. 2021) ................................................................. 19

*Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988) ................................................................. 13

*Houser v. City of Redmond*, 91 Wn.2d 35, 586 P.2d 482 (1978) ........................................................ 21

*Hunt v. Cnty of Orange*, 672 F.3d 606 (9th Cir. 2012) ................................................................. 18

*Johnson v. Nasi*, 50 Wn.2d 87, 309 P.2d 380 (2004) ................................................................. 23

*Keefe v. Adams*, 840 F.3d 523 (8th Cir. 2016) ................................................................. 14

*Keeton v. Anderson-Wiley*, 664 F.3d 865 (11th Cir. 2011) ................................................... 13, 15, 18

*Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 94 P.3d 945 (2004) ..................... 23, 24

*Maas v. Corporation of Gonzaga Univ.*, 27 Wash.App. 397 (1980) ................................................ 24

*Marquez v. Univ. of Wash.*, 32 Wn.App. 302, 648 P.2d 94 (1982) ................................................ 23

*Morse v. Frederick*, 551 U.S. 393 (2007) ................................................................. 13

*Mullenix v. Luna*, 577 U.S. 7 (2015) ................................................................. 18, 19

*O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) ................................................................. 13

*Oyama v. University of Hawaii*, 813 F.3d 850 (9th Cir. 2016) ....................................... 14, 16, 18

*Pavel v. Univ. of Oregon*, 774 F'App'x 1022 (9th Cir. 2019) ........................................................ 18

*Settle v. Dickson Cnty. Sch. Bd.*, 53 F.3d 152 (6th Cir. 1995) ................................................ 14

*Singh v. State*, 18 Wash. App. 2d 1061, 2021 WL 3619920 (2021) ................................................ 21

*Sorrels v McKee*, 290 F.3d 965 (9th Cir. 2002) ................................................................. 19

*St. Marie v. Jefferson Cnty.*, No. 3:22-CV-05893-DGE, 2024 WL 3992633 (W.D. Wash. Aug. 29, 2024) ................................................................. 22

*Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*, 279 P.3d 487 (Wash. Ct. App. 2012) ..................... 20

*T-Mobile USA Inc. v. Selective Insurance Co. of Am.*, 194 Wn.2d 413, 450 P.3d 150 (2019) ......... 24

*Travelers Casualty & Surety Co. of America v. Decker*, 756 F. Supp. 3d 1097 (W.D. Wash. 2024) 20

**Rules**

Fed. R. Civ. P. 56(a) ................................................................. 12

FRCP 56 ................................................................. 25

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

## I.    INTRODUCTION

Defendants University of Washington Tacoma ("UWT" or the "University"), Vern Harner, Claudia Sellmaier, Andrea Hill, and Keva Miller respectfully move for summary judgment on Plaintiff Claudia Arias's three remaining claims:  First Amendment retaliation, breach of contract, and tortious interference with business expectancy.

Plaintiff's claims fail as a matter of law. As for her First Amendment claim, the undisputed record shows Plaintiff was dismissed from the Bachelor of Arts in Social Welfare Program not for protected speech, but for refusing to comply with the clearly articulated academic and professional standards she agreed to follow. Moreover, the challenged actions arose from curricular requirements and enforcement of established social work ethics, not due to any personal views on matters of public concern.  Further, qualified immunity bars her First Amendment claim against the individual Defendants.  Plaintiff's breach of contract and tortious interference claims likewise fail because she had no guaranteed right to continued enrollment, practicum placement, or future employment absent compliance with program requirements, and the University acted squarely within its contractual and academic authority.

## II.    STATEMENT OF FACTS

### A.    The Bachelor of Arts in Social Welfare Program at UWT.

UWT's School of Social Work and Criminal Justice ("the School") offers several degree programs, including a Bachelor of Arts in Social Welfare ("BASW"). Miller Decl. ¶3. The BASW Program's goal is to prepare social workers to have the skills for "understanding and solving complex social problems within the values of professional social work" and "to become informed and effective leaders able to take action against injustice and inequalities." *Id*.  Accredited by the Council on Social Work Education ("CSWE"), the School teaches core professional competencies, including preparing students to work with diverse groups of people who may have different beliefs and experiences, including gender and gender identity.  *Id.*, Exh. B (2022 CSWE EPAS).

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 1
CASE NO. 3:25-cv-05079-DGE

**B.      Policies Applicable to the BASW Program.**

Consistent with BASW's Program's commitment to training social workers to serve diverse populations, the School requires BASW students to adhere to a number of polices. BASW students must read and adhere to (1) the School's Essential Skills, Values, and Standards of Professional Conduct ("Essential Skill") and (2) Major Principles of the National Association of Social Worker's ("NASW") Code of Ethics. Miller Decl. ¶5, Exhs. C, D.  The required "Essential Skills" policy provides in pertinent part:

> The social work student must appreciate the value of human diversity. They must serve in an appropriate manner all persons in need of assistance, regardless of the person's age, class, race, religious affiliation (or lack thereof), gender, disability, sexual orientation and/or value system. Social work students must not impose their own personal, religious, sexual, and/or cultural values on their clients. The social work student must know how their values, attitudes, beliefs, emotions and past experiences affect their thinking, behavior and relationships.  The student must be willing to examine and change their behavior when it interferes with their working with clients and other professionals.…

Miller Decl., Exh. C at pp.2-3.

The NASW Code of Ethics requires, among other things, social workers to pursue social change, particularly with and on behalf of vulnerable and oppressed individuals, and to respect the dignity and worth of the person, including the right of clients to self-determination. *Id*., Exh. E at Harner_000783-785. The Code of Ethics further compels social workers to obtain education about and seek to understand the nature of social diversity, including with respect to gender identity or expression. *Id*., Exh. E at Harner_000787-788.

Upon admittance, students receive a copy of the BASW Program Manual. *Id.* ¶6; Ex F.  It includes information about the BASW Program, its mission and goals, CSWE's nine core competencies which are "measure[d] in the classroom," and the "Essential Skills" students must demonstrate. *Id*., Exh. F at Sellmaier_000014-17, 32-38. The Manual advises that students "may be terminated from the UW Tacoma BASW Program for," *inter alia*, "[b]ehavior that is judged to be

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 2
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

in violation of the NASW Code of Ethics…" or for "[f]ailure to meet the Essential Skills… ." *Id,* Exh. F at Sellmaier_000033.

