THE HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CLAUDIA ARIAS, an individual,<br><br>         Plaintiff,<br><br>v.<br><br>STATE OF WASHINGTON – UNIVERSITY OF WASHINGTON TACOMA ("UWT"), a state educational institute; VERN HARNER, officially and individually; CLAUDIA SELLMAIER, officially and individually; ANDREA HILL, officially and individually; KEVA MILLER, officially and individually; and ELAVIE NDURA, officially and individually<br><br>         Defendants. | Case No.: 3:25-cv-05079<br><br>**CLAUDIA ARIAS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT**<br><br>NOTE ON MOTION CALENDAR:<br>Monday, March 23, 2026 |

CLAUDIA ARIAS' RESPONSE TO MOTION
FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 1 of 1

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

**INTRODUCTION**

Claudia Arias brings an equally valuable perspective as Harner to the field of social work, a profession designed to serve all people indiscriminately regardless of political views. Defendants had no legitimate pedagogical purpose in expelling a thoughtful conservative based on their imagined perspective Arias was a weapon for right wing extremists. Harner fueled irrational fear in UWT colleagues because Arias was an obstacle to tenure. Harner believed Arias was questioning Harner's performance, anonymously. Arias was critical of Harner publicly. Harner triggered the PSC on false pretenses to silence her. Arias was an easy and desirable target for Harner who considered Arias transphobic for believing in birth gender and declining preferred pronouns. While Arias was not lobbying her personal viewpoints, the risk she might was the spin Harner projected.

Without explaining Harner's actions to Arias, defendants imposed disciplinary action, requiring two punitive essays that were ill-conceived. Harner prompted the subject matter when fabricating the notion that Arias had labeled transgender biological males rapists in a zine assignment. Harner designed the essays to force Arias to reject or inadequately articulate Harner's transgender viewpoint, setting Arias up for failure. The others deferred to Harner. Harner's prompt directing Arias to read Social Work Speaks, a publication not available at UWT, was not required reading for anyone other than Arias. Defendants had no content nor viewpoint neutral instructions nor objective grading criteria for Arias to navigate a positive outcome. Defendants' expulsion was not measured and directly targeted Arias' protected speech that posed no threat to the program or social work practice. Arias was was exceeding expectations academically and in the clinical setting where she is needed and valued and should be working right now. Defendants have held her back in violation of her rights and for improper reasons and purposes and in violation of its good faith obligations to administer its program fairly that should be reconciled at trial. Defendants' Motion for Summary Judgment should be denied.

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 1 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

**FACTS**

First generation student, Claudia Arias achieved academic success in higher education with Dean's List credentials at UWT. Arias Dec. 2. She was set to graduate with honors June of 2024 with a bachelor's degree in social work. Arias Dec. 1-2. Her goal was a mere quarter – approximately four courses – from achievement. *Id.* Then, she encountered Vern Harner a transgender advocate teaching the required Cultural Diversity and Social Justice course beginning **March 27, 2023**. Dkt. 80 at 2-3. Harner espouses gender as a choice and lobbies to improve the lives of queer and trans communities through advocacy and other interventions.[1] Harner invited the class to disclose preferred pronouns. Mell Dec. Ex. 60 Arias Dep. 128.[2] Arias declined the invitation. Mell Dec. Ex. 60 Arias Dep. 129. Harner asked the class the question: What is a female? Arias' response indicated she defined female based on birth gender. Mell Dec. Ex. Arias Dep. 129. Harner believed Arias suffered a "misalignment around transgender people" because Arias considered gender a birth characteristic rather than a choice and because Arias chose not to use preferred pronouns. Mell Dec. Ex. 65 Harner Dep. 95.

On **April 11, 2023**, Harner received an email critique from justbecause4469@hotmail.com. **App. A**, Mell Dec. Ex. 37 (Email). Harner deemed the critique a "microagression" rather than fair criticism. *Id.* Harner decided Arias sent it. Mell Dec. Ex. 36, 58. Harner was getting negative feedback in evaluations, which effect the tenure Harner desired. Mell Dec. Ex 65 at 52-57; Mell Dec. Ex. 56 & 57 (Under seal), Ex. 63 Yoshioka at 158-9. Harner sought retribution against Arias. Mell Dec. Ex. 36. Arias did not then know Harner blamed Arias for the critique.

---

[1] https://www.tacoma.uw.edu/or/faculty-research-profiles: "As a community-embedded activist, organizer, and scholar, their work aims to amplify ongoing efforts within trans and multiply marginalized communities….Dr. Harner's current work focuses on intracommunity support, engagement with social and health services, and quality of life of trans communities.

[2] All pinpoint cites for documents and deposition testimony are attached to the Mell Dec. abbreviated by Mell Dec. Ex. _. Witnesses attest to the authenticity of the records in their declarations or in the affixed dep transcripts.

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 2 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

Nine days later on **April 20, 2023**, the class was working on a zine assignment. Arias Dec. at 4. Harner gave students instructive materials that Harner altered in a self-serving fashion after the fact. Arias Dec. Ex. ¶ 19, compared to Dkt. 80 at ¶ 14. Harner's edits show how the actual classroom instructions did not justify Harner's later criticisms of Arias.[3] For instance, no formal citations were required, but Harner criticized the lack of them anyway and added that the sources needed to express the viewpoints of the "oppressed and marginalized group", presumably transgender persons not biological women. Mell Dec. Ex. 58 (Class notes) and Ex. 45 and 44. Arias sought Harner's input on Arias' topic of interest. Mell Dec. Ex. 60 Arias Dep at 165-166. Arias showed Harner Arias' internet search results. Arias Dec. at ¶ 10. Arias did not have open any article to read. *Id.* and Ex. 60. Arias Dep. at 167. Harner said very little. Mell Dec. Ex. 17 and Arias Dep. at 166. Harner told Arias to rely on a "reputable" source. *Id.* Harner said nothing to inform Arias that Harner believed Arias selected a transphobic topic or was not aligning her values with the practice of social work. Id. Arias Dec. ¶ 13 and 15. Without notice to Arias, Harner complained to then chair Sellmaier. Mell Dec. Ex. 36. Harner began with a late night, 10:13 pm, email entitled "noch eine weitere Anfrage…" (yet another request): Harner labeled Arias "transphobic" and the author of the critique email. *Id.* and **App. B**. Sellmaier responded 11:23 a.m. the following day **April 21, 2023** with plans to meet. **App. B.** To which Harner responded at 12:18 p.m. piling on even more negative spin on Arias. **App. B.** Given Harner's scrutiny, Sellmaier became "speechless" and firmly captured by Harner's pretext. **App. B**. Harner and Sellmaier apparently then conferred in Zoom that Monday, **April 24, 2023,** without Arias. Arias did not then know about Harner's disparagements of her to Sellmaier. Arias Dec. at ¶ 14. Arias did not know Sellmaier's role was to support Harner. Dkt. 82 at 2. Harner emailed the class instructing them to be

---

[3] In the details to the Format and Topic instructions Harner added "conversations with peers & feedback throughout process is engaged with appropriately." Under the Reference column, Harder added "Content throughout zine is based on reputable, trustworthy sources and grounded in both empirical data & the lived experiences of the oppressed/marginalized group." Alteration of a public record is a felony, RCW 40.16.

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 3 of 26

prepared to share their topics during class discussion. Dkt. 80 at 6. That Thursday, **April 27, 2023**, Arias was prepared as instructed and shared her draft zine in class sometime around 11:30. Arias Dec. at ¶ 18, Mell Dec. Ex. 17, Mell Dec. Ex. 60 at 213. In an instant, Harner turned on Arias. *Id.* Harner accused Arias of targeting transgender persons. *Id.* Harner waived Harner's arms dismissively and backed away from Arias as if Arias were toxic. *Id.* Harner shunned Arias before her classmates. *Id.* Harner did not attempt to help Arias. *Id.* Harner did not allow Arias any time with Harner to process Harner's accusations. *Id.* Arias left the classroom momentarily, but returned to find Harner and asked to meet during Harner's office hours between 12:30 and 1:30 that day. Mell Dec. Ex. 60 213-214. Harner claimed to be unavailable, which was not true. Her calendar was wide open. Mell Dec. Ex. 38. Harner was at the time furthering her complaints about Arias up to the chair and Arias' faculty advisor and triggering the PSC. **App. C, D, Dd**, Mell Dec. Ex. 35, 35a, 58, Dkt 80 at 8. Harner refused to be available to Arias who was apparently in acute distress. Mell Dec. Ex. 60 Arias Dep. at 214. Harner emailed Arias in an email at 2:12 p.m. cc'd to Sellmaier and Barrans. Mell Dec. Ex. 35. In disregard of PSC standards and while refusing to meet with Arias on the 27th, Harner precipitously filed a PSC complaint. Mell Dec. Ex. 58, 32.

Harner again attacked Arias' draft zine as communicating an "extremely anti-trans" topic, which was not true. Dkt. 76 at 12; Dkt. 76 at 12-13; Ex. 64 Butt Dep. at 96. Harner describe the draft as "full of transphobic language", which was not true. Mell Dep. at Ex. 42. Harner blamed Arias for the critique email. **App. Dd** Mell Dec. Ex. 58. Also, not true. Arias Dec. ¶ 14. Harner overstated Harner's contacts with Arias to feign attempted resolution. There were no in-person "conversations" with Arias. Arias Dec. Harner denied Arias any interactive process. Dkt. 92 at 33-35, 37. Arias had no more than a momentary exchange on the 20th, and less than five minutes on the 27th, not even a one-on-one exchange. Harner raised the alarms noting: "further escalation may include safety concerns."

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 4 of 26

Mell Dec. Ex. 58.  Arias was no threat and was not inappropriate.  Elijah Visintainer Dec. Yet before the PSC ever convened, Arias was suspect.  The PSC presumed she was the problem because Harner was bombasting Arias to the committee members and others. **App.  D**, Mell Dec. Ex. 35a.  The PSC did not conduct any investigation into the merits of Harner's complaint.  Mell Dec. Ex. 68 Sellmaier Dep. at 34.   No one spoke to anyone from the class or any other observers.  The PSC took Harner's statement to be true.  Sellmaier and Barrans were on the PSC.  Defendant Hill chaired the meetings.  Defendant Miller gave direction and guidance, then approved the final outcome.  Mell Dec. Ex. 2, 3, 4, 5, 6, 13.

Arias had said nothing unprofessional.  Arias Dec.  She was not transphobic.  Mell Dec. Ex. 61 Osborne Dep. at 168, 121, Dkt. 76 at 14.  Her draft zine was not "transphobic."  Mell Dec. Ex. 64 Butt Dep at 96.  It was a draft, on a topic that was not out of alignment with social work values and ethics.  Mell Dec. Ex. 63.  It was on a social justice issue.  Ichikawa Dec. Arias Dec.  Arias was a first-generation undergraduate student.  Arias Dec. ¶ 5.  She picked a topic of interest to explore.  Ex. 60 Arias Dep. at 142, and Ex. 61 Osborne Dep. 181.  The topic resonated with her in part because she had disguised her female gender identity when younger to avoid sexual abuse.  Mell Dec. Ex. 60 Arias Dep. at 172, Ex. 61 Osborne Dep. at 120.  Transgender policies were a topic of national interest and public debate.  Arias Dec.¶ 25.  She believed gender identity was decided at birth based upon her deeply held religious beliefs and was curious about the reported effects on the security of incarcerated women.  Arias Dec. ¶ 6, Ex. 60 Arias Dec. at 194.  Social work ethics require social workers to embrace all viewpoints, and include within the protected classifications political beliefs.  Dkt. 92 at 30.  The overarching social work value is service providing advocacy for the client regardless of beliefs.  Dkt. 92 at 32.