As also described in Program Manual, the School maintains a Professional Standards Committee ("PSC"), comprised of faculty members that address concerns related to students. Miller Decl. ¶7, Exh. F at Sellmaier_000043; Exh. G. The PSC has the authority to determine if sanctions are warranted and, if so, the nature of the sanctions. Miller Decl. ¶7, Exh. F at Sellmaier_000043; Exh. G at Hill_000010-12. Both the Program Manual and the PSC Policy state: "**If a student fails to comply with sanctions of the PSC within the specified timeframe, a recommendation for dismissal from the program will be considered by the PSC**." Miller Decl. ¶7, Exh. F at Sellmaier_000043; Exh. G at Hill_000010-12 (emphasis in originals).

**C.      Plaintiff Joins UWT's BASW Program and Agrees to the School's Policies.**

Plaintiff transferred into UWT's BASW Program for the Autumn Quarter 2022. Berntsen Declaration, Ex. A, Deposition of Claudia Arias ("Plaintiff's Dep.") at 66:21-67:6; 95:22-24. Upon enrollment, Plaintiff agreed to adhere to the School's "Essential Skills" and to the NASW's Code of Ethics. *Id.* at 75:10-76:12, 77:5-79:8, 79:6-81:16, 89:14-18; Berntsen Decl., Exhs. B, C, D, E. She also understood that the BASW Program Manual governed the terms and conditions of her participation in the BASW Program. Plaintiff's Dep., 90:25-91:4.

**D.      The Cultural Diversity and Societal Justice 404 Class.**

In Spring 2023, Plaintiff enrolled in TSOCWF 404 Cultural Diversity and Societal Justice ("404 Class"), one of BASW's core courses taught by Defendant Dr. Vern Harner. Declaration of Vern Harner ("Harner Decl."), ¶¶4-5; Plaintiff's Dep., 107:1-20. The 404 Course focuses on the "[h]istory and culture of disadvantaged and oppressed groups served by social welfare generalist practitioners." Harner Decl., Ex. C at Harner_000063. Dr. Harner's course syllabus, distributed to all students,[1] explained:

---

[1] Dr. Harner distributed the course syllabus through Canvas, the School's online program, six days before the first day of class. Harner Decl., ¶¶6-8, Exh. B. Plaintiff used Canvas to access class information. Plaintiff's Dep., 111:1-113:11.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 3
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

> The course content deals with sociopolitical patterns of power and privilege to understand the marginalization based on social group membership (such as race, class, gender, sexuality, religion, language, and ability status). The course will provide an environment for students to explore their own values, knowledge base, and behaviors and how these may affect future practice with oppressed populations. Utilizing self-awareness and cultural attunement/reflexivity in order to establish and sustain effective practice will be stressed throughout the course.

Harner Decl., ¶9, Exh. C at Harner_000063. Plaintiff's goal was "to receive an A" and not "to get things shoved down [her] throat." Plaintiff's Dep., 127:11-128:4.

The 404 Class syllabus included recommended and required readings, a week-by-week course outline, course assignment details, and student responsibilities. Harner Decl. ¶9, Exh. C. Learning objectives included:

- Demonstrate critical self-awareness of your assumptions, beliefs, values and behaviors with regard to race, class, gender, sexual orientation, ethnicity, national origin, age, religion and ability

- Develop and refine a framework for continued learning about different groups within our society.

Harner Decl., Exh. C at Harner_000074. The syllabus also noted that Dr. Harner's office hours were Tuesdays from 12:30-1:30pm and by appointment. Harner Decl. ¶9; Ex. C at Harner_000063.

**E.      The Zine Assignment.**

As detailed in the course syllabus and other materials, "Assignment 2 – Community Response Zine" required students to create a mini-zine (booklet) about a community or individual response to a social justice issue. Harner Decl. ¶¶11-13, Exh. C at Harner_000068. Dr. Harner provided students with the zine assignment details and a grading rubric. Harner Decl. ¶¶12-14; Exhs. B (at UWT_000151-153), D, E. The assignment was worth up to ten percent of a student's final grade. *Id*., Exh. C, at Harner_000067.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 4
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

Both the syllabus and zine assignment details expressly stated: "Please note – if topic/content is not aligned with social work values & ethics, students may be asked to revise and resubmit the assignment." Harner Decl. ¶13, Exh. C at Harner_000068; Exh. D at Harner_000992. Similarly, the assignment "rubric" stated that: "Topic/content is appropriate, aligned with social work values/ethics." *Id.*, Exh. E.  Additionally, students were required to use content based on "reputable, trustworthy sources grounded in both empirical data & the lived experiences of the oppressed/marginalized group." Harner Decl. Ex. D at Harner_000993; *see also id.*, Exh. B at Harner_000151-153; Exh. E.

## F.      Plaintiff's Proposed Zine Topic.

Plaintiff reviewed the syllabus, including the description of the zine project, and received and read the supplemental materials provided by Dr. Harner explaining the assignment's purpose and expectations. Plaintiff's Dep. 132:11–135:22. Plaintiff further understood that if a proposed topic did not align with social work values and ethics, students could be required to revise and resubmit their work.  *Id*. 137:2–13.

On April 20, 2023, Plaintiff approached Dr. Harner during class to discuss a proposed zine topic.  Harner Decl. ¶15. Plaintiff presented an article on www.dailymail.co.uk and asked to do her zine assignment on the issue of "trans" people sexually assaulting others in prison.  *Id.*; Exh. F. Dr. Harner reaffirmed to Plaintiff that violence against women was a serious issue that she could use for the project. Harner Decl. ¶15. However, Plaintiff's proposed topic, and her reliance on the Daily Mail article, raised several concerns. *Id.*, ¶16. Most significantly, the proposed topic—transgender people, or cisgender men posing as transgender women, sexually assaulting others in prisons— perpetuated a harmful and inaccurate stereotype of transgender individuals as sexual predators. *Id.*

Dr. Harner relayed to Plaintiff their concern that this topic was not aligned with social work values and ethics, and was not a community or individual response to a social justice issue. *Id.* Additionally, Dr. Harner had concerns about the Daily Mail as a reliable source. *Id.*   Plaintiff, however, resisted Dr. Harner's attempts to redirect her to an appropriate topic and repeated that she

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 5
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

wanted to focus on people "pretending to be trans" to be housed in prisons with women to sexually assault them. *Id.*, ¶17.

Concerned, Dr. Harner sent an email summarizing the encounter to Dr. Claudia Sellmaier, Chair of the BASW Program. Harner Decl. ¶17, Exh. G.  Dr. Sellmaier shared Dr. Harner's concerns. Declaration of Claudia Sellmaier ("Sellmaier Decl.") ¶4, Exh. B.