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 5 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

Arias' problem-solving skills were stymied because Harner had already tainted what had transpired. Before the PSC formally convened, Arias met with Sellmaier on **May 2, 2023**. When Arias asked Sellmaier about the PSC rules obligating Harner to meet with Arias, Sellmaier told Arias not to worry about the rules. Arias Dec. ¶ 31, Mell Dec. Ex. 17. When Arias showed Sellmaier the draft zine, Sellmaier flipped the pages commenting "As a cisgender woman from Germany. I can see how this is transphobic." Mell Dec. Ex. 17. On **May 11, 2023**, Arias met with her Faculty Supervisor Barrans for the first time. Dkt. 87. Harner had already warned Barrans about Arias. Mell Dec. Ex. 35, 35a. Barrans offered his help writing another zine, but otherwise declined to get involved. Arias Dec. ¶ 36. He never saw her zine. He did not help her with the PSC.

By the time Defendant Hill convened the first PSC meeting on **May 16, 2023,** Arias did not stand a chance. Harner was present. Dkt. 80 at 9. Harner created the essay topics. Mell Dec. Ex. 27. Not surprisingly, Hill was openly hostile interrupting Arias. Arias Dec. ¶ 39. Hill did not let Arias speak uninterrupted and kept speaking over Arias correcting Arias' pronouns for Harner. *Id*. Arias was quite emotional. *Id.* The power differential was overwhelming. Arias Dec. ¶ 40. Arias asked to record the meeting. Arias Dec. ¶ 38. The committee declined. Hill took cryptic notes, but no one kept minutes or documented what was communicated. Arias pushed back asking to be allowed to speak. Arias pointed out she was not being heard, she was not being allowed to speak freely. Arias told them her First Amendment rights and religious beliefs were not being respected. Mell Dec. Ex. 60 Arias Dep at 275, Arias Dec. ¶ 28, Mell Dec. ¶ Ex. 66 Hill Dep. at 99. Hill was dismissive of Arias. Hill and the other committee members took no action to investigate Arias' reported bullying, discrimination, or free speech violations. Mell Dec. Ex. 14, Ex. 17, Dkt. 88 at 2. Hill instructed Arias to take her complaints elsewhere. The committee retreated to meet confidentially, then returned with sanctions. The parties dispute having told Arias the penalties at the PSC; she never agree to write the essays. Arias Dec. ¶

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 6 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

29, 38.  PSC ordered Arias to write two essays showing growth in transforming her viewpoint to align with a transgender viewpoint.  Arias listened, but did not agree with the punishment.  Defendants argue the essays were not sanctions or punishment, which conflicts with its own policy. Mell Dec. Ex. 48 "The PSC determines corrective action and issues sanctions, including up to dismissal from the program." At 4:31 p.m. on **May 16, 2023** after the PSC adjourned, Chair Hill reached out to Harner lambasting Arias labeling her PSC participation "TERF-y" and purposefully "transphobic".  **App. E** Ex. 30. Defendants' experts admit the exchange was unprofessional.  Mell Dec. Ex. 62 at 195-196.

With Harner's input, Hill informed via letter Arias' of the imposed sanctions on **May 24, 2023**. Mell Dec. Ex. 28. While Hill invited Arias to respond in writing "regarding your understanding of these issues or any concerns you may have", the Committee chose to put her off.  Arias emailed written questions on **July 24, 2023** to Hill.  Mell Dec. Ex. 26 at 4. Hill complained about Arias to the Committee and misrepresented that Arias had agreed to "all the terms established" when she did not.  *Id.*  Arias Dec. at ¶ 38.  The Committee members emailed each other.  Mell Dec. Exs. 16-26.  Sellmaier commented "If you only look at the letter, the questions she poses are not answered.  I know we talked about it, but there is no record of our conversation except for this letter."  Ex. 26.  Harner weighed in lobbying against Arias:  "Claudia's questions had already been discussed with her multiple times before PSC and during the meeting as well.  I appreciate your caution around this."  Ex. 26. Hill commented "Given the environment, I feel very cautious about every step forward—there are too many examples of external groups weaponizing students (and issues) like this to attack academics..".  Ex. 23.  The Committee chose not to answer Arias' questions with any substantive response, noting caution was in order, especially since Vern received an anonymous email from someone in that course.  Ex. 23.  On **August 9, 2023**, Arias pressed again for further clarification asking basic questions.  Ex. 23.  PSC participants Hill, Butt, and Sellmaier conferred fearing Arias was spearheading "one of those

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 7 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

coordinated 'attacks'" from "one of those transphobic outside groups that have been going around the country trying to weaponize issues like this at all kinds of schools and institutions…" August 8, 2023. Ex. 23. Butt speculated "I wonder if there is another reason she wants to get things in writing. I would be concerned about how/what we communicate moving forward…there are a lot of red flags here." He said "I am concerned she may claim we are violating one of her freedoms …" Ex. 25. Sellmaier noted "Caution might be in order, especially since Vern received an anonymous email from someone in that course." Ex. 24. The Committee opted to involve Miller.

On **August 15, 2023**, Hill informed Miller that Arias was a problem. Ex. 21. Hill made representations about Arias that were not true. Ex. 20. Arias Dec. Hill claimed "Arias chose a topic which portrayed transgender individuals as "faking" identities in carceral contexts in or der to be housed with CIS women and assault them and called for biologically segregated housing." Arias had made no claim that transgender individuals were the fakers. Arias Dec ¶ 20. Hill indicated "Given the current hyper-politicized environment in which we've seen outside activists weaponize student issues to harm academic programs and personnel, the PSC is really feeling VERY cautious about replying. None of us want our emails to become the subject of right-wing attacks in the media, and these emails very much fell like someone is trying to "get it in writing" somehow or "catch us" or something." Ex. 21.

On **October 31, 2023**, Arias emailed Hill and Miller her objections to the essay sanctions. Ex. 15. Arias pointed out the false accusations that her communications were "harmful" and that she was "transphobic." Arias asked Hill and Miller to construct a resolution that did not suppress her expression or otherwise discriminate against her. Miller redirected Arias to report her complaints elsewhere, then directed the PSC to convene and impose further sanctions. Ex. 14. Again, no one ever investigated Arias' express complaints.

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 8 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

On **November 3, 2023**, Hill reached out to Committee Members. Ex. 9. Sellmaier and Butt recommended input from Arias' professors and practicum supervisor. Ex. 10. Unbeknownst to Arias, her instructors had been closely monitoring her. Ex. 8. While there was some speculation that she may be recording classes and had her arms folded, the ultimate conclusion was she was doing well. Ex. 8. Arias' internship supervisor, Kuhuski, reached out to provide positive assistance to Arias, but Hill declined to involve her. Ex. 7, 7a. Kuhuski recommended Arias for the Consejo internship describing her positively on all accounts the PSC was discounting her. Ex. 40. On **November 27, 2023**, Hill, Sellmaier, and Butt met and decided to expel Arias. On **December 8, 2023**, Hill emailed Arias an expulsion letter grounded in baseless accusations. Ex. 2. Defendants forced Arias out of school and out of her internship. Ex. 1. She could not complete the four classes she needed to graduate. Arias Dec. ¶ 1.

Arias was devastated. The betrayal triggered a trauma response diagnosed by Allison Osborne as an adjustment disorder with mixed anxiety and depressed mood. Psychologist Pratt diagnosed post-traumatic stress disorder and major depressive disorder. Arias has worked with vocational expert Merill Cohen to regroup and set a new trajectory to completing her advanced education. Arias will incur substantial expense gaining admission to complete her degree because no school will accept all of her credits. She has suffered notable financial losses having been unable to enter the workforce with a bachelor's degree in June of 2024. She seeks here to recover her losses.

## LEGAL ARGUMENT

### A.    Defendants Retaliated Against Arias

"The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." *Tinker v. Des Moines Ind. Comm. School Dist.,* 393 U.S. 503, 512, 89 S. Ct. 733 (1969). "The classroom is peculiarly the 'marketplace of ideas.'" *Id*. "The Nation's

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 9 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

future depends upon leaders trained through wide exposure to that robust exchange of ideas which discovers truth 'out of a multitude of tongues, (rather) than through any kind of authoritative selection." *Id.* Arias' communications in class, to Harner, and to the PSC are protected speech and redress that defendants may not suppress or silence through retaliation like disciplinary punishment and ultimate expulsion. Gender identity policies lie at the "crossroads of competing visions of family and faith, for which people of goodwill in our country can have different perspectives." *Bates v. Pakseresht*, 146 F.4th 772 (9th Cir. 2025). Mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint cannot justify a school officials' decision to punish student speech. *Pinard v. Clatskanie School Dist. 6J*, 467 F. 3d 755, 768 (2006). School officials must show any punishment would have been taken in the absence of any protected conduct. *Settlegoode v. Portland Pub. Schs.,* 371 F.3d 503, 512, (9th Cir. 2004). School officials must show more than anger or unhappiness to claim a right to discipline, it must show actual injury to its legitimate interests. *Id.* at 513. There are situations where school officials overstep their bounds and violate the constitution, which may not be decided on summary judgment. *Gonzales on behalf of A.G. v. Burley High School*, 404 F.Supp.3d 1269, 1279 (D.Idaho 2019).

Gender-based viewpoints are protected forms of expression under the First Amendment. *Regino v. Staley*, 133 F.4th 951 (9th Cir. 2025)(Parent did not need to identify a fundamental right to establish that a school district's policy requiring use of student's self-identified pronouns without parental consent violated procedural due process.); *Defending Education v. Olentangy Local School District Board of Education*, No. 23-3630, 2025 WL 3102072 (6th Cir. Nov. 6, 2025)(granting preliminary injunction enjoining a public school district policy prohibiting students from using pronouns for peers other than their preferred pronouns); *Wood v. Florida Dep. of Education*, 142 F.4th 1286 (11th Cir. 2025)(denying a preliminary injunction to enjoin a Florida statute requiring use of

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 10 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

pronouns correlating with biological sex); *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021)(holding a professor stated a plausible violation of the First Amendment when he was punished for refusing to call a transgender student by preferred pronouns); *Green v. Miss United States of America, LLC*, 52 F.4th 773 (9th Cir. 2022)(Holding natural birth contestant policy permissible pageant policy).

Arias' protected expressions include declining use of preferred pronouns; defining a woman based on birth gender when asked to define "what is a woman" by Harner in class; telling the classroom monitor Harner cut off student debate, asking for feedback on her sources on April 20, 2023; her draft zine on women's rights and transgender policies in confinement; sharing her draft zine with Harner in class on April 27, 2023; seeking relief from Sellmaier on May 2, 2023; seeking relief from Barrans on May 11, 2023; complaining to Miller about the bullying on 08/23/29; participating in the PSC on May 16, 2023 and November 27, 2023; critiquing Harner in the course evaluation; her emails of July 24 and August 9 seeking clarification on her punishment; and her October 31, 2023 email seeking alternative relief.   Arias also has First Amendment protection for the anonymous April 11, 2023 critique email to Harner that she did not author.  It does not matter that she did not author the email, Harner was convinced she did and used it to persuade the others Arias was a threat.   *Estate of Amos ex rel. Amos v. City of Page, AZ*, 257 F.3 1086 (9th Cir. 2001).  Defendants do not dispute that Arias was engaged in First Amendment expression, just their authority to suppress it.

This case like *Damiano v. Grants Pass School District No. 7*, 140 F. 4th 1117 (9th Cir. 2025) where summary judgment was deemed improper given the factual disputes over any disruption to the school.   Here, there is a dispute over what the offending speech even was and whether the reaction was reasonable or viewpoint biased.  Miller admitted and all the documents surmise that the decision not to write the essays was not THE sole reason for the expulsion.  See, Miller to Arias forwarded legal noting "The determination will be based, **in part**, emphasis added on your decision not to comply with

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 11 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

the essay requirements." Ex. 14. Miller went on to affirm the expulsion based on lengthy content specific criticisms that did not fairly reflect what Arias had communicated. Ex. 2. Defendants did not act reasonably. Even Committee member Butt admits he has regrets.