A week later, on April 27, 2023, Dr. Harner conducted one-on-one check-ins with each student about their draft zines. Harner Decl. ¶19. With many students, Dr. Harner had limited time per student. *Id.* When Dr. Harner approached Plaintiff, Plaintiff showed her draft zine, a copy of which is at pages 11-15 of the First Amended Complaint. *Id*; *and see* FAC (Dkt. 56), at pp.11-15. Dr. Harner reviewed Plaintiff's draft and found it to be problematic and concerning. Harner Decl., ¶19.

Plaintiff's draft zine characterized transgender women as "male offenders" who assaulted female prisoners and, therefore, suggested transgender women should be assigned to single-sex, male-only prisons.  *Id*.  The draft zine touted the "Keep Prisons Single Sex" campaign.   FAC at p.15.  As with the Daily Mail article, Plaintiff's draft zine perpetuated a harmful and inaccurate stereotype of transgender individuals as sexual predators and was not aligned with social work values and ethics, particularly the values of social justice, dignity, and worth of the person.  Harner Decl., ¶19.   Additionally, Plaintiff's draft zine conflicted with NASW's official position that, in jails and prisons, "transgender individuals [be] placed according to their self-identified gender identity."  *Id*; Exh. H (at Harner_000701-702).  Moreover, Plaintiff's draft did not focus on a response to a social justice issue and relied upon questionable sources.  Harner Decl. ¶20.

Dr. Harner advised Plaintiff her proposed topic did not align with social work values nor did it meet the basic assignment requirements. *Id*. ¶21. As before, Plaintiff repeatedly interrupted Dr. Harner and did not appear to listen. *Id.* Dr. Harner became concerned that their discussion could negatively impact other students in the class, including those who identified as transgender. *Id.* Given this and the limited time, Dr. Harner repeatedly told Plaintiff that they could not continue the

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 6
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

conversation then and asked to continue the conversation at a later time. *Id.* Dr. Harner suggested Plaintiff email them to set up a time to talk or come during office hours, which were listed in the syllabus. *Id.*

Plaintiff ignored Dr. Harner's requests and continued discussing the issue in class. *Id.* Eventually Plaintiff packed her things and left class in a hurry. *Id.* She returned shortly thereafter and abruptly told Dr. Harner that she would stop by Dr. Harner's office at 3:00 p.m. *Id.* Dr. Harner was not available then, and Plaintiff did not schedule another time to meet or visit Dr. Harner during office hours. *Id.*

That afternoon, Dr. Harner sent Plaintiff a follow-up email. Harner Decl. ¶22; Exh. I. Dr. Harner informed Plaintiff that they were unavailable to meet that afternoon, but that Plaintiff could, in the interim, email Dr. Sellmaier, the BASW Program chair, or Chirs Barrans, Plaintiff's faculty advisor. *Id.* Ex. I. Dr. Harner's email reiterated that violence against women is an important topic, but that Plaintiff's conversation in class that day and current framing of the topic was harmful and not aligned with social work values and ethics. *Id.* Dr. Harner provided Plaintiff with links to three sources, including several concerning social work values and ethics published by the NASW. Harner Decl., Exhs. J, K, L. Plaintiff did not respond. Harner Decl., ¶22.

## G.    Others Share Dr. Harner's Concern About Plaintiff's Zine Topic.

The same day, Dr. Harner met with School Dean Keva Miller to discuss Plaintiff's zine. Harner Decl. ¶23; Miller Decl. ¶8. Dean Miller shared Dr. Harner's concerns that the proposed topic perpetuated a harmful and inaccurate stereotype of transgender individuals and that it was not aligned with social work values and ethics. Miller Decl. ¶8. Given that Dr. Harner had already twice tried unsuccessfully to resolve the concern, Dean Miller recommended Dr. Harner request to convene the Professional Standards Committee ("PSC"). Miller Decl. ¶7, Exh. F at Sellmaier_000043, Exh. G.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 7
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

Dr. Harner followed Dean Miller's recommendation and, the same day, submitted a PSC "Request to Convene" form concerning Plaintiff's proposal of "an extremely anti-trans topic for class project." Harner Decl. ¶23; Exh. M.

While efforts were made to schedule a PSC meeting, Dr. Harner emailed Plaintiff 15 alternative zine topics concerning community and individual responses to the broader issue of violence against women. Harner Decl. ¶22; Exh. I. Plaintiff did not respond. Harner Decl. ¶22.

Plaintiff met with BASW Program Chair, Dr. Claudia Sellmaier, on May 2, 2023. Sellmaier Decl. ¶8. During the meeting, Plaintiff showed Dr. Sellmaier her draft zine and they discussed the zine's content – specifically, the call to have transgender individuals housed in prisons based on their birth sex. *Id.* Dr. Sellmaier brought NASW's publication, Social Work Speaks,[2] to discuss how housing transgender individuals based on birth sex does not align with current practice recommendations and conflicts with the NASW Code of Ethics. *Id.* Dr. Sellmaier also discussed how sex segregated housing assignments increase the risk for violence and harassment for transgender individuals. *Id.* Plaintiff claimed that the zine content did not reflect her personal viewpoint, but rather information she found online. *Id.* at ¶9. Lastly, Dr. Sellmaier spoke briefly about the PSC process. *Id*. at ¶8. Plaintiff thanked Dr. Sellmaier, told her the conversation was very helpful, and asserted that she now understood the issues. *Id.*

**H.    The PSC Meeting.**

On May 16, 2023, Dr. Andrea Hill chaired a PSC meeting attended by PSC member Dr. Sellmaier, Plaintiff, Plaintiff's student advocate, Roseann Martinez, and Dr. Harner. Sellmaier Decl. ¶8. After Dr. Hill made introductory comments, Dr. Harner, as the referring professor, explained they contacted the PSC because of concerns over Plaintiff's zine topic and her unprofessional communications. *Id*.; Harner Decl. ¶24. Plaintiff then spoke, claiming, among other things, that

---

[2] NASW's Social Works Speaks publication sets forth the organization's official positions on a wide variety of issues, including transgender related issues. Harner Decl., Exh. H.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 8
CASE NO. 3:25-cv-05079-DGE

she did not know why she was there or what she had done wrong. Sellmaier Decl. ¶9; Harner Decl. ¶24.

Drs. Hill and Sellmaier conferred privately and discussed the appropriate next steps. Declaration of Andrea Hill ("Hill Decl."), ¶9; Harner Decl., ¶25. Drs. Hill and Sellmaier were concerned about Plaintiff's ability to engage in self-reflection concerning potential biases towards transgender individuals, as well as her ability to communicate professionally. Sellmaier Decl. ¶10. They also held concerns about Plaintiff's adherence to the NASW Code of Ethics, specifically with respect to human dignity, social justice, competence and integrity. *Id.* Drs. Hill and Sellmaier determined the PSC would require Plaintiff to write two essays to address two concerns: the first concern being the content of the zine and how it aligns with social justice and the second concern regarding professional communications. *Id.*

After this private deliberation, Drs. Hill and Sellmaier informed Plaintiff of their decision to assign two essays. They asked Plaintiff if she agreed and offered to answer any questions. Hill Decl., ¶9; Sellmaier Decl., ¶10. Plaintiff replied that she agreed and did not have any questions. Hill Decl., ¶9; Sellmaier Decl., ¶10.