Defendants' summary judgment narrative does not align with the evidence. Defendants expelled Arias because they perceived her to be a weapon of the conservative right. None testified that the sole criteria for expulsion was Arias not writing the essays. All defendants expressed grounds for expulsion based on the content of Arias' speech and self-advocacy. The expulsion letter is replete with false and unwarranted criticism as to the content of Arias' speech and her "unwillingness to self-reflect", indicating an obligation to change her beliefs. It concludes with criticism that she "did not include any acknowledgement of the concerns raised about your topic selection nor other issues discussed in conversations with social work faculty and the Professional Standards Committee." As stated in its expulsion letter, UWT expelled Arias for indicating on April 20, 2023 that she "wanted to focus your 'Zine class assignment on the issues of "trans" people faking transgender identity to gain access to women's prisons and commit sexual assault." Arias did no such thing on April 20, nor did she communicate that belief in her draft zine, nor did she indicate it on April 27. Harner did not give direction to Arias as represented in the dismissal letter on the 20th or the 27th. Harner gave no indication to Arias that she should change her topic on the 20th. Harner reported Arias to the PSC on the 27th at the same time Arias was attempting to meet with Harner and Harner refused. In the expulsion letter Hill and Miller claim there were "many documented conversations that took place during spring 2023" explaining the problem with her topic, which is plainly not true. There were no documented conversations with Arias.

Miller, Sellmaier, Hill, Barrans, and Butt had hostile views of Arias from Harner. Harner began disparaging Arias before Harner ever saw Arias' draft zine. Harner targeted Arias because

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 12 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

Harner believed Arias authored the anonymous negative critique pointing out Harner's biases and poor teaching skills. Student course evaluations impact Harner's tenure goal. Harner attributed the criticisms to Arias based on Arias' class participation. Harner had concluded from Arias' classroom participation that Arias was transphobic because Arias declined preferred pronoun usage and because she believed gender was determined at birth, which Harner learned when asking What is a woman in class? To which Arias gave a biological response. Defendants did not uniformly consider it transphobic to decline to use "they/them" pronouns. Harner was the only one to espouse that viewpoint. The others admit it is within social work standards to choose a proper noun instead. Not all the professors believe gender is a social construct. Some, like Arias, believe in birth gender. Defendants did not uniformly concede the zine was transphobic. Most admitted the zine did not convey transgender persons as sexual assailants once they saw it. Most never saw it, they just believed Harner's representations, which were not true and designed to discredit Arias. Most of the decision makers never knew Arias did not write the anonymous critique email. Harner concluded it was Arias and portrayed Arias as a threat because of it, but never shared the email with the decision makers. Defendant's expert admits the email was not threatening. Mell Dec. Ex. 63. In sum, defendants self-serving narrative does not align with the facts to justify having Arias before the PSC for corrective action in the first instance. Arias' point is the PSC referral was premature and in violation of PSC policy. Harner should have met with her and invited meaningful discussion. Harner refused. Arias did not.

In *Ward v. Polite*, 667 F.3d 727 (6th Cir. 2012), plaintiff's free speech claim went to the jury because "Although the university submits it dismissed Ward from the program because her request for a referral violated the ACA code of ethics, a reasonable jury could find otherwise-that the code of ethics contains no such bar and that the university deployed it as a pretext for punishing Ward's religious views and speech. The Court in Ward kept questioning like the Court should here "what did Ward do

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 13 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

wrong?" It noted as the Court must recognize "Tolerance is a two-way street. Otherwise, the rule mandates orthodoxy, not anti-discrimination." *Id.* at 734. Free speech guarantee of the First Amendment generally prohibits the most aggressive form of viewpoint discrimination, compelling an individual to utter what is not in her mind and indeed what she might find deeply offensive. *Id.* The Supreme Court has acknowledged similar equity in analyzing majority and minority viewpoints by the same standards. *Ames v. Ohio Dept. of Youth Servies*, 605 U.S. 303, 145 S. Ct. 1540 (2025); *Wilkinson v. Washington Medical Commission*, 35 Wn. App. 2d 350, 576 P.3d 1191 (2025)(Viewpoint discrimination where medical commission labeled physician's blog about COVID false). Arias did nothing wrong. She was trying to get an education. Defendants are simply intolerant of conservative viewpoints. A university may not claim a pedagogical purpose for its actions where the school has never provided students with the policy in the first place. *Diei v. Boyd*, 116 F.4th 637 (6th Cir. 2024). Harner first cited Social Work Speaks, a publication not even available from the school, when Harner proposed for the essays. Arias Dec. The publication is not controlling in the field of social work. Mell Dec. Ex. 63 at 10. It was not appropriate to judge Arias using a standard identified after the fact and that is not uniformly accepted.

In *B.B. v. Capistrano Unified School District*, --F.4th --, 2026 WL 670427 (9th Cir. 2026) a first grader who was punished for giving a classmate a "Black Lives Mater any life" drawing had a viable First Amendment case against the Principal. Factual disputes over the meaning of the statement and whether it was offensive and whether punishment were imposed required a trial. Here, there is no question that Arias was punished. She was expelled. The narrative told by the defendants themselves through email and other records shows their preference for Harner's viewpoints over those of Arias. Social work does not allow such preferences.

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 14 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

UWT supposes *Keeton v. Anderson-Wiley*, 664 F.3d 865 (11th Cir. 2011) is persuasive here when it is not. Expressive activity in non-public fora must be reasonable and not an effort to suppress the speaker's activity due to disagreement with the speaker's view. *L.F. v. Lake Washington School District #414,* 947 F.3d 621 (9th Cir. 2020). Where a reasonable policy is applied in a non-neutral viewpoint manner it is unconstitutional. *Sprague v. Spokane Valley Fire Dept.,* 189 Wn. 2d 858, 409 P.3d 160 (2018)(Department restrictions prohibiting firefighter from using department's electronic bulletin board to post information about religious fellowship activities were unreasonable because it was not a viewpoint-neutral application of its e-mail policy.) Unlike Keeton, Arias never told anyone she intended to impose her personal beliefs on a client, and she never did in practice at Consejo. Further, defendants never instructed that she had no obligation to alter her beliefs in the required essays. Just the opposite, the instruction was to acknowledge her communications harmful and impermissible in the practice of social work, which was not true. She was to demonstrate "growth" and alignment with social work values as defined by them, and not by any objective criteria. There were no criteria to evaluate her essays. Any review would have been entirely subjective and arbitrary. Harner picked the subject matter and references, and would have influenced the final outcome as she did when getting Arias before the PSC in the first instance on false pretenses.

Not all the communications were in the classroom or on internal email. The anonymous critique email came from the outside. UWT's email are owned by the public and accessible via public disclosure. RCW 42.56, RCW 40.14.020. UWT's email system is a channel of communication created by government for use by the public at large for assembly and speech with outward facing posts to communicate with professors. *Currier v. Potter*, 379 F.2d 716 (9th Cir. 2004), held the mail system a public fora. Thus, the Court should consider defendants conduct motivated by the anonymous email

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 15 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

under stricter scrutiny although nothing about defendants' punishments were viewpoint neutral at any level of scrutiny.

*Morse v. Frederick*, 551 U.S. 393 should have no bearing here where Arias is not a minor and the University holds no obligation to educate her as if she were child, nor is the subject matter of gender identity subject to the same health issues as student drug abuse. Defendant similarly relies heavily on *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988) a case involving minor children publishing content in the school paper where competing privacy interests of pregnant students were at issue. *Brown v. Li*, 308 F.3d 939 (9th Cir. 2002) held that at the higher education level a professor may regulate core curricular speech when grading or approving an assignment or approving its compliance with format. It did not hold that a professor or school may sanction and expel a student who asked about exploring a controversial topic within the field of social work that was playing out on the national political stage. In *Brown*, the Circuit reasoned "the summary judgment record does not support an inference that UCSB acted because of the content of Plaintiff's ideas, rather than the format and placement of those ideas. As Defendants explained to him, Plaintiff remained free to publish and publicize his ideas in many other ways." They even pointed helpfully to ways in which Li could express the criticisms embodied in the section they did not approve elsewhere. Here defendants were fixated on the content and feared Arias' affiliation with far right political activists whom they despised. Defendants gave no deference to Arias and no way for her to express her viewpoint of equal value to the practice of social work. Obsborne. *Brown* does not control here where defendants were disciplining Arias. The PSC imposed sanctions for purposes of corrective action. Defendants oversight was disciplinary, not academic. She was expelled even after changing her zine and accepting Harner's grade without dispute.

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 16 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

It is particularly disturbing for defendants to apply *Oyama v. University of Hawaii,* 813 F.3d 850 (2015) to Arias. The fact that Arias believes gender is not a social construct does not equate to a secondary school teacher applicant opining that child predation should be legal. Social workers do not have to believe gender is a social construct. Mell Dec. Ex. 63. Social work ethics do not dictate that social workers must advocate for housing alternatives in confinement based on chosen gender. Social worker may advocate for women's rights and safety to include housing placements based upon gender. Mell Dec. Ex. 62. Indeed, Columbia University where Miller and her expert Yoshika are from paid millions to the United States under a mediation agreement obligating the University to make same sex gender housing available. Ex. 54. Advocating for same sex housing is protected activity under federal law. Ex. 54. Defendants' position that Arias must advocate for a transgender viewpoint over her own religious viewpoint violates social work standards. Mell Dec. Ex. 62. Arias performed in alignment with social work values in her internship. She exceeded expectations. Mell Dec. Ex. 63. Notably, *Oyama* pointed out that *Hazelwood* even in the face of *Brown* does not apply in the context of adults. And, *Oyama* involved the school denying a student teaching application. The school did not deny him an education. The analysis is not the same here where Arias was denied a basic bachelor's degree. UWT has refused to credit her with any degree, despite her significant investment and near completion of the program.

**B.    Defendants Have No Qualified Immunity**

Qualified immunity does not bar claims for injunctive relief. *Clement v. Cal.* DOC, 220 F.Supp. 2d 1098 (N.D. Cal. 2002). Arias seeks to enjoin UWT from denying her the last quarter credits she needs to graduate. Her claims for injunctive relief may not be dismissed.

With regard to her damages claim, Arias' case is not barred by qualified immunity because Harner was never acting in good faith and Harner's bad motives tainted the decision makers poisoning

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 17 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

the outcome in Harner's favor.  Cat's paw doctrine imputes Harner's bad faith up the chain to Miller the final decision maker.  *Sandowski v. McAleenan*, 423 F. Supp. 3d 959 (D. Hawai'i 2019).

There does not need to be "a case directly on point for a right to be clearly established, but existing precedent must have placed the statutory or constitutional question beyond debate." *Adpodaca v. White*, 401 F. Supp. 3d 1040, 1059 (S. D. Cal. 2019); *Kisela v. Hughes*, 584 U.S. 100, 104, 138 S.Ct. 1148 (2018). First Amendment retaliation prohibitions are well known to professors who know speech is protected.  *Giebel v. Sylvester*, 244 F.3d 1182 (9th Cir. 2001). Qualified immunity does not protect university officials when they retaliate against student for political speech.  *O'Brien v. Welty*, 818 F. 3d 920 (9th Cir. 2016)(No protection for officials who disciplined student because of his conservative criticism of university administration and student government.), *Jensen v. Brown*, 131 F.4th 677 (9th Cir. 2025)(No qualified immunity on pleadings for school reprimanding professor voicing concerns over a policy change.)  Retaliation for engaging in protected speech has long been prohibited by the First Amendment – the right to be free from retaliation even if there was a non-retaliatory justification is clear.  *Id.   See also, Gonzales on behalf of A.G. v. Burley High School*, 404 F. Supp. 3d 1269 (D. Idaho Cir. 2019)(Dismissal motivated by constitutionally protected expression).  University officials have no protection where officials act on discriminatory viewpoints that silence conservative political viewpoints.  *Apodaca v. White*, 401 F. Supp. 3d 1040 (S.D. Cal. 2019)(The absence of criteria governing use of mandatory student fees gave the decision-making official unbridled discretion to award funds based on viewpoint in violation of viewpoint neutrality principle.). It is well established that government may not condition access on a particular viewpoint.  *Kaahumanu v. Hawaii*, 682 F.3d 789 (9th Cir. 2012).  It has been clearly established that disagreement with a disfavored political stance or controversial viewpoint, by itself, is not a valid reason to curtail expression of that viewpoint at a public school. *Dodge v. Evergreen School District*, #114, 56 F.4th (9th Cir. 2022).  Qualified immunity

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 18 of 26

is properly rejected even where there is no published case with the precise facts presented here. *Id.* at 784.