**I.    The PSC's May 24, 2023 Two-Essay Assignment Letter.**

On May 24, 2023, Dr. Hill, on behalf of the PSC, sent Plaintiff a letter summarizing the PSC meeting and detailing the two four-page essay assignments designed to "provide evidence of reflection and growth." Hill Decl. ¶10; Exh. F.

The first essay required Plaintiff to summarize the Social Works Speaks chapter on transgender and gender nonconforming individuals; discuss two examples and the specific roles of social workers in achieving them; briefly summarize the experiences of transgender people in prisons; and describe how Plaintiff will continue to grow her understanding of the experiences of transgender people and social work's responsibility to that community. *Id*.

The second essay required Plaintiff to utilize the BASW Program Manual, the NASW Code of Ethics, and the CSWE EPAS, to summarize essential skills, values and competencies for social

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 9
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

work students as they relate to professional behavior and communication, social justice, and diversity; discuss two to three ways these skills, values and competencies may show up in an educational setting; discuss how these topics relate to engaging appropriately with feedback; and describe how Plaintiff will apply these skills, values, and competencies in her behavior and communication in her future academic work.  *Id*.

Plaintiff was required to submit the essays by October 31, 2023. *Id*.

**J.      Plaintiff Changes Her Zine Topic and Completes the Class.**

Plaintiff ultimately changed her zine to an organization focused on ending death and suffering to migrants.  Harner Decl., ¶27[3]. She received a B grade (86%) in the 404 Class. *Id.*

**K.      Plaintiff's Repeated Questions Over the Summer of 2023.**

In July 2023, two months after the PSC assigned Plaintiff two essays, Plaintiff emailed Dr. Hill questioning how her draft zine was not aligned with social work standards, what she was accused of, and why she was being disciplined.  Hill Decl., Ex. F.  Dr. Hill provided Plaintiff a lengthy response. Hill Decl., Exh. G.  Shortly thereafter, however, Plaintiff re-asked many of the same questions. *Id*., Exh. I.  Dr. Hill referred Plaintiff to the prior communications.  *Id*.

On August 27, 2023, Plaintiff sent a lengthy email to Dean Miller and Dr. Elavie Ndura, then-Vice Chancellor for Equity and Inclusion, recapping her view of the events, claiming she was being "targeted as a First Gen Hispanic Student," and forwarding the same questions she had previously sent to Dr. Hill.  Miller Decl. Ex. H. Dean Miller informed Plaintiff that Dr. Ndura would meet with her over concerns of alleged discrimination, that most of her questions required her own personal reflection, and encouraged Plaintiff to satisfy the PSC's requirements. *Id.*

Dr. Ndura met with Plaintiff on September 6, 2023. Declaration of Elavie Ndura ("Ndura Decl."), ¶3. During that meeting Plaintiff acknowledged her zine topic was about "keeping women's

---

[3] Plaintiff received 3 out of 10 on her final zine assignment, a score reflecting her failure to meet basic assignment guidelines, among other issues.  Harner Decl., ¶27.  Plaintiff was afforded the opportunity to resubmit the assignment to address these issues, but she did not.  *Id*.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 10
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

prisons single gender . . . [and] transgender people falsifying to be sent to women's prisons and impregnating disabled women." *Id.* Ex. A. Plaintiff claimed she felt "unheard" but did not raise concerns about discrimination. *Id.*

**L.    Plaintiff Refuses to Write the Essays, Claiming PSC Did Not Answer Her Questions.**

Plaintiff knew that, if she did not write the essays, being dropped from the BASW Program was a possibility and she was concerned about that outcome.  Plaintiff's Dep., 316:18-317:7. Nonetheless, she decided to not write the essays.

On the October 31, 2023 deadline, Plaintiff emailed Dr. Hill, Dr. Harner, Dean Miller and Roseann Martinez to inform them she would not write the required essays. Miller Decl., ¶12, Exh. I. She claimed that she had received "unsuccessful responses from academic leadership" to her questions and "therefore" she had "decided to not" write the essays.  *Id*. Plaintiff admits she refused to write the essays because she did not, in her view, receive answers to her questions.  Plaintiff's Dep., 294:22-295:25.  Plaintiff admits that she did not even try to write either essay. *Id.* at 283:1-9. In fact, she did not even read the Social Work Speaks chapter.  *Id*., at 289:6-18, 290:22-24.

Dean Miller informed Plaintiff that the PSC would convene and determine an outcome on her status as a BASW student.  Miller Decl., Exh. I.

On November 27, 2023, the PSC reconvened. Sellmaier Decl. ¶15. During the meeting, Plaintiff confirmed she would not write the essays. *Id.*

**M.    Plaintiff Is Dropped from the BASW Program.**

Without the essays, the PSC could not assess whether Plaintiff had addressed the identified concerns.  Sellmaier Decl. ¶16. Further, Plaintiff's refusal to complete the assignments increased the PSC's concerns regarding her ability to engage in self-reflection and demonstrate professionalism. *Id.*  Plaintiff's failure to submit the essays prevented the PSC from evaluating whether Plaintiff was prepared to uphold the NASW Code of Ethics, as the School is required to do as part of its accreditation.  *Id.*  For these reasons, the PSC recommended to Dean Miller that Plaintiff be dropped from the BASW Program, and Dean Miller concurred. Miller Decl., ¶14.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 11
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

Accordingly, on December 8, 2023, the PSC sent Plaintiff a letter, co-signed by Dean Miller, informing her that she had been dropped from the BASW program.  Hill Decl., Exh. L.  The letter explained that Plaintiff's proposed zine topic portrayed transgender women as "predatory and violent" and was "in direct contrast with social work values, ethical principles, and ethical standards as outlined in the [NASW] Code of Ethics."  *Id*.  The letter also detailed communications with Plaintiff and concluded that:

> Your continued refusal to complete the required essays that would allow you to demonstrate your practice readiness raises serious concerns.  Therefore, the [PSC] concluded that it would be most appropriate to recommend that you are dropped from the [BASW] program. The Dean for the School of Social Work has received this recommendation and upholds the decision and has signed this letter in support of the decision.