The absence of express standards makes it difficult to distinguish "as applied" between legitimate denial and illegitimate abuse of censorial power – standards provide the guideposts that check the official and allow courts to quickly and easily determine whether the licensor is discriminating against disfavored speech. *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 108 S. Ct. 2138 (1988). Without guideposts, pos hoc rationalizations by the official and the use of shifting or illegitimate criteria are far too easy, making it difficult for courts to determine in any particular case whether the official is permitting favorable, and suppressing unfavorable, expression. Unbridled discretion in the hands of a government official or agency constitutes a prior restraint that may result in censorship. *Id.* at 757.

Defendants knew retaliation for disfavored political and religious views was improper. They as much said so in PSC email deliberations where they decided to get legal involved because they knew Arias was telling them they were retaliating based upon her First Amendment rights. *(E-mail). Their email exchanges are telling citing fear and loathing of the conservative right, so much so they refused to answer Arias' legitimate questions. Hill and Harner deride Arias with disparaging labels. Miller integrated their biases into her final dismissal letter with untrue accusations – ie that she portrayed transgender persons as rapists, without ever having looked at the zine.*. Defendants feign to have purged their biases with their essay mandate, but they had ZERO standards by which to judge the essays. Harner picked the topics. Harner would have influenced the grading. Arias had no criteria to assure her or allow her to write from her viewpoint without threat of further punishment. Arias could not speak or write without fear of oppression. The PSC did not free her to speak through clear guidance and standards for judging her work. They said show us how you have engaged in self-reflection and

have grown in understanding our viewpoint is the right one.   Defendants were not immune because they were suppressing Arias' viewpoint without restraint on their own biases and discriminatory outcome.  They were violating social work practice standards.  When she pointed this out and asked for alternatives, they expelled her.  Again, retaliating for her seeking redress and asserting her rights to fair treatment.  They are not immune.

## C.    Defendant UWT Breached Its Promises to Arias

Defendants' argument that it prevails on the breach of contract claim based on the First Amendment claim disregards basic contract law.  It conflates two discrete theories erroneously.  Breach of contract is a state law claim independent of any First Amendment claims.  Presumably the Court meant it would entertain jurisdiction of the breach of contract claim so long as the federal claim survived, but would otherwise remand or dismiss the state law claim without prejudice to proceed on the merits in state Court.  Either way, Arias has stated a valid breach of contract claim.  The relationship between a student and university is primarily contractual in nature with the specific terms to be found in the university bulletin and other publications. *Becker v. Washington State University,* 165 Wn. App. 235, 266 P.3d 893 (2011).  The student-university relationship is unique.  *Id.*  The contract terms are gleaned using a reasonable expectations standard: "what meaning the party making the manifestation should reasonably expect the other party to give it." *Becker*, at  247.  UWT incorrectly cites *Becker* at Dkt 77 line 25 that does not say contract law must be rigidly applied, just the opposite.  Becker says contract law does not need to be rigidly applied in all its aspects. *Becker* at 246.  "Since a formal contract is rarely prepared, the general nature and terms of the agreement are usually implied, with specific terms to be found in the university bulletin and other publications." *Marquez v. UW*, 32 Wn. App. 302, 648 P.2d 94 (1982).  A university acting in an arbitrary and capricious fashion or in bad faith has no special deference when exercising its discretion. *Maas v. Corp. of Gonzaga Univ.,* 27 Wn.App.

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

397, 403, 618 P.2d 106 (1980).  A decision to deny a degree based on dishonesty and without due consideration are arbitrary and capricious. *Brown v. Columbia Basin Community College,* 106 Wn. App. 1016 (2001)(unpublished.).  Whether school publications contain enforceable promises and whether such promises were breached are ordinarily questions of fact.  *Id.*, citing *Bulman v. Safeway, Inc.* 96 Wn. App. 194, 199, 978 P.2d 568 (1999).   In *Ochsner v. Board of Trustees of Washington Community College District No. 17*, 61 Wn. App. 772, 811 P.2d 985 (1991), the Court of Appeals reversed summary judgment, holding that "whether community college teacher applied attendance policy evenly and whether decision to count student absent when teacher was late to class was arbitrary and capricious were fact questions which precluded summary judgment." While a university is not obligated to guarantee student success, it must "afford every reasonable opportunity to such qualified student to succeed." *Marquez*, 648 P.2d at 98-99.

Arias' breach of contract claims are not like those in the non-binding *Doe v. Elson* case.  Arias was on the Dean's List.  Arias was one quarter from graduating with honors.  She was working meeting social work bachelor level standards at Consejo and continued to do so after expelled.  Arias had zero complaints against her other than those Harner fabricated in bad faith.  UWT claims it expelled her because she declined to write two papers, not that it had made the determination she lacked social work competencies.  Arias did not lack social work competencies.  UWT was not acting in good faith when imposing sanctions and requiring corrective action based upon false accusations of wrongdoing.  Arias' interest in exploring the topic of transgender policies transecting women's rights was not a justification for burdening her proving a negative –  she was not a threat  - before a partial panel of critics.

UWT made express promises in a number of its publications.  One such publication is its Professional Standards Committee ("PSC") policy.  Mell Dec. Ex. __ (PSC Policy). Per PSC policy "Those individuals who are directly involved should make a concerted effort to resolve the concern

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 21 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

prior to a referral to the PSC." And, "If conflicts cannot be resolved between and among students, and/or between and among students, faculty or staff it is appropriate to submit a request to convene the PSC." UWT's Department manual states "The UW Tacoma BASW Program as well as the University encourages the resolution of grievances at the lowest level." Harner made no effort to meet and confer with Arias in good faith before fabricating a complaint to the PSC. The policy required two chairs. There were not two chairs. Hill was the only chair and she was cajoling on the side with Harner. The chair was supposed to be a social worker. The chair was Hill who was not a social worker. She deferred to Harner. No replacement chair was selected. Hill as PSC Chair was obligated to invite the student and all participants to provide any information they felt necessary. Sellmaier and Butt asked for input from Arias' supporter and interim adviser, but Hill did not involve her. Mell Dec. Ex. 63 Kuhuski invited Hill to involve her but Hill did not involve her. Mell Dec. Ex. 63. Kuhuski's opinions of Arias who had not been biased by Harner were the opposite of defendants. Ex 46, 40. Mell Dec. Ex. 63 Arias performing well in the classroom and in clinical practice. Elmendorf Dec.

A plethoria of UWT publications promise freedom of thought, diversity, equity, honesty and integrity none of which Arias' was afforded. UWT promises "The University cultivates in its students both critical thinking and the effective articulation of that thinking." UWT's statement of ethical principles includes a "150-year commitment to honesty and integrity" in conducting its mission of education. Professors must "maintain a culture of tolerance and respect for the dignity and perspectives of others and promote civility in our discourse and behavior towards one another." UWT's Statement on Diversity promises: "We value and honor diverse experiences and perspectives, strive to create welcoming and respectful learning environments, and promote access, opportunity, and justice for all" and notes: "The state of Washington has a compelling interest in making sure that the University is accessible to talented students, faculty, and staff from all social identities." The School of Social Work

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 22 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

Essential skills dictate that professionals – "should avoid unwarranted negative criticism" and "represent accurately" the views of other colleagues. The Major Principles of the NASW Code of Ethics commits to maintaining the integrity of the profession and good faith treatment of colleagues. In sum, UWT promised Arias an academic learning environment that would challenger her viewpoints not suppress them.

UWT breached its contractual promises to Arias. Harner deliberately fabricated a false narrative about Arias that she was a transphobic threat to Harner and social work practice in general. Hill relying on Harner led the PSC to characterize Arias as a weapon of the far right. Harner debased and degraded Arias as did Hill in email, in conversation, and when misconstruing Arias' draft zine and when refusing to answer the legitimate questions she posed to the PSC.

### D. Defendant UWT Tortiously Interfered With Arias' Business Expectancies

Tortious interference with a business expectancy has five elements. *Greensun Group, LLC v. City of Bellevue*, 7 Wn. App. 2d 754, 436 P. 3d 397 (2019). The first element of a business expectancy requires something less than an enforceable contract. *Id.* at 768. Any prospective contractual or business relationship of pecuniary value meets the requirement. *Id.* Washington courts require a plaintiff show only that its "future business opportunities are a reasonable expectation and not merely wishful thinking. *Id* at 769. An expectancy that ultimately does not succeed may still be a reasonable expectation. *Id.*

Defendant UWT tortiously interfered with Arias' business expectancy in bachelor's level employment. Bachelor's level employment pays more than non-degree employment that Arias was qualified to perform. Dkt. 90 at 5-11 (Cohen Report). Arias had one quarter left to obtain a bachelor's degree. Arias was an honor student. She was on the dean's list. She would have graduated in June qualified to apply for a bachelor level job that paid more than jobs she qualified for with a high school

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 23 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

education only.   Arias' business expectancy in working at that higher paying level was not speculative. Arias was working at Consejo Counseling when UWT expelled her.   Her performance exceeded expectations. Elmendorf Dec. Arias was competently performing the bachelor's level job. *Id.* Arias could not complete her internship because UWT expelled her, which meant she had to be paid wages as an employee rather than in earned credit.  Arias had a contractual relationship with Consejo to work as an intern.  She was not performing the internship for UWT.  UWT was not her employer.  Consejo was.  Consejo rehired Arias into another position so that she was paid commensurate with the lower paying work she then was qualified to perform.  The paid position's funding ran out. Elmendorf Dec. Consejo had to terminate the position, which left Arias unemployed.  Arias was eligible for the funded bachelor level jobs, but for UWT denying her the four classes she invested in UWT's social work program to obtain.  Arias would have had work paying bachelor's level wages with the bachelor's degree she worked to achieve and nearly completed from UWT as established by the testimony of her supervisor attesting to her ability to perform bachelor level work.  Arias's UWT supervisor was equally supportive of her abilities.

Arias' tortious interference claim does not depend upon the success her federal First Amendment claim, but rather depends on the impropriety of UWT's means or purpose or both. *Pleas v. City of Seattle*, 112 Wn. 2d 794, 804-05, 774 P. 2d 1158 (1989).   UWT through its agents used improper means and improper purposes.  The improper purposes or and means certainly includes the First Amendment retaliation.  Improper means are shown where defendant had a duty not to interfere. *Greensun Group, LLC*, 7 Wn. App. at 408.  A duty may derive from statute, regulation, recognized common law, or established standard of trade or profession. *Id.*  Arbitrary and capricious governmental action may evidence improper means.  *Id.* A court need not find defendant acted with ill will, spite, defamation, fraud, force, or coercion to find improper purpose or means.  *Id.*  Arbitrary and capricious

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

conduct is willful and unreasoning without regard to or consideration of the facts and circumstances. *Id.*

Public officials have a duty not to make any false or misleading statement in any official report or statement. RCW 42.20.040. Knowingly misleading or false writings are prohibited. RCW 42.20.050. Blacklisting is prohibited. RCW 49.44.010. University students are entitled to excellent instruction. RCW 28B.15.792. University educator must afford students every reasonable opportunity to succeed. *Marquez v. UW*, 648 P.2d at 98-99. Social work ethics and practice standards require respect for the inherent dignity and worth of the person. Mell Dec. Ex. – (NASW SW Code of Ethics). Social workers behave in a trustworthy manner. *Id*. Social workers may not practice, condone, facilitate, or collaborate with any form of discrimination to include sex, sexual orientation, gender identity or expression or political belief. *Id* at 4.02. Social workers should not participate in, condone, or be associated with dishonesty, fraud, or deception.

Harner sabotaged Arias. Harner willfully with malicious intent complained in writing via email and PSC complaint that Arias was transphobic, a safety threat, and not qualified to work as a social worker because she lacked social work values. None of those statements were true. Harner portray Arias in a false light because Harner believed Arias criticized Harner in the anonymous email and did criticize Harner to class monitor and further because Arias did not share Harner's transgender viewpoint that gender is a choice. Harner gaslit Arias in the classroom and via email. Hill falsely portrayed Arias as a weapon of far-right extremists positioning to attack liberal educators like herself. Harner and Hill made false statements about Arias' zine in writing to Miller and others to the effect Arias was arguing transgender people are rapists. They falsely labeled Arias transphobic and "TERF-y". The others parroted Harner's hostile narrative to suppose Arias was a weapon for the conservative right threatening their liberal stronghold without listening, without investigating, without adhering to

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 25 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

social work values and standards. UWT removed Arias from the school of social work because Harner convinced the decision makers Arias was a threat when she was not.