*Id*.  The letter noted that Plaintiff was not expelled from UWT and remained eligible to pursue a different University program. *Id*.

### III.   ARGUMENT

**A.      Legal Standard.**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations admissions, and other materials in the record show that "there is no genuine dispute as to any material fact[.]" Fed. R. Civ. P. 56(a).

**B.      Plaintiff's First Amendment Retaliation Claim Fails.**

Plaintiff claims that the individual Defendants retaliated against her for engaging in protected speech.  FAC ¶4.01.  She alleges that she engaged in protected speech in submitting her draft zine and in "defending it," "advocating for herself," and in seeking "to be heard and respected on her views of public concern." *Id.* at ¶4.03. Plaintiff further alleges that Dr. Harner retaliated against her by referring her to and participating in the PSC process, and that Drs. Hill and Sellmaier retaliated against her for participating in the PSC process, which led to adverse action against her.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 12
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

*Id.* at ¶¶4.08-4.09. Plaintiff fails to make any specific factual allegations against Dean Miller. *See id.* ¶¶4.02-4.16.

To prevail on a First Amendment retaliation claim, a plaintiff must prove that (1) she engaged in constitutionally protected activity; (2) the defendant subjected her to adverse action that would chill a person of ordinary firmness from continuing the engage in the protected activity; and (3) there was a substantial causal relationship between the protected activity and the adverse action. *O'Handley v. Weber*, 62 F.4th 1145, 1163 (9th Cir. 2023) (internal quotation and citation omitted). How a free speech claim is evaluated, however, depends on the context.

**1.** ***The University Has the Right to Regulate Student Curricular Speech.***

"[I]n student speech cases, First Amendment rights must be analyzed in light of the special characteristics of the school environment." *Keeton v. Anderson-Wiley*, 664 F.3d 865, 871 (11th Cir. 2011) (internal citation omitted). While it is "clear that students do not 'shed their constitutional rights to freedom of speech of expression at the schoolhouse gate[,]'" *Morse v. Frederick*, 551 U.S. 393, 396 (2007) (internal quotation omitted), "[a] school need not tolerate student speech that is inconsistent with its 'basic educational mission,' even though the government could not censor similar speech outside the school," *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988) (citation omitted).

Educators have broad authority to exercise control over school-sponsored speech, i.e., speech that is supervised by faculty members and designed to impart particular knowledge or skills to students. *Hazelwood*, 484 U.S. at 271. "[A]n educator can, consistent with the First Amendment, require that a student comply with the terms of an academic assignment." *Brown v. Li*, 308 F.3d 939, 949 (9th Cir. 2002). With respect to students' curricular speech, "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." *Hazelwood*, 484 U.S. at 272-73.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 13
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

For example, "a teacher may require a student to write a paper from a particular viewpoint, even if it is a view-point with which the student disagrees, so long as the requirement serves a legitimate pedagogical purpose." *Brown*, 308 F.3d at 953. To wit:

> [A] college history teacher may demand a paper defending Prohibition, and a law-school professor may assign students to write 'opinions' showing how Justices Ginsburg and Scalia would analyze a particular Fourth Amendment question.

*Id*. And "the First Amendment does not require an educator to change the assignment to suit the student's opinion… ." *Id*., 949.  "The free speech rights of students in the classroom must be limited because effective education depends not only on controlling boisterous conduct, but also on maintaining the focus of the class on the assignment in question." *Settle v. Dickson Cnty. Sch. Bd*., 53 F.3d 152, 155 (6th Cir. 1995). "The bottom line is that when a teacher makes an assignment, even if she does it poorly, the student has no constitutional right to do something other than that assignment and receive credit for it."  *Id*. at 158 (Batchelder, J., concurring judgment).

Universities have considerable discretion in determining the appropriateness of student work product created as part of school curricula. *Li* is instructive. 308 F.3d 939 (9th Cir. 2002). There, a graduate student sued the university for various First Amendment claims after it failed to approve his thesis, due to a "Disacknowledgements" section in the thesis which did not meet applicable professional standards. *Li*, 308 F.3d at 943-46.  The district court granted the defendants' motion for summary judgment dismissal of the federal claims under qualified immunity, and the Ninth Circuit affirmed.  *Id*.  The Ninth Circuit held that because the student's thesis was part of the curriculum and not part of "a public forum," it was subject to the school's "reasonable regulation, including a pedagogically appropriate requirement that the thesis comply with professional standards regarding his discipline."  *Id*. at 952, 954.  The Court found that the university officials did not violate the student's First Amendment rights in rejecting his thesis as their "decision was reasonably related to a legitimate pedagogical objective:  teaching Plaintiff the proper format for a scientific paper."  *Id*.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 14
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

**2.**     ***The University Has the Right to Ensure Adherence to Professional Standards.***

Universities may require adherence to professional standards and may, without violating the First Amendment, drop students when they engage in speech and/or conduct contrary to such standards. *Keefe v. Adams*, 840 F.3d 523, 530 (8th Cir. 2016) (collecting cases); *Oyama v. University of Hawaii*, 813 F.3d 850, 866-68 (9th Cir. 2016); *Keeton*, 664 F.3d at 878-7. *Keeton* and *Oyama* are particularly instructive here.

In *Keeton*, a student enrolled in Augusta State University's ("ASU") counselor education program stated, among other things, that her religion led her to believe that, "gender is fixed and binary (i.e., male or female)," homosexuality is a "lifestyle, not a state of being," and that if she counseled a homosexual student she would attempt to convert them to be heterosexual. 664 F.3d at 868. ASU viewed the student's statements as conflicting with national counselor professional ethics standards, many of which are strikingly similar to those applicable to social workers. *Id*. at 869. Consequently, ASU required the student to complete a "remediation plan" which included attending workshops, reading counseling professional standards in working with the LGBTQ population, and submitting monthly written essays explaining what she learned from this research. *Id*. at 869-70. After refusing to participate, plaintiff sued for various First Amendment violations, including retaliation. *Id*. at 871.

The district court rejected the student's motion to enjoin ASU from dismissing her from the program, which the Eleventh Circuit affirmed. *Keeton*, 664 F.3d at 878-79. The court held the student did not have a constitutional right to refuse to complete the remediation plan. *Id*. The court noted that ASU imposed the remediation plan not because of the student expressed her personal views, but because "she was unwilling to comply with" the counseling code of ethics. *Id*. at 877-78. The court held: "That this unwillingness to abide by ASU's curriculum and her chosen profession's ethical standards initially became apparent through her writings and class discussions does not cloak it in First Amendment protection." *Id*. at 878.   The court explained that ASU's remediation plan did not force the student "to profess a belief contrary to her own personal beliefs,"

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 15
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

but instead required her to demonstrate understanding of and adherence to professional standards, which universities and colleges can require as a condition of participation in a program. *Id.* at 879.