UWT does not correctly describe Arias' expectancies. Arias expected to fulfill her internship. Arias expected to complete her last four classes or quarter and graduate with her class in June of 2024. She was performing above expectations both academically and in the workforce. She expected to be gainfully employed in a bachelor level position with commensurate pay. UWT claims established caselaw, citing *Houser* and *Singh,* hold a party to a contract may not interfere with its own contract as if dispositive when that rule of law has no application to interfering with business expectancies. *Cherberg v. Peoples Nat. Bank of WA*, 88 Wn.2d 595, 603, 564 P.2d 11137 (1977)("in those instances in which the conduct of the breaching party indicates a motive to destroy some interest of the adverse party, a tort actions may lie and items of damage not available in contract actions will be allowed."). UWT interfered with Arias' work at Consejo, internship and employment, and with other employers where she would be eligible to work with a bachelor's degree. Arias has a valid tortious interference case.

## CONCLUSION

For the reasons previously stated, defendants' motion for summary judgment dismissal of all claims should be denied.

Dated this 16th day of March, 2026 at Pima County, AZ.

III Branches, PLLC

_____
Joan K. Mell, WSBA #21319

ARIAS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-05079 - 26 of 26

III BRANCHES LAW, PLLC
Joan K. Mell
1019 Regents Blvd. Ste. 204
Fircrest, WA 98466
253-566-2510

# APPENDIX A

| From: | L J <justbecause4469@hotmail.com> |
|---|---|
| Sent: | Tuesday, April 11, 2023 2:39 PM PDT |
| To: | vharner@uw.edu |
| Subject: | A student of yours |

This Message Is From an Untrusted Sender
You have not previously corresponded with this sender.
See https://itconnect.uw.edu/email-tags for additional information. Please contact the UW-IT Service Center, help@uw.edu 206.221.5000, for assistance.

I am one of your students and I feel I need to email this because, I do not feel able to discuss things with you directly. Also, that and other things I am going to tell you are felt by others in the class as well. First, your foul language you use in class is terribly inappropriate, offensive, and unprofessional in this line of work. Ever stop to think some of the foul language you use might be a trigger word for some? Especially, our future clients we will serve in our professions. Second, you leave no room for discussion, debate, or question. Your teaching, your opinion and your way are not the only ways of the world. Third, you tell us not to interrupt, yet you always interrupt us. When you do open us up to ask questions, you cut us off as if we are not allowed to ask a tough question. Fourth, why do you hate on white people? Is it not okay to be white? When you yourself are white. You cannot relate to a POC on any level with your high education and past experiences. Stop being a hypocrite and making others feel like that you are the only white person who can relate. You are a discouraging professor and the one I have enjoyed the least. You tell us that if we stay quiet we are part of the problem. Well, then, Why cut us off? Why prevent us from speaking up, even if it makes you a little uncomfortable. I went to college to expand my mind, not to be shut down, or forced to see things one way. Do you want to blend the world better or divide it more? Right now, you are causing many of us to roll our eyes and only attend your class for the credit. Not to mention, your pov that a disabled trans is worse off than a disabled non-trans. Cant we love all? Why does one need to be shot down to lift others? I also heard you may not have gotten as far as you have if you didn't threaten discrimination against you as leverage to gain position. I truly feel you are full of hate, and I don't like it. I hope people speak up during end of course surveys.

000002

Harner_001522

APPENDIX Aa



Vern Harner <vharner@uw.edu>

## A student of yours
8 messages

---

**L J** <justbecause4469@hotmail.com>
To: "vharner@uw.edu" <vharner@uw.edu>

Tue, Apr 11, 2023 at 2:39 PM

**This Message Is From an Untrusted Sender**

You have not previously corresponded with this sender.

See https://itconnect.uw.edu/email-tags for additional information. Please contact the UW-IT Service Center, help@uw.edu 206.221.5000, for assistance.

 I am one of your students and I feel I need to email this because, I do not feel able to discuss things with you directly. Also, that and other things I am going to tell you are felt by others in the class as well. First, your foul language you use in class is terribly inappropriate, offensive, and unprofessional in this line of work. Ever stop to think some of the foul language you use might be a trigger word for some? Especially, our future clients we will serve in our professions. Second, you leave no room for discussion, debate, or question. Your teaching, your opinion and your way are not the only ways of the world. Third, you tell us not to interrupt, yet you always interrupt us. When you do open us up to ask questions, you cut us off as if we are not allowed to ask a tough question. Fourth, why do you hate on white people? Is it not okay to be white? When you yourself are white. You cannot relate to a POC on any level with your high education and past experiences. Stop being a hypocrite and making others feel like that you are the only white person who can relate. You are a discouraging professor and the one I have enjoyed the least. You tell us that if we stay quiet we are part of the problem. Well, then, Why cut us off? Why prevent us from speaking up, even if it makes you a little uncomfortable. I went to college to expand my mind, not to be shut down, or forced to see things one way. Do you want to blend the world better or divide it more? Right now, you are causing many of us to roll our eyes and only attend your class for the credit. Not to mention, your pov that a disabled trans is worse off than a disabled non-trans. Cant we love all? Why does one need to be shot down to lift others? I also heard you may not have gotten as far as you have if you didn't threaten discrimination against you as leverage to gain position. I truly feel you are full of hate, and I don't like it. I hope people speak up during end of course surveys.

---

**Vern Harner** <vharner@uw.edu>
To: Claudia Sellmaier <sellmaic@uw.edu>

Tue, Apr 11, 2023 at 2:44 PM

Hi Claudia,
Week 3 is the week we talk about Racial Justice in 404 -- include about whiteness, the construction thereof, white supremacy, etc. I don't know who this student is and don't think it's helpful for me to go point-by-point defending myself or trying to clarify any misunderstandings, but would love to check in with you about how to proceed.
I'm around the rest of the day aside from a student meeting at 4:30 and am free tomorrow aside from an 11am and 3am meeting.
thanks,
Vern

[Quoted text hidden]

---

**Vern Harner** <vharner@uw.edu>
To: Janelle Hawes <jmhawes@uw.edu>

Tue, Apr 11, 2023 at 3:03 PM

--
**Vern Harner**
pronoun: they

[Quoted text hidden]

---

**Vern Harner** <vharner@uw.edu>
To: "Keva M. Miller" <KevaMill@uw.edu>

Tue, Apr 11, 2023 at 4:02 PM

Hi Dean Miller,
If Claudia doesn't have time to chat tomorrow, do you perhaps have some time? My classes meet Tuesdays and Thursdays at 8am and 10:10am, so I will have these students again on Thursday. I'm not sure if the best route, given the anonymity, is to point them to Claudia / whoever if they have these serious concerns about my teaching and expertise/credentials
--
**Vern Harner**

000004

Harner_001524

pronoun: they

[Quoted text hidden]

---

**Claudia Sellmaier** <sellmaic@uw.edu>                                    Tue, Apr 11, 2023 at 4:44 PM
To: Vern Harner <vharner@uw.edu>

Hello Vern,

First, I am sorry you received this email, this must be quite stressful. Second, Keva and I were in a meeting when your email came in, so we chatted about it. I can meet tomorrow after 2PM, would that still work for you? In general, we thought to not respond to the email, since it's from a non-UW email address. You could send a general reminder email to all students to please use their UW email address and that we are not responding to outside email addresses following UW protocol, and then wait and see if the student follows up.
Happy to chat more tomorrow.
Claudia

---

# UW Tacoma Email Policy | Information Technology | University of Washington Tacoma

The following policy statements concern the conditions under which faculty, staff and students are expected to use the University of Washington email system. They do not prevent faculty, sta...

www.tacoma.uw.edu

---

Claudia Sellmaier, PhD, MSW, MA
Assistant Professor
MSW Program Chair
Interim BASW Program Chair
Pronouns: She/her/hers
University of Washington, Tacoma
School of Social Work & Criminal Justice
1900 Commerce St. Box 358425
Tacoma, WA 98402

---

**From:** Vern Harner <vharner@uw.edu>
**Sent:** Tuesday, April 11, 2023 2:44 PM
**To:** Claudia Sellmaier <sellmaic@uw.edu>
**Subject:** Fwd: A student of yours

[Quoted text hidden]

---

**Vern Harner** <vharner@uw.edu>                                    Tue, Apr 11, 2023 at 5:43 PM
To: Claudia Sellmaier <sellmaic@uw.edu>

Thanks, Claudia -- would you prefer at 2pm (or 2:05pm or 2:15 if youd like a buffer) or at 4pm?
--
Vern Harner
pronoun: they

[Quoted text hidden]

---

**Claudia Sellmaier** <sellmaic@uw.edu>                                    Wed, Apr 12, 2023 at 8:37 AM
To: Vern Harner <vharner@uw.edu>

2PM works for me. Here is a Zoom link https://washington.zoom.us/j/91426284930

Claudia

---

000005

Harner_001525

Claudia Sellmaier, PhD, MSW, MA
Assistant Professor
MSW Program Chair
Interim BASW Program Chair
Pronouns: She/her/hers
University of Washington, Tacoma
School of Social Work & Criminal Justice
1900 Commerce St. Box 358425
Tacoma, WA 98402

**From:** Vern Harner <vharner@uw.edu>
**Sent:** Tuesday, April 11, 2023 5:43 PM
**To:** Claudia Sellmaier <sellmaic@uw.edu>
**Subject:** Re: A student of yours

[Quoted text hidden]

---

**Vern Harner** <vharner@uw.edu>                                    Wed, Apr 12, 2023 at 10:23 AM
To: Claudia Sellmaier <sellmaic@uw.edu>

see you then!

--
**Vern Harner**
pronoun: they

[Quoted text hidden]

000006

Harner_001526

# APPENDIX B

000007

EXH-15
Oct 10 2025



Vern Harner <vharner@uw.edu>

---

## noch eine weitere Anfrage...

4 messages

---

**Vern Harner** <vharner@uw.edu>
To: Claudia Sellmaier <sellmaic@uw.edu>

Thu, Apr 20, 2023 at 10:13 PM

Hi Claudia,

I'm wondering if you have any time to chat (on Zoom or in person) tomorrow or Monday? I am curious how to navigate a student's proposed topic for their assignment (the topic is transphobic and I am not sure if this is the student I heard from last week...).

I'm available tomorrow from 10:30am-noon if needed, 1:30-4pm or Monday from 10am-3pm or 3-5pm if needed. Also happy to send more details via email!

in appreciation,
Vern

--
**Vern Harner, PhD**
Assistant Professor | UWT School of Social Work & Criminal Justice
Co-Chair | LGBTQ Caucus of Faculty/Students in Social Work
VernHarner.com | pronoun: they

---

**Claudia Sellmaier** <sellmaic@uw.edu>
To: Vern Harner <vharner@uw.edu>

Fri, Apr 21, 2023 at 11:23 AM

Hi Vern,

I could meet and talk on Monday at 2 or 3PM. Yes, feel free to send the topic proposal so I can look at it before we meet.

Hope your week and your course eval was otherwise fine.
Claudia

Claudia Sellmaier, PhD, MSW, MA
Assistant Professor
MSW Program Chair
Interim BASW Program Chair
Pronouns: She/her/hers
University of Washington, Tacoma
School of Social Work & Criminal Justice
1900 Commerce St. Box 358425
Tacoma, WA 98402

**From:** Vern Harner <vharner@uw.edu>
**Sent:** Thursday, April 20, 2023 10:13 PM
**To:** Claudia Sellmaier <sellmaic@uw.edu>
**Subject:** noch eine weitere Anfrage...

[Quoted text hidden]

---

**Vern Harner** <vharner@uw.edu>
To: Claudia Sellmaier <sellmaic@uw.edu>

Fri, Apr 21, 2023 at 12:18 PM

2pm on Monday would be great!