In *Oyama*, plaintiff sued the University of Hawaii ("UH") for violating the First Amendment after it denied his application to become a student teacher, a prerequisite for recommendation to the State of Hawaii's teacher certification board. *Oyama*, 813 F.3d at 854-60. UH denied the application because the student made statements contrary to established professional teaching standards, including expressing his view that sexual relationships between adults and children should be permissible and legal, and claiming that disabled students were "fakers." *Id.* at 856-57. In affirming the summary judgment dismissal of the student's First Amendment claim, the Ninth Circuit found that UH did not violate the student's free speech rights "because its decision related directly to defined and established professional standards, was narrowly tailored to serve the University's core mission of evaluation [the student's] suitability for teaching, and reflected reasonable professional judgment." *Id*. at 860-61.  The Court held that "[t]he First Amendment does not prevent the University from denying [plaintiff's] student teaching application after determining that his statements reflected a failure to absorb these defined and established professional standards." *Id*. at 869.

### 3.    ***Plaintiff's First Amendment Claim Fails as a Matter of Law.***

Against this backdrop, Plaintiff's First Amendment retaliation claim fails. The School had broad authority to set the terms of student curricula in the BASW Program, and Dr. Harner had the same broad authority in setting the parameters for assignments in the 404 Class, including the zine assignment.  More specifically, Dr. Harner had the authority to require that student zine topics align with social work standards, particularly given they were required to ensure students complied with NASW standards and that students demonstrated competence in the CSWE EPAS and the Essential Skills.  Harner Decl. ¶3; Miller Decl. ¶¶2-6.  As with the student's thesis in *Brown*, Plaintiff's zine topic was not proposed in "a public forum" but in a college classroom as part of assigned curriculum, making its content subject to Dr. Harner's reasonable assessment.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 16
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

Here, Dr. Harner reasonably determined that Plaintiff's proposed zine topic—which referred to transgender women as males, portrayed them as violent, sexual predators, and which advocated for transgender women to be assigned to male-only prisons—was not in alignment with those social work standards, including the dignity and worth of the person, and the right of self-determination concerning gender identity and expression. Harner Decl. ¶¶16-20. As with defendants in *Li*, Dr. Harner's determination was reasonably related to a legitimate pedagogical purpose—here, ensuring that social work students understand and adhere to applicable professional standards. *Id*.; *see also* Declaration of Dr. Marianne Yoshioka ("Yoshioka Decl."), Exh. A at 2-12 (academic social work expert opining that Plaintiff's proposed zine topic did not align with social work values and ethics and it was reasonable under circumstances for Dr. Harner to refer Plaintiff to the PSC).

The PSC's two-essay assignment, much like ASU's remediation plan in *Keeton,* reasonably sought to ensure Plaintiff's understanding of and adherence to professional social work standards. Sellmaier Decl. ¶¶10-12; Hill Decl., Exh. E. And as with ASU in *Keeton*, the School did not require Plaintiff to write the two essays due to any expressed personal views,[4] but to ensure comprehension and adherence to applicable professional standards. Sellmaier Decl. ¶¶10-12. Further, the two-essay assignment was reasonably formulated to ensure that Plaintiff would engage in the critical self-reflection necessary to keep any potential biases in-check when dealing with diverse populations as required by applicable social work standards. Yoshioka Decl., Exh. B at 12-14. "Writing assignments of this type are common tools used by standards committees in social work programs to promote reflection, assess understanding of professional values, and support student growth. *Id*., Exh. B at p.12. The goal is not to force a student to say something they do not believe, but to "deepen their understanding of the professional requirements of a social worker." *Id*.

Plaintiff did not even try to grapple with the assignment: she refused to read one assigned article and she did not so much as try to draft the two essays. Plaintiff's Dep., 283:1-9, 289:6-18,

---

[4] Plaintiff told Dr. Sellmaier that the draft zine content did not reflect her personal views but only contained content she happened to find on the internet. Sellmaier Decl. ¶9.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 17
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

290:22-24. This gave the PSC members and Dean Miller considerable concern over whether Plaintiff understood and would follow the professional standards if she were to become a licensed social worker. That Plaintiff demonstrated her unwillingness to abide by the curriculum and standards became apparent through her zine assignment "does not cloak it in First Amendment protection." *Keeton* 664 F.3d at 878. Under the circumstances, it was reasonable for the University to drop Plaintiff from the BASW Program. Yoshioka Decl., Exh. B at 13-14 (opining "it was reasonable for the BASW Program to dismiss Ms. Arias"…and "dismissal is a reasonable and appropriate conclusion for a student who has not been willing or able to reflect upon and discuss an important issue for her professional development.").

Like ASU, the University was entitled to condition Plaintiff's continued participation in the BASW Program on her demonstrated understanding of these professional standards. The University's academic judgment in this instance is entitled to "significant deference." *Keeton*, 664 F.3d at 879. The First Amendment does not insulate a student from the academic consequences of declining to complete program requirements or for, as here, "a failure to absorb… defined and established professional standards." *Oyama* 813 F.3d at 869.

Plaintiff's First Amendment Retaliation claim fails and should be dismissed.

### 4. *Qualified Immunity Also Bars Plaintiff's First Amendment Claim.*

Even if Plaintiff can demonstrate that she engaged in protected speech, which she cannot, the individual Defendants are nonetheless entitled to qualified immunity on Plaintiff's First Amendment retaliation claim. Qualified immunity protects an official who "reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right." *Hunt v. Cnty of Orange*, 672 F.3d 606, 615-16 (9th Cir. 2012). Assessing whether an official is entitled to immunity is a two-prong inquiry: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Pavel v. Univ. of Oregon*, 774 F'App'x 1022, 1024 (9th Cir. 2019) (cert denied).

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 18
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation and quotation omitted). Although "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 12 (cleaned up). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Evans v. Skolknik*, 997 F.3d 1060, 1066 (9th Cir. 2021). The plaintiff has the burden of establishing that the law was well-established. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

Plaintiff cannot identify any clearly established law holding that university officials violate the First Amendment by referring a student to a professional standards committee for failing to comply with assignment requirements, and subsequently dismissing that student for refusing to comply with the committee's remedial conditions. The absence of such authority is dispositive.

The Ninth Circuit even noted that it could not find any Supreme Court cases discussing the appropriate standard for reviewing a university's regulation of students' curricular speech. *See Li*, 308 F.3d at 949.