They haven't had to submit a formal proposal for the topic, but the student came up to me during co-working time in class with this article (link) pulled up, asking if she could do her zine project on the issue of "trans" people sexually assaulting others in prison --- there are so many issues with this (ie, the Daily Mail as a source, the fact that if cis men are pretending to be trans to do this then its not trans people doing this, etc etc) coupled with the fact that there have been nearly 500 anti trans policies proposed in the US so far this year (link). The Daily Mail article is (unfortunately unsurprisingly) full of TERF and far right dog whistles and talking points and lacking in sources for their data and claims.

I was really taken aback by seeing this article pulled up on her laptop, but reaffirmed that violence against women, including and definitely in prison, was a serious issue and one that she could use to find a topic for this project. However, she continued to say that she wanted to focus on the issue of trans people 'pretending to be trans' to be housed in prisons with women in order to sexually assault them. If you aren't familiar, this

000008

Harner_000004

(broadly, not only re: prison, but also bathrooms etc) is a huge talking point from the far right and a justification for all sorts of anti-trans policies, behaviors, etc.

Here is the assignment overview (we are also talking about how she has to find a way that the community has responded to the issue -- the zine isn't to be about the issue itself, but the way the community is responding to it):

> Students will create a mini-zine (booklet) about a community response to a social justice related issue. This may be a protest, a rally, individual or collective action, grassroots organization, petition, or something else. While these will be completed primarily during class time, students will be expected to bring at least 6 copies on Thursday during week 6. (then specific prompts are given)

Here is what I included in the follow up announcement to the full class yesterday -- I mentioned to this student that I would include a source about assessing source reliability. This student also, on Tuesday, questioned whether Black boys and men 'really' are arrested, charged, and sentenced at higher rates. I am always happy to provide citations, sources, and more information so often do so in class announcements. Based on the mid quarter feedback, I'm also questioning if it was this student who wrote the anonymous email.

- When using sources for this project or any of your assignments, **make sure that you are using reputable sources**. This interactive media bias chart .can be helpful when trying to figure out if news sources provide reliable information, what kind of bias they might have, if there's big variability in their reliability, and so on. Basically, if the news source has a reliability score of 40+ on this chart, it's likely a reliable source of information. Reliability scores between 24-40 indicate a range of possibilities, and scores below 24 are no good.
- On Tuesday, I mentioned the **adultification of Black boys**, as well as more severe sentencing and higher rates of being charged or found guilty for Black men. Here is some more information on that: link 1 (podcast), link 2, link 3, link 4

This week's topic was sexism and gender-based oppression with a focus on women -- in week 6 we will focus on trans liberation and gender-based oppression against trans folks and others.

Thank you for all of your support this quarter -- I've certainly had students use topics I didn't agree with or see eye to eye on before, but I have never had a student propose such a clearly super anti-trans topic.
--
**Vern Harner**
pronoun: they

[Quoted text hidden]

---

**Claudia Sellmaier** <sellmaic@uw.edu>                                Fri, Apr 21, 2023 at 2:46 PM
To: Vern Harner <vharner@uw.edu>

Thank you for the additional background. To be honest, I am speechless right now, but hope to have some more coherent thoughts on Monday. I sent the calendar invite, and the second version should even include the Zoom link (https://washington.zoom.us/j/97074966526)

Hope you will have a good weekend.
Claudia

Claudia Sellmaier, PhD, MSW, MA
Assistant Professor
MSW Program Chair
Interim BASW Program Chair
Pronouns: She/her/hers
University of Washington, Tacoma
School of Social Work & Criminal Justice
1900 Commerce St. Box 358425
Tacoma, WA 98402

---

**From:** Vern Harner <vharner@uw.edu>
**Sent:** Friday, April 21, 2023 12:18 PM
**To:** Claudia Sellmaier <sellmaic@uw.edu>
**Subject:** Re: noch eine weitere Anfrage...

[Quoted text hidden]

000009

Harner_000005

# APPENDIX C

000010



*Ex 20*

Vern Harner <vharner@uw.edu>

---

## Following up from class today (404B)
5 messages

---

**Vern Harner** <vharner@uw.edu>                                              Thu, Apr 27, 2023 at 2:12 PM
To: arias1@uw.edu
Cc: Claudia Sellmaier <sellmaic@uw.edu>, Chris Barrans <barransc@uw.edu>

Hi Claudia,

I am unavailable for additional meetings this afternoon. If you'd like to talk about any concerns or questions you have, you can email Dr. Sellmaier (chair of the BASW program) or Chris Barrans (your faculty advisor) -- I've copied both of them on this email.

To reiterate from our conversation in class today: violence against women is an important topic and there are many ways that community members have responded to this issue. However, the current discussion and framing of the topic that I saw in your project today is harmful and not aligned with social work values & ethics (source 1, source 2, source 3).

While it is your choice of whether to continue with this topic or make adjustments, the current language/framing in your project (that I saw today) means that it is not a zine that will be able to be shared during our informal presentations next week on Thursday.

As social workers and social work students, the expectation is that we approach topics we are unfamiliar with by seeking to understand and striving to align our practice skills and knowledge with our professional values and standards. This includes conversations and discussions in the classroom. There is more information in the links above and I am always happy to provide more resources or talk about the intersection of trans rights and women's rights when that conversation is approached appropriately and in good faith.

Dr. Vern

--
Vern Harner, PhD
Assistant Professor | UWT School of Social Work & Criminal Justice
Co-Chair | LGBTQ Caucus of Faculty/Students in Social Work
VernHarner.com | pronoun: they

---

**Vern Harner** <vharner@uw.edu>                                              Mon, May 1, 2023 at 9:08 PM
To: arias1@uw.edu

Hi Claudia,

I hope that you have given some thought on how to adjust your topic. There are countless examples of how individuals and communities have responded to the issue of violence against women -- both in and out of prison. I know that you put effort into the draft that you showed me, so wanted to be sure you were set up to switch topics if you so chose -- below are just some of the options that may work. These are in no particular order and, again, there are so many options in addition to these:

- #MeToo
- Violence Against Women Act
- 16 Days of Activism Against Gender-Based Violence (and a 2nd link)
- Protests in South Africa (2021)
- Protests in Spain (2021)
- International Women's Day
- Protests in Istanbul (2021)
- March in France (2021)
- The Seneca Falls Convention (1848)
- Protest against conditions/violence in women's prison in Michigan (2022)
- Take Back The Night
- Responses to Harlem's women's jail (multiple options in this article, as it goes over some history)
- Protests against violence in NJ women's prison (2021)
- While it wouldn't be a good fit for a topic itself, this 2020 report looks like it has a ton of helpful background information and statistics (link)
- The National Organization of Women has this website, which also has a lot more options (link)

See you tomorrow,
Dr. Vern
--
**Vern Harner**
pronoun: they

[Quoted text hidden]

---

**Vern Harner** <vharner@uw.edu>                                        Mon, May 1, 2023 at 9:08 PM
To: Claudia Sellmaier <sellmaic@uw.edu>

fyi
--
**Vern Harner**
pronoun: they

[Quoted text hidden]

---

**Vern Harner** <vharner@uw.edu>                                        Tue, May 2, 2023 at 1:12 PM
To: Claudia Sellmaier <sellmaic@uw.edu>

Claudia was in class today (topic was LGBTQ justice/liberation, we spent half the class watching a documentary) and did not say anything in the large group. She did submit an appropriate question on a notecard (I handed a notecard out to each student).

0000012

She did come up after class with two new drafts of zine projects that were much more appropriate. One of them is still covering multiple responses to a social issue (the focus should be on a specific response). And both of them are plagiarising content -- quoting directly from sources without using quotation marks and without directly connecting the cited material. I discussed all this with her and I hope that it landed, though I'm still unsure. She still seemed to be a bit on edge during that interaction and quick to provide justifications when I gave her feedback (ie., the content was okay because it was "coming directly from the source"), but her behavior was appropriate today. I stated a couple times that I want to hear HER voice in the project, not just direct quotes from sources. I hope your meeting goes well!
--
**Vern Harner**
pronoun: they

[Quoted text hidden]

---

**Vern Harner** <vharner@uw.edu>                                                                                           Wed, May 17, 2023 at 8:41 AM
To: "Andrea L. Hill" <andhill@uw.edu>, Claudia Sellmaier <sellmaic@uw.edu>, "Rick L. Butt" <rickbutt@uw.edu>

Hi all --
see below for additional context. In the below emails, I give Claudia additional resources, offer to discuss the topic etc, and document that I told her that we want HER voice in the project, not just direct quotes from sources. She didn't reply to either of the below emails I sent to her.
thanks,
Vern
[Quoted text hidden]

Harner_000825

# APPENDIX D

000014

| | |
|---|---|
| **From:** | Chris Barrans <barransc@uw.edu> |
| **Sent:** | Thursday, January 15, 2026 12:20 PM PST |
| **To:** | Paige Heine <paigeh@SummitLaw.com> |
| **Subject:** | Fw: Fw: URGENT - Professional Standards Committee Issue |

Chris Barrans, MSW
*He/Him/His*
**PRISM access: https://steps.exxat.com/**
**From:** Chris Barrans <barransc@uw.edu>
**Sent:** Monday, May 1, 2023 10:24 AM
**To:** Andrea L. Hill <andhill@uw.edu>
**Subject:** Re: Fw: URGENT - Professional Standards Committee Issue

Great! We are on the same page. I'll keep an eye out for an invite in case either Vern or the student make a request, but I won't plan on attending.
I got the impression that the last couple years I've been the one referring students to the PSC. That's a big bummer but I think it has to do with practicum being the place where we see some problematic behaviors or patterns emerge. I'm excited about the work the PSC is doing to rebrand and look at the purpose of the committee. I appreciate your leadership especially when you've gone above and beyond for social work referrals. Thank you.
Chris
Chris Barrans, MSW
*He/Him/His*
Director of Field Education/Assistant Teaching Professor
School of Social Work & Criminal Justice
University of Washington Tacoma
Phone: 253-692-5823
Office: WCG-203J
**STAR access:** http://star.ssw.washington.edu

**From:** Andrea L. Hill <andhill@uw.edu>
**Sent:** Monday, May 1, 2023 10:19 AM
**To:** Chris Barrans <barransc@uw.edu>
**Subject:** Re: Fw: URGENT - Professional Standards Committee Issue

Hi Chris,
Thanks for saying it because I wasn't sure either! While you've been on all of the PSC meetings we had before, now that I think about it, I think it's because they involved you in some way/shape/form...,According to the actual PSC protocol, I don't think you're  to be at this one unless requested by Vern or the student, so I think I'll just go with the options you've given me here, just in case Vern/the student requests that you attend....But, unless you hear anything from me/Vern/the student, I think you can put this specific PSC referral aside, if that makes sense. If not/if you have any questions, please just let me know!
Thanks,
Andrea

On Mon, May 1, 2023 at 10:08 AM Chris Barrans <barransc@uw.edu> wrote:
  Hi Andrea,

000015

UWT_002468

I'm not sure if I'm meant to be a part of the committee meeting for Vern's student. I'm their faculty advisor but the student hasn't responded to my messages in the past and I haven't met them before. If I'm needed at the meeting here is my availability based on the times you shared:

- **Wednesday, 5/3:** 2-3
- **Thursday, 5/4:** 12:30-1:30, 3:30-4:30
- **Friday, 5/5:** 12-1

Feel free to disregard if I'm not needed. Thanks so much.
Chris
Chris Barrans, MSW
*He/Him/His*
Director of Field Education/Assistant Teaching Professor
School of Social Work & Criminal Justice
University of Washington Tacoma
Phone: 253-692-5823
Office: WCG-203J
**STAR access:** http://star.ssw.washington.edu


**From:** Andrea L. Hill <andhill@uw.edu>
**Sent:** Monday, May 1, 2023 9:44 AM
**To:** Ronald San Nicolas <sannirj@uw.edu>
**Cc:** Claudia Sellmaier <sellmaic@uw.edu>; Rick L. Butt <rickbutt@uw.edu>; Chris Barrans <barransc@uw.edu>
**Subject:** Re: Fw: URGENT - Professional Standards Committee Issue

Hi All,
(I know you're recusing yourself, Ronnie, but wanted to make sure that you're aware of how this is proceeding).