> The Supreme Court's jurisprudence does not hold that an institution's interest in mandating its curriculum and in limiting a student's speech to that which is germane to a particular *academic* assignment diminishes as students age. Indeed, arguably the need for academic discipline and editorial rigor increases as a student's learning progresses.

*Id.* at 951. The Ninth Circuit ultimately granted qualified immunity to the defendants in *Li*, recognizing that the contours of any asserted First Amendment right in the curricular setting were not clearly established.

The same reasoning compels the same result here. Defendants acted within the bounds of their academic and professional obligations—first by referring Plaintiff to PSC when she failed to

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 19
CASE NO. 3:25-cv-05079-DGE

adhere to assignment and program standards, and then by dismissing her only after she refused to complete the Committee's remedial requirements.

In fact, in finding Plaintiff's other First Amendment claims barred by qualified immunity, this Court has already held that Plaintiff failed to establish the individual Defendants violated clearly established constitutional right when they "required her to submit essays related to transgender individuals, and removed her from the BASW Program for not completing the written assignment." Dkt. No. 31, at 11-14. The same holds true for Plaintiff's First Amendment retaliation claim.

## C. Plaintiff's Tortious Interference with Business Expectancy Claim Fails.

Plaintiff's claim for tortious interference fails with her First Amendment retaliation claim. This Court previously held that Plaintiff's tortious interference claim can only be "based on her First Amendment retaliation claim." Dkt. No. 49, pp.16-17. As Plaintiff's retaliation claim fails, so too does her tortious interference claim. The Court need not proceed further on this claim. Regardless, Plaintiff's tortious interference claim fails for the additional reasons below.

To state a tortious interference claim under Washington law, a plaintiff must show: "(1) [t]he existence of a valid contractual relationship or business expectancy, (2) defendants had knowledge of that relationship, (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy, (4) the interference was for an improper purpose or used improper means, and (5) resultant damage." *Travelers Casualty & Surety Co. of America v. Decker*, 756 F. Supp. 3d 1097, 1104 (W.D. Wash. 2024) (quoting *Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*, 279 P.3d 487, 498 (Wash. Ct. App. 2012)).

Plaintiff premises her tortious interference claim on two allegations: First, that she allegedly "had a valid to work at Consejo [Counseling and Referral Services] at least for the specified time and in the designated role." FAC ¶4.17. Second, that "Consejo expected to employ Arias as a social worker upon graduation." FAC ¶4.20. Neither claim is supported by the record.

As part of the program requirements, BASW students must participate in a credit-based, supervised field practicum during their senior year by providing services to a community agency.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 20
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

Declaration of Christopher Barrans ("Barrans Decl."), ¶3. The practicum is an unpaid internship and not employment. *Id*.¶¶3-4; Declaration of Melanie Lainez ("Lainez Decl."), ¶¶ 4, 6. Critically, one must be a current BASW student to participate in the practicum program. Barrons Decl. ¶4. If a student is no longer in the BASW Program, they are no longer eligible to participate in practicum. *Id*. Here, when the School dropped Plaintiff from the BASW Program, she was necessarily and appropriately removed from the Consejo practicum because she was no longer a social work student. *Id*. Consejo agrees:

> Ms. Arias' internship at Consejo ended in December 2023 when our organization learned that she had been dropped from the BASW program at the University of Washington, Tacoma. It was appropriate for the internship to end at that juncture as Ms. Arias' internship (like others) was dependent upon her continued enrollment in an undergraduate or graduate degree program.

Lainez Decl., ¶10. Plaintiff had no valid contractual right or expectancy to participate in the Consejo internship after she was dropped from the BASW Program.

Moreover, the School had a contractual right to terminate Plaintiff's internship at Consejo. The University and Consejo are parties to an Affiliation Agreement which governs the terms and conditions of the practicum placement of University students at Consejo. Barrans Decl. ¶4; Exh. A. Under the Affiliation Agreement, the University has the right to determine which students are assigned to a particular agency and therefore had the contractual right to terminate Plaintiff's internship at Consejo. *Id*.

The University also cannot tortiously interfere with its own contract. Under well-settled Washington law, "[r]ecovery for tortious interference with a contractual relationship requires that the interferer be an intermeddling third party; a party to a contract cannot be held liable in tort for interference with that contract." *Houser v. City of Redmond*, 91 Wn.2d 35, 39, 586 P.2d 482 (1978). In other words: "A party cannot tortuously interfere with its own contract." *Singh v. State*, 18 Wn.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 21
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

App. 2d 1061, 2021 WL 3619920 (2021) (citation omitted).  In short, Plaintiff did not have a valid contractual relationship to continue in the practicum at Consejo for a specified period of time.

Plaintiff's second theory—that Consejo expected to employ her as a social worker upon graduation—is also unsupported. Consejo principals have attested under oath that: (a) internships at Consejo are designed to provide training to interns, but do not necessarily lead to full-time employment, and many have interned at Consejo without ever receiving a job offer or working at Consejo, (b) Consejo does not promise or otherwise represent to interns that their internships guarantee employment, (c) Plaintiff's internship at Consejo was not intended to transition to a licensed social worker position, and (d) Consejo did not promise Plaintiff a job at the conclusion of her internship or upon graduation, and there was no expectation that she would be employed there upon graduation. Lainez Decl. ¶¶4-9;  Declaration of Jeanette Rivera ("Rivera Decl."), ¶¶3-4.  Put simply, Plaintiff had no valid contractual relationship or business expectancy to work at Consejo or, for that matter, anywhere else.

Even if Plaintiff could demonstrate she had a contractual relationship with Consejo – she cannot – she is unable to demonstrate that Defendants interfered with that contract for an improper purpose. *See St. Marie v. Jefferson Cnty.*, No. 3:22-CV-05893-DGE, 2024 WL 3992633, at *15 (W.D. Wash. Aug. 29, 2024) (dismissing tortious interference claim where plaintiff failed to allege Defendants acted with improper purpose or means).  As described *supra*, the University did not act with an improper purpose or motive in dropping her from the BASW Program.

Because Plaintiff cannot establish either the existence of a valid business expectancy or any improper interference by Defendants, this claim fails and should be dismissed.

**D.    Plaintiff's Breach of Contract Fails.**

As with Plaintiff's tortious interference claim, the Court allowed Plaintiff's breach of contract claim to be premised *only* "to the extent it is based on her First Amendment retaliation claim."  Dkt. No. 49 at 20. As Plaintiff's retaliation claim fails, so too does her breach of contract

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 22
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

claim. But it also fails because Plaintiff has failed to identify any binding contractual term which the University breached.