I'm just now reading Vern's referral and I better understand your point about 'time urgency,' Chris.... I also see that Vern said they're available to meet this week---I'm wondering if we should try and put together meeting options for this week as well? I wanted to check to see if we were able to find some options for this week before emailing Vern.
**Availability for PSC meeting this week:**

- **Wednesday, 5/3:** 10-11 11-12, 12-1, 1-2, 2-3
- **Thursday, 5/4:** 12:30-1:30, 3:30-4>30
- **Friday, 5/5:** 10-11 11-12, 12-1


For those who will be on this PSC meeting, if you could reply and let me know if/which any of the above options work for you (or just let me know if none do), I'll put together an email for Vern and then for the student.
Thanks,
Andrea

On Mon, May 1, 2023 at 9:28 AM Ronald San Nicolas <sannirj@uw.edu> wrote:

000016

UWT_002469

FYI
Ronald J. San Nicolas, PhD, MSW
Assistant Teaching Professor &
Coordinator, Simon Family Endowment Autism MSW Fellowship
Liaison, Ballmer Behavioral Health Workforce Development Initiative
Mental Health Coordinator, AAPI THRIVE at UW Tacoma
1900 Commerce Street - Box# 358425
Tacoma, WA 98402-3100
Office: WCG 223.1
Office Phone: 253-692-5702

**W** SCHOOL OF SOCIAL WORK & CRIMINAL JUSTICE
UNIVERSITY *of* WASHINGTON | TACOMA

*I recognize that at UW Tacoma we learn, teach, and live on or near the ancestral homelands of the Coast Salish people. We at UW Tacoma are specifically situated on the traditional territory of the Puyallup. We have a responsibility to acknowledge our indigenous connections, as well as, histories of dispossession and forced removal that have allowed for the growth and survival of this institution.*



**From:** Vern Harner <vharner@uw.edu>
**Sent:** Thursday, April 27, 2023 2:50 PM
**To:** Ronald San Nicolas <sannirj@uw.edu>
**Subject:** URGENT - Professional Standards Committee Issue

Hi Ronnie,
I've attached the form to convene the professional standards committee because of an ongoing but developing issue in my 404B class.
A student has proposed a very harmful and problematic topic (there are other adjacent topics she could choose or she could discuss her current topic in a way that is not harmful) and, after two conversations between us, is not recognizing the concern. Her topic is violence against women in prison, but making the argument that, essentially, trans women should be in men's prisons because trans women are assaulting cis women. I have restated multiple times that topics must be aligned with social work values and ethics, but it is her perception that (because it has to do with trans people / anti-transness) that I am "shutting down" any conversations or viewpoints that are different than my own. She seems to believe that her topic, sources, etc are aligned with social work values/ethics.
In class today, we discussed the appropriate topic scope (i.e., a response to a social issue, not the social issue itself) but, after attempting to clarify re: SW values, stated the boundary that we would not be able to continue that discussion in class and would follow up afterwards about it. I had to restate this boundary multiple times and told her I would send her an email to follow up. A few minutes later, she told me she would stop by my office after class at 3pm. I've sent her the attached email.

I did not note any curiousity or seeking to understand WHY her proposed topic was harmful to trans people. She came to class today with a drafted project that was full of harmful/problematic language (ie TERF dog whistles). I told her that she did not need to mention trans people at all, but that her topic shouldn't be actively harmful to trans people or inappropriately targeting trans people.

Our course content next week is on trans liberation. Dr. Sellmaier and I debriefed a little bit, and she affirmed that, if the student is saying things in class that cross the line, I might have to ask her to leave class for the day. To be clear, I am absolutely willing and able to discuss trans issues in good faith, but the student has been very firm in her beliefs/viewpoint and framing of the issue. I am not the only trans person in this classroom.

This is my first time sending something to the professional standards committee, so please let me know what else is needed.

Thank you,

Vern

--
**Vern Harner, PhD**
Assistant Professor | UWT School of Social Work & Criminal Justice
Co-Chair | LGBTQ Caucus of Faculty/Students in Social Work
VernHarner.com | pronoun: they

--
**Andrea L. Hill, PhD**
Associate Teaching Professor
School of Social Work and Criminal Justice
University of Washington Tacoma
Box 358425
1900 Commerce Street
Tacoma, WA 98402
253-692-4943

--
**Andrea L. Hill, PhD**
Associate Teaching Professor
School of Social Work and Criminal Justice
University of Washington Tacoma
Box 358425
1900 Commerce Street
Tacoma, WA 98402
253-692-4943

000018

UWT_002471

# APPENDIX Dd

000019

**Social Work & Criminal Justice Professional Standards Committee**
**Request to Convene**

**Person or Persons Requesting to Convene the PSC:**

Vern HARNER

**Date of Request:**

27 April 2023

**Brief Description of Unresolved Issue(s):**

Claudia Arias (404B student) has proposed an extremely anti-trans topic for class project, I strongly suspect she is the student who sent anonymous email, draft project was full of transphobic language

**Brief Description of Attempts to Revolve the Issue:**

two in-person conversations re: topic have taken place — student does not believe the topic is not aligned w/ social work values and sees women's & trans rights as competing issues

**Does the other party know that you are requesting a review?**

**If not, why not?**

No — developing issue, have connected student to BASW chair & faculty advisor, further escalation may include safety concerns

**Best ways to reach you**

**Phone:**

253·692·5701

**Email:**

vharner @uw.edu

**Best days/times to meet:**

April 28, MAY1, MAY2-5

Confidentiality will be maintained within reasonable limitations.

Revisions approved by the faculty on May 6, 2016.

000024

Harner_000003

# APPENDIX E

000025

Case 3:25-cv-05079-DGE     Document 103     Filed 03/16/26     Page 49 of 57



**EXH-8**
Oct 13 2025

**Vern Harner <vharner@uw.edu>**

## Follow-Up from Today's PSC Meeting

3 messages

---

**Andrea L. Hill** <andhill@uw.edu>            Tue, May 16, 2023 at 4:31 PM
To: Vern Harner <vharner@uw.edu>

Insert text here

Hey Vern,
This afternoon, I was reflecting on our PSC meeting today and I realized that I think that I owe you an apology. I'm sorry for taking it upon myself to correct Claudia regarding your pronouns--I realize that it isn't my place to do that and that I should check with you regarding how best to approach situations like that. I didn't mean to be patronizing, and I apologize if it came off that way. I was unhappy with what I perceived as Claudia's overarching TERF-y perspective and approach, and I heard her using the incorrect pronouns as part of the transphobia I heard from her--it felt like even more than a microaggression in my mind, and I felt that as the facilitator of the meeting, I was in a position to put a stop to it.

While well-intended on my part, I do recognize that I shouldn't assume that my saying something to her was the right thing to do. Had you not been there, then yes, I think calling out inaccurate use of pronouns definitely IS the right thing to do. But I definitely recognize that it's a different situation when the person being mis-gendered is actually present, and I'm really sorry if my correcting Claudia was patronizing or condescending or will further increase tensions between you two.

In all honesty, I don't often have students that are so willfully transphobic (a product of my CIS privilege for sure) and so it didn't even occur to me that I should think twice and check with you first. I'm pretty sure that I didn't do the right thing by calling her out that way, and I'm really sorry.  Going forward, I will be sure to be more thoughtful regarding how I approach situations like this, and I'm so sorry that my 'learning moment' had to come at your expense. Please just be in touch if you'd like to discuss it more....

Thanks,
Andrea

**Andrea L. Hill, PhD**
Associate Teaching Professor
School of Social Work and Criminal Justice
University of Washington Tacoma
Box 358425
1900 Commerce Street
Tacoma, WA 98402
253-692-4943

---

**Vern Harner** <vharner@uw.edu>            Tue, May 16, 2023 at 9:41 PM
To: "Andrea L. Hill" <andhill@uw.edu>

Hi Andrea,
I appreciate the follow up! I did, though, very much appreciate that you corrected Claudia. Dr. Sellmaier had also corrected the misgendering when they met one-on-one, and I am very open with my students about my pronouns. We did also have a week about LGBTQ issues where we talked about pronouns, and my students have access to resources about pronouns, including the pronouns 'they', on Canvas. For me, it's very awkward when everyone can see my pronouns in Zoom and they are not corrected. Normally, I would be more comfortable correcting it myself (though it is also awkward when it is people with seniority over me who are correcting me and could, for example, be voting on my tenure/promotion), but given the situation I was biting my tongue.

A lot of the time with students who are newer to trans issues, but who are respectful in all other ways, I do not directly correct pronouns in the classroom / in a big group ("praise in public, correct in private" works best for this, I find...at least to start). But in a smaller group, and especially when we are addressing transphobia, I think it's important and provides insight to another component to the situation.

This is my 9th year teaching (including 2 in Arizona), and the first time I have had a student who is so directly/openly and persistently transphobic. I very much appreciate that you and Dr. Sellmaier corrected the misgendering and are (trying to)

000026

Harner_000035

Case 3:25-cv-05079-DGE     Document 103     Filed 03/16/26     Page 50 of 57

address the broader issues. I don't think that it's the addressing of the transphobia that is making things tense between myself and Claudia, but the transphobia itself.

All that to say -- I appreciate you and am grateful for how you navigated the meeting today.
Vern
--
**Vern Harner, PhD**
pronoun: they

[Quoted text hidden]

---

**Andrea L. Hill** <andhill@uw.edu>                                    Fri, May 19, 2023 at 10:21 AM
To: Vern Harner <vharner@uw.edu>

Hi Vern,
So sorry for my delayed reply--yesterday was my teaching day, so between the open house and classes and a later committee meeting, I had absolutely zero time to read this, let alone reply (Given you're ending your first year here, I'm sure you know exactly what I mean!). I know that I often over-think things, but I think it's probably better to be *more* of an over-thinker than less of an over-thinker---so much more harm comes from thoughtlessness, I think (not using the word think anymore in this email, promise).

I appreciate your perspective on the ways to engage students in surrounding things like just showing the base/simplest level of respect that is addressing people as they want to be addressed. I'm in my millionth year of teaching (it feels like) and in my 9th year at UWT, and I have to say that, overall, students' openness to changing norms surrounding pronouns has been one of the quickest changes I've seen since I started teaching. Each quarter, it feels like more and more students are using a spectrum of pronouns and referents (for themselves and for each other) by default....it's been actually such a pleasant surprise for me to witness and hear it happening without any instruction from my part. I'm thankful that Claudia's transphobia is increasingly LESS common among our students....

And I appreciate the insight on the best approach to correction--it's really helpful. It's so increasingly rare that it's necessary for me to do it with students, and when I do, it's almost always me correcting a mistake rather than challenging purposeful transphobia like Claudia was displaying, so I was really uncertain. I hate the idea of letting intentionally transphobic actions like that slide by but also hate the idea of being a patronizing lib that speaks on behalf of people, if that makes any sense. So, all of that is to say that I appreciate your perspective--thank you!

While I'm emailing you, thanks, too, for the follow-up from your 5/17 class. I am working on the PSC letter and will have it to you, Claudia, and RIck on Monday, and we'll be able to get it sent to Claudia (student) by the end of Monday..... Until then, I hope you have a good weekend!

Andrea
[Quoted text hidden]
--
[Quoted text hidden]

000027

Harner_000036

# APPENDIX F

000028

Ex 31

| | |
|---|---|
| **From:** | Andrea L. Hill <andhill@uw.edu> |
| **Sent:** | Friday, December 8, 2023 2:42 PM PST |
| **To:** | Claudia Arias <arias1@uw.edu> |
| **Subject:** | Professional Standards Committee Communication |
| **Attachments:** | Professional Standards Committee Decision Letter - Claudia Arias.pdf |

Hello Claudia,

Attached here please find communication from the Professional Standards Committee of the School of Social Work and Criminal Justice. A copy of this letter has also been mailed to the address you have on file with the university.