Despite the Court making clear in its November 17, 2025 Order (Dkt. No. 49), that Plaintiff could *only* premise her breach of contract claim on First Amendment retaliation, Plaintiff filed a FAC which alleges contractual breach beyond that permitted by the Court. FAC ¶¶4.29-4.47. As a threshold matter, the Court should decline to entertain any contractual breach allegation premised upon anything other than an alleged First Amendment retaliation. Furthermore, Plaintiff cannot premise her contract claim on theories this Court previously rejected, such as allegations of discrimination, FAC ¶¶4.37, 4.38, and compelled speech, FAC ¶¶4.39, 4.42. Dkt. No. 31, pp. 6-10, 13-14.

Plaintiff's other contractual breach theories are deficient. The essential terms of a contract are subject matter, parties, promise, terms, and conditions, and price of consideration. *Becker v. Wash. State. Univ.*, 165 Wn.App. 235, 246, 266 P.3d 893 (2011) (quotation omitted). A contract may be oral, written or implied. *Id.* Because Washington follows the objective manifestation test for contract, the parties must objectively manifest their mutual assent and the terms assented to must be sufficiently definite. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177-78, 94 P.3d 945 (2004). The party asserting the existence of a contract, whether express or implied, bears the burden of proving each essential element, including the existence of a mutual intention. *Johnson v. Nasi*, 50 Wn.2d 87, 91, 309 P.2d 380 (2004). The primary concern for courts is "to avoid trapping parties in surprise contractual obligations." *Keyston*, 152 Wn.2d at 178.

Washington courts recognize "the relationship between a student and university is primarily contractual in nature with specific terms to be found in the university bulletin and other publications." *Becker*, 165 Wn.App. at 246 (*quoting Marquez v. Univ. of Wash.*, 32 Wn.App. 302, 305, 648 P.2d 94 (1982). Additionally, the student-university relationship is unique, which means that "contract" law must be rigidly applied in all aspects, and cannot be stuffed into one doctrinal category. *Id.* at 246-47. Courts give universities "wide latitude and discretion" given that agreements

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 23
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

between universities and students are often not integrated, "the standard is that of reasonable expectations – what meaning the party making the manifestation . . . should reasonably give it." *Id.* (citing *Marquez*, 32 Wn.App. at 306).

Plaintiff boldly claims the University "promised Arias a degree in social work." FAC ¶4.36. The University made no such promise and Plaintiff cites to no University policy to support this assertion. *See, e.g.*, *Marquez*, 32 Wn.App. at 305-06 (University policy did not create "a right in the applicant to obtain a law degree absent his meeting and maintaining reasonable standards established by Law School."). No college student is guaranteed to graduate. "The possibility of academic failure is implicit in the nature of the educational contract between a student and a university." *Maas v. Corporation of Gonzaga Univ.*, 27 Wash.App. 397, 401 (1980).

Plaintiff further alleges that the University promised an education in social work "that conformed with" unspecified "academic standards…" and violated contractual promises when it terminated her from the program. FAC ¶¶4.39-4.41. It is unclear upon what "academic standards" Plaintiff premises this claim. To the extent she refers to purported quotes from the "Race & Equity Initiative" and "Diversity Blueprint," FAC ¶¶3.03, 3.04, Plaintiff has no recollection of reading the former and has not ever read the latter. Plaintiff's Dep., 95:12-20. Furthermore, the general, aspirational statements therein are not specific enough to give rise to binding contractual obligations. *See Keystone*, 152 Wn.2d at 178 ("[I]f a term is so indefinite that a court cannot decide just what it means, and fix exactly the legal liability of the parties, there cannot be an enforceable agreement.") (citation and quotation omitted).

Moreover, Plaintiff's theory that the University breached contractual promises by dropping her from the BASW Program fails because the University's actions were pursuant to and in conformity with its express, and more specific, contractual rights. *T-Mobile USA Inc. v. Selective Insurance Co. of Am.*, 194 Wn.2d 413, 423, 450 P.3d 150 (2019) (where both general and specific provisions arguably apply, "the specific prevails over the general."). As explained above, the BASW Program Manual expressly allowed the School to drop BASW students who, like Plaintiff,

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 24
CASE NO. 3:25-cv-05079-DGE

Summit Law Group, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

do not comply with either NASW Code of Ethics, the Essential Skills, or the requirements of the PSC.  Miller Decl. Exh. F.

Plaintiff's breach of contract claim is analogous to a similar claim dismissed on summary judgment in *Doe v. Elson S. Floyd Coll. of Med. at Washington State Univ.*, No. 2:20-CV-00145-SMJ, 2021 WL 3375725 (E.D. Wash. Aug. 3, 2021). There, the plaintiff medical student signed a technical standards document governing professionalism upon enrollment. *Id.* at \*5. After multiple professionalism complaints, the school's evaluation committee placed her on academic probation and leave. *Id.* The court dismissed plaintiff' breach of contract claim because the university had reserved the right to dismiss students for failing to comply with its announced expectations and where the plaintiff failed to identify any specific contractual provision the university had breached. *Id.*  The same reasoning applies here. "Where [as here] the university 'act[s] on its announced expectations,' there is no liability for breach of contract." *Doe*, *supra* at \*5, *citing Becker*, *supra*.

## IV.   CONCLUSION

For the reasons set forth herein, Defendants respectfully request the Court dismiss Plaintiff's remaining claims pursuant to FRCP 56.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 25
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

DATED this 23rd day of February, 2026.

Respectfully submitted,

SUMMIT LAW GROUP, PLLC
Attorneys for University of Washington Tacoma, Vern Harner, Claudia Sellmaier, Andrea Hill, and Keva Miller

I CERTIFY THAT THIS MEMORANDUM CONTAINS 8,339 WORDS, IN COMPLIANCE WITH THE LOCAL CIVIL RULES.

By *s/Seth J. Berntsen*
   Seth J. Berntsen, WSBA No. 30379
   Rebecca R. Singleton, WSBA No. 57719
   *sethb@summitlaw.com*
   *rebeccas@summitlaw.com*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 26
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

CERTIFICATE OF SERVICE

I hereby certify that on this day I caused a true and correct copy of the foregoing to be served, as indicated, upon the following CM/ECF participants:

Joan K. Mell
III Branches Law, PLLC
1019 Regents Blvd, Suite 204
Fircrest, WA 98466
(253) 566-2510
joan@3brancheslaw.com

☐ US Mail, First Class
☐ By Legal Messenger
☐ Via Email
☒ Via CM/ECF

DATED this 23rd day of February, 2026.

_s/Dominique Barrientes_
Dominique Barrientes, Legal Assistant
*dominiqueb*@summitlaw.com

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 27
CASE NO. 3:25-cv-05079-DGE

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001