Thank You,

Dr. Hill

--
**Andrea L. Hill, PhD**
Associate Teaching Professor
School of Social Work and Criminal Justice
University of Washington Tacoma
Box 358425
1900 Commerce Street
Tacoma, WA 98402
253-692-4943

000029
UWT_000880

# W SCHOOL OF SOCIAL WORK & CRIMINAL JUSTICE

UNIVERSITY *of* WASHINGTON | TACOMA

December 8, 2023

Dear Ms. Arias,

This letter is to inform you that the School of Social Work and Criminal Justice at The University of Washington Tacoma Professional Standards Committee recommends that you are dropped from the Bachelor of Arts in Social Welfare program due to noncompliance with requirements established by the committee. This recommendation has been received and upheld by the Dean for the School of Social Work and Criminal Justice.

The purpose for convening the Professional Standards Committee was to share concerns about your selected Mini-Zine project topic for the TSOCWF 404, Cultural Diversity and Social Justice course, which you took with Dr. Vern Harner in the Spring of 2023.

On April 20, 2023, you indicated that you wanted to focus your 'Zine class assignment on the issue of "trans" people faking transgender identity to gain access to women's prisons and commit sexual assault. As explained in email communications and in-person conversations with several faculty members in the School of Social Work and Criminal Justice, your argument through the class 'Zine assignment posed concerns and presented assertation about a population that is in direct contrast with social work values, ethical principles, and ethical standards as outlined in the National Association of Social Work (NASW) Code of Ethics. The assertion that individuals with transgender identities are feigned so that they may gain access to facilities to sexually assault biological women portrays transgender women as predatory and violent.

The proposed topic raises several concerns regarding the NASW Code of Ethics values, ethical principles, and ethical standards. The concerns include the lack of adherence to the following:

- Value: *Social Justice*
  Ethical Principle: *Social Workers Challenge Social Injustice*
  Ethical Standard 1.05: *Cultural Competence and Social Diversity*
  Social workers are expected to promote social justice and demonstrate cultural competence through an understanding of the diverse backgrounds and experiences of individuals. Social workers are expected to demonstrate awareness and cultural humility by engaging in critical self-reflection, which includes understanding one's own bias and engaging in self-correction when necessary. Accusations against "trans" individuals such as those in your chosen Mini-Zine project topic perpetuate harmful stereotypes and reinforce biases. Your refusal to accept feedback and reflect on the implications of advancing such beliefs demonstrate an unwillingness to engage in reflexive work that is expected of social work students and professionals.

- Value: *Dignity and Worth of Persons*
  Ethical Principle: *Social Workers Respect the Inherent Dignity and Worth of a Person*
  Ethical Standard 1.05: *Cultural Competence and Social Diversity*
  Ethical Standard 6.04: *Social and Political Action*

000030

UWT_000881

Social workers are to treat each person in a respectful manner and remain mindful of individual differences and cultural and ethnic diversity. Social workers are expected to prevent and eliminate domination of, exploitation of, and discrimination against any person, group, or class based on race, ethnicity, national origin, color, sex, sexual orientation, gender identity or expression, age, marital status, political belief, religion, immigration status, or mental or physical ability. It is imperative that social workers reflect and approach discussions involving all individuals, including transgender people with respect for their humanity, rather than perpetuating the notion that transgender people are dishonest about their identity for the purpose of perpetrating harm on others.

Despite several opportunities over a span of six months to demonstrate a willingness and capability to adhere to professional expectations and standards, you remained unwilling to engage in any reflection of the value and ethical concerns presented in your 'Zine assignment. Outlined are the in-person conversations and email communications faculty had with you about concerns with your topic and unwillingness to reflect.

When you first introduced the topic in class on April 20, 2023, Dr. Harner affirmed that although the issue of violence against women in prison is absolutely important and one that could be considered for the project, the specific angle you suggested—that transgender people were "pretending to be trans" to be housed in prisons with women in order to sexually assault them—was not an appropriate topic because it was a harmful narrative to transgender communities and in conflict with social work values, ethical principles, and ethical standards.

During individual student check-ins during class on April 27, 2023, Dr. Harner learned that you had not modified your topic at all, despite earlier instruction. You were again informed that this topic was not appropriate and was not aligned with social work professional values and ethics. When Dr. Harner told you that the conversation would have to continue outside of class because they had additional students to check-in with that day, you told them that you would stop by their office and left the class. You did not stop by Dr. Harner's office to continue the conversation, and Dr. Harner sent you a follow-up email on April 27, 2023 that explained why the chosen topic was not appropriate and shared links to additional resources to review. Included in the links were NASW resources, specifically as they relate to transgender communities.

When conversations did not lead to a reconsideration of your topic and you did not arrange to stop by Dr. Harner's office to discuss the matter further, on April 27, 2023, Dr. Harner submitted a referral to the Professional Standards Committee. On May 1, 2023, you received notification of the pending Professional Standards Committee meeting.

Between May 1, 2023 and May 16, 2023, you engaged in additional conversations with social work faculty regarding the problematic nature of your topic. During your meeting with Dr. Claudia Sellmaier on May 2, 2023, you showed her your 'Zine draft and she explained why it was problematic. On May 11, 2023, you met with your Faculty Advisor, Assistant Teaching Professor Chris Barrans, who gave you feedback on your selected topic as it relates to social work values. In addition, Professor Barrans shared information regarding the Professional Standards Committee process.

The time period between your initial introduction of the 'Zine topic on April 20, 2023 and convening of the Professional Standards Committee meeting on May 16th, three Social Work faculty members engaged in a conversation with you on five separate occasions. Dr. Harner discussed this issue with you twice in class and once via email. Dr. Sellmaier and Professor Barrans discussed the issue with you in two separate meetings. Each interaction included discussions about the problematic nature of your topic choice and ways in which it conflicted with NASW values, ethical principles, and ethical standards.

2

000031
**UWT_000882**

The first Professional Standards Committee meeting was convened on May 16, 2023. In attendance were committee co-chair, Dr. Andrea Hill, committee member Dr. Claudia Sellmaier, Dr. Vern Harner (referring professor), Ms. Roseann Martinez (your selected student advocate), and yourself. Committee member Professor Rick Butt was unable to attend. The committee gave you an opportunity to speak so they may learn from you directly. The Committee discussed their concerns and explained that your choice of assignment does not align with social work's professional values regarding gender, inclusive of trans individuals. Noting that ethical social work practice requires a self-awareness and willingness to acknowledge and take responsibility for behavior and to practice respectful, professional communication at all times, the committee expressed concerns that multiple conversations with faculty were met an unwillingness to engage in the professional reflective communication expected of social work students. The committee also expressed concerns that in the meeting there was not a willingness to engage in self-reflection nor acknowledge of how the topic potentially perpetrates a harmful narrative about the transgender community.

In the Professional Standards Committee meeting conversation, the committee members explained that you would be given the opportunity to demonstrate professionalism and growth via the completion of two essays. The first essay was to focus on social work profession's responsibilities to transgender individuals and the second was to focus on ethical professional behavior and communication. You were informed that you would receive a formal letter outlining the essay requirements and told that completion would be required for degree progress. When, at the close of the meeting, you were asked if you had any additional questions or concerns, and you indicated that you did not, the meeting ended.

On May 24, 2023, you received a formal letter from the Professional Standards Committee outlining the May 16, 2023 meeting proceedings and detailing the two essays' requirements. This letter included links to all necessary resources and information that would be required to complete the required essays, which were to be submitted no later than October 31, 2023. The purpose of these essays was to give you an opportunity to demonstrate reflexivity, learning, and growth by reflecting on social work's responsibilities to transgender people through:

1) An essay discussing the "Social Work Speaks" discussion of the NASW's stated commitments to trans issues, the issues faced by incarcerated transgender individuals, and your own understandings of this community and
2) An essay discussing the importance of ethical and professional behavior and communication in educational settings and in your own practice and future academic work.

The purpose of the Professional Standards Committee process and required essays was to move forward in a fertile and productive way that deepened your own practice as a social work student and built your understanding of the discipline's ethical standards and commitments.

During the summer of 2023, you emailed the Professional Standards Committee twice more to again question why your selected topic was problematic. This was a question that had been answered multiple times in conversations with Dr. Harner, Dr. Sellmaier, Professor Barrans, and the Professional Standards Committee. Moreover, the questions you posed over the summer were questions that could have been answered by doing the reading intended to assist you with the completion of the first essay requirement. Replies to you over the summer referred you to previous communications and essay requirements as stipulated in the letter you received on May 24, 2023.

On October 31, 2023, you informed the Professional Standards Committee via email that you would not fulfill the requirements established during the May 16, 2023 meeting. Your email did not include any acknowledgement of the concerns raised about your topic selection nor other issues discussed in conversations with social work faculty and the Professional Standards Committee.

3

000032

UWT_000883

The Professional Standards Committee reconvened on November 27, 2023 to discuss your refusal to fulfill the essay requirements. In attendance were committee co-chair Dr. Andrea Hill, committee member Dr. Claudia Sellmaier, committee member Professor Rick Butt, and you. During the meeting, you continued to refuse to reflect on the potential harmful nature of your chosen topic. You adamantly insisted that the problem was never explained to you, despite the many documented conversations that took place during spring 2023. After a nearly 45-minute conversation, the committee informed you that they would deliberate to discuss next steps. You were informed that the committee would be in contact once a recommendation about your status in the program was determined. At the close of the meeting, you were asked if you had additional questions or concerns. You indicated that you did not and the meeting was adjourned.

The decision to recommend a student be dropped from a social work program is not taken lightly and is based on careful and thoughtful consideration. Our commitment to maintaining standards of professional conduct and ethical practice is essential in preparing students for careers in social work. As part of our program, students are expected to demonstrate adherence to social work professional values, ethical principles, and ethical standards that reflect the values and ethics as outline in the NASW Code of Ethics. You were provided a link to the NASW Code of Ethics through the BASW Acceptance and Pre-requisite Form prior to acceptance into the BASW program. You agreed to adhere to the Code as a social work student by your initials on the BASW Acceptance and Pre-requisite Form.

Students graduating from the School of Social Work and Criminal Justice's social welfare program enter a professional field. The ability to articulate and apply social work values, ethics, and standards, engage in professional communication, and perform self-reflection are fundamental requirements and responsibilities in the social work profession. When there are concerns regarding ethical professionalism, students work with the Professional Standards Committee to find a way forward through communication and reflexivity. The process is intended to be non-punitive and a mechanism to give students a chance to learn and grow. Your continued refusal to complete the required essays that would allow you to demonstrate your practice readiness raises serious concerns. Therefore, the Professional Standards Committee concluded that it would be most appropriate to recommend that you are dropped from the Bachelor of Arts in Social Welfare program. The Dean for the School of Social Work has received this recommendation and upholds the decision and has signed this letter in support of the decision.

In making this decision, we consider the impact on your academic and professional future. It is important to note that being dropped from the Bachelor of Arts in Social Welfare major does not preclude you from pursuing other academic paths within the university. We encourage you to schedule a meeting with a university academic advisor to discuss alternative majors or academic options that align with your goals and interests.

Sincerely,

Andrea L. Hill, PhD
Co-Chair, Professional Standards Committee
Associate Teaching Professor
School of Social Work and Criminal Justice

Keva M. Miller, PhD, MSSW
Dean and Professor
School of Social Work and Criminal Justice

cc:     Dr. JaeRan Kim, BASW Program Chair
        Mr. Ryan Kernan, Social Work Program Advisor
        Student file

4

**CERTIFICATE OF SERVICE**

I, Mary Alice York, certify as follows:

On March 16, 2026, I e-served and e-mailed Claudia Arias'  Claudia Arias' Response to

Motion for Summary Judgment to:

> Seth Bernsten
> Rebecca Singleton
> **Summit Law Group, PLLC**
> 315 Fifth Avenue South, Suite 1000
> Seattle, WA 98104-2682
> sethb@summitlaw.com
> rebeccas@summitlaw.com
> paigeh@summitlaw.com
> dominiqueb@summitlaw.com
>
> *Attorneys for Defendants UWT, Harner,*
> *Sellmaier, Hill, and Miller*

I certify under penalty of perjury under the laws of the State of Washington that the above

information is true and correct.

DATED March 16th, 2026, at Glendive, Dawson County, Montana.

III Branches Law, PLLC

*Mary Alice*

_____
Mary Alice York
File Clerk