UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CLAUDIA ARIAS, | CASE NO. 3:25-cv-05079-DGE |
| Plaintiff, | ORDER DENYING PLAINTIFF'S |
| v. | SECOND MOTION TO AMEND |
| | FIRST AMENDED COMPLAINT |
| UNIVERSITY OF WASHINGTON | (DKT. NO. 63) |
| TACOMA et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff's second motion to amend her first amended complaint.  (Dkt. No. 63.)  For the reasons discussed herein, Plaintiff's motion for leave to amend is DENIED.[1]

**I      BACKGROUND**

**A.  Procedural Background**

---

[1] The Court previously identified at the hearing held on February 4, 2026 that the Court planned on denying the motion.

ORDER DENYING PLAINTIFF'S SECOND MOTION TO AMEND FIRST AMENDED COMPLAINT (DKT. NO. 63) - 1

On January 10, 2025, Plaintiff filed her complaint in Pierce County Superior Court bringing ten causes of action.  (Dkt. No. 1-1.)  The matter was removed to this Court on February 3, 2025.  (Dkt. No. 1.)  On February 8, 2025, Defendants moved to dismiss all but one of Plaintiff's claims.  (Dkt. No. 12.)  While the motion to dismiss was pending, on May 9, 2025, the Court held a hearing to set trial and pretrial dates.  (Dkt. No. 27.)  The Court ordered, among other dates, the deadline for amending pleadings was June 20, 2025; motions related to discovery were due January 23, 2026, discovery was to be completed by January 28, 2026, dispositive motions were due February 23, 2026, and trial would begin on June 22, 2026.  (*Id*.)

On August 11, 2025, the Court granted Defendants' motion and dismissed all of Plaintiff's claims except her claim brought under 42 U.S.C. § 1983 for retaliation under the First Amendment.  (Dkt. No. 31.)  On August 22, 2025, Plaintiff moved for reconsideration.  (Dkt. No. 32.)  Plaintiff also moved to amend her complaint on August 29, 2025.  (Dkt. No. 34.)  The Court denied Plaintiff's motion for reconsideration on September 22, 2025.  (Dkt. No. 39.)  The Court granted in part and denied in part Plaintiff's motion for leave to file an amended complaint on November 17, 2025.  (Dkt. No. 49.)  The Court denied Plaintiff's attempt to revive her Washington Law Against Discrimination ("WLAD") claim.  (*Id*. at 7.)  Plaintiff was instructed to file an amended complaint with "all facts and assertions relevant to her causes of action for: (1) retaliation under the First Amendment; (2) tortious interference with a contractual relationship or business expectancy to the extent it is based on her First Amendment retaliation claim; and (3) breach of contract to the extent it is based on her First Amendment retaliation claim."  (*Id*. at 20.)  Plaintiff then filed a First Amended Complaint on December 1, 2025 and a second "First Amended Complaint" on December 2, 2025.  (Dkt. Nos. 55, 56.)  The Court

ORDER DENYING PLAINTIFF'S SECOND MOTION TO AMEND FIRST AMENDED COMPLAINT (DKT. NO. 63) - 2

ordered that Plaintiff's second First Amended Complaint was to be the operative complaint in this matter. (Dkt. No. 57.)

On January 8, 2026, Plaintiff moved to amend her complaint once more. (Dkt. No. 63.) Plaintiff also moved for a 40-day extension of discovery based in part on this motion to amend; this motion has been denied with two limited exceptions. (*See* Dkt. Nos. 69 at 6; 74.)

Plaintiff seeks to revive her WLAD claim. (Dkt. No. 63 at 38.) Plaintiff asserts she "had not yet received nor digested the volumes of documents produced over the summer, and none of the defendants had been deposed" when she first moved to amend her complaint in August 2025; she has "now identified key documents and testimony included in her proposed second amended complaint specific to discriminatory animus." (*Id*. at 3.) Plaintiff also argues the Court applied the wrong legal standard in granting Defendants' motion to dismiss her WLAD claim: "[T]he Court insists defendants had to know [Plaintiff's] specific religious beliefs to have treated her disparately, when instead the Court should hold it sufficient that [Plaintiff] was not of the same sexual orientation or sexual identity as defendant Harner and that defendants would not allow [Plaintiff] to express herself in a way that aligned with her non-transgender identity." (*Id*. at 4.)

Defendants object to Plaintiff's motion to amend her complaint as untimely and futile. (Dkt. No. 66.) The motion is fully briefed. (Dkt. Nos. 66, 70.)

**B. Factual Background**

While Plaintiff has now asserted her WLAD claim in her original complaint, her motion for reconsideration, her first motion to amend her complaint, and now this second motion to amend her complaint, Plaintiff's newest proposed amended complaint remains difficult to decipher. Plaintiff asserts, at various points, her claim is based on her status as a "cisgender female with conservative religious and cultural beliefs and forms of expression," "a cisgender

ORDER DENYING PLAINTIFF'S SECOND MOTION TO AMEND FIRST AMENDED COMPLAINT (DKT. NO. 63) - 3

Latino fundamental Christian female," "a fundamental Christian cis-gender female Latino for whom English was a second language," and "a cisgender fundamental Christian female Latino immigrant whose viewpoint did not align with Harner's transgender viewpoint." (Dkt. No. 63 at 39, 42, 52.) It is unclear whether Plaintiff seeks to bring multiple claims (based on her sex/sexual orientation, cisgender status, political viewpoint, religion, Hispanic/Latina culture, non-native English speaker status, or general viewpoint on transgender identity), or only some of these claims, or a claim combining some or all of these identities.

The basic facts of this matter are largely known.[2] However, Plaintiff does assert certain new facts. First, prior to the May 16, 2023, Professional Standards Committee ("PSC") meeting, Plaintiff did not "self-ascribe" her pronouns when invited by Harner to do so. (Dkt. No. 63 at 39.) Second, midway through the course, on April 11, 2023, Harner received an anonymous email critical of "observed hypocrisy of Harner's biases and silencing of students' viewpoints." (*Id*.) Plaintiff did not send the email. (*Id*.) Third, on April 20, 2023, Plaintiff discussed her proposed zine with Harner; Harner reacted negatively and identified at least one of Plaintiff's potential sources as not credible. (*Id*. at 39–40.) That evening, Harner first contacted Sellmaier to express concern Plaintiff's project was "transphobic"; Harner also expressed concern Plaintiff was the one who sent the anonymous email. (*Id*. at 40.)

Plaintiff also adds certain new facts relating to the May 16, 2023 PSC meeting and its aftermath. Prior to the meeting, Defendants denied a request from Arias to "bring an outside witness" and instead told her she had to bring a "University contact." (*Id*. at 47.) Her university contact told her before the meeting to be "humble and apologetic" and that, because Defendants

---

[2] A complete description of the factual background underlying Plaintiff's claims has been previously identified and will not be recited in full. (*See* Dkt. Nos. 31 at 2–5, 49 at 2–4.)

ORDER DENYING PLAINTIFF'S SECOND MOTION TO AMEND FIRST AMENDED COMPLAINT (DKT. NO. 63) - 4

have PhDs, they "hold all the power." (*Id*.)  At the PSC meeting, Plaintiff stated Defendants "were not respecting her religious beliefs." (*Id*. at 46.)  Hill also told Plaintiff to refer to Harner using "they" pronouns not "she" pronouns; Hill later followed up with Harner expressing concern she had been overbearing. (*Id*. at 48–49.)  The parties discussed Arias writing two essays: "one on social work values related to gender identity from a social work speaks article and one focused on professional communication," but did not reach any agreement about actions in the meeting. (*Id*. at 47.)

After the meeting, in communications between Defendants, Harner suggested the essays "speak[] directly to trans inclusion." (*Id*. at 50.)  The other defendants agreed and assigned Plaintiff two essays to complete. (*Id*.)  Plaintiff was not provided any "established criteria" when she was assigned the essays. (*Id*.)  Only one other student had to complete essays and "voluntarily dropped the program." (*Id*.)  Plaintiff repeatedly questioned the punishment, argued "the accusations against her were false and that labeling her transphobic was harmful," and stated as "a Latina who escaped Civil War in El Salvador, a mother, and student [she] should not be treated 'in a condescending manner.'" (*Id*. at 50–51.)  Plaintiff also informed Defendants, "she was suffering 'microaggressions and discrimination' and her expression was being suppressed in an academic environment." (*Id*. at 51.)  Hill expressed concern in communications between Defendants that Plaintiff was part of a "coordinated attack[]" from a "transphobic outside group[]." (*Id*. at 49.)  Plaintiff asserts Defendants did not engage her in the proper "interactive process." (*Id*. at 50.)  Ultimately Plaintiff failed to complete the essays and was terminated from the program.

## II    ANALYSIS

### A.  Legal Standard

ORDER DENYING PLAINTIFF'S SECOND MOTION TO AMEND FIRST AMENDED COMPLAINT (DKT. NO. 63) - 5

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). While courts favor granting leaves to amend, five factors can lead courts to deny such motions: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) [if] the plaintiff has previously amended [their] complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"). "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

**B. Granting Plaintiff's motion to amend her complaint would be prejudicial to Defendants.**

Here, the prejudice that would be caused to Defendants combined with the fact Plaintiff previously amended her complaint is sufficient to deny Plaintiff's motion. Plaintiff argues she has fewer resources and "has expended considerable resources and devoted significant time building her case," and therefore, that time should not be "a weapon to deny access to justice." (Dkt. No. 70 at 1.) But it is undisputed Plaintiff participated in and has known about the Court's scheduling order in effect since May 9, 2025. (Dkt. No. 26.) It is further undisputed Plaintiff has already amended her complaint once. (Dkt. Nos. 34, 49.)

Moreover, when a plaintiff files a motion to amend "on the eve of the discovery deadline" and where "[a]llowing the motion would have required re-opening discovery, thus delaying the proceedings[,] [t]he district court [does] not abuse its discretion in denying the

ORDER DENYING PLAINTIFF'S SECOND MOTION TO AMEND FIRST AMENDED COMPLAINT (DKT. NO. 63) - 6

motion to amend." *Solomon v. North American Life and Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998); *see also Align Technology, Inc. v. Orthoclear, Inc.*, No. C-05-2948 MMC, 2006 WL 1127868, *3 (N.D. Cal. Apr. 26, 2006) ("The Ninth Circuit has repeatedly affirmed orders denying motions for leave to amend, where granting the motion would have necessitated reopening discovery and delaying the proceedings, reasoning that under such circumstances the defendant would have been prejudiced."). Plaintiff filed a motion to amend less than a month before the close of discovery with dispositive motions due less than a month later.[3] Accordingly, the Court finds granting Plaintiff leave to amend would cause prejudice to Defendants.

**C. Plaintiff fails to state a claim on the merits.**

Moreover, on the merits, the proposed amended complaint does not state a WLAD claim. This is Plaintiff's fourth attempt at stating her WLAD claim. (*See* Dkt. Nos. 1-1, 32, 34, 63.) At the Court's February 4, 2026 hearing, counsel for Plaintiff asserted Plaintiff is bringing WLAD claims only on the basis of her sex/sexual orientation and religion. She further asserted the two claims should not be "siloed" from one another. Finally, Plaintiff asserts the *McDonnell Douglas* framework should apply.

But Plaintiff continues not to address the deficiencies identified by this Court. First, Plaintiff provides no case law supporting her proposition that her claims should be considered together rather than separately.

Second, the Court has continually identified that Plaintiff fails to allege facts indicating "Defendants knew of Plaintiff's particular religious or cultural beliefs." (Dkt. No. 49 at 5.)

---

[3] Plaintiff requested a 40-day extension of discovery. (Dkt. No. 69.) Dispositive motions are due a month after the deadline to submit motions and less than a month after the close of discovery. (Dkt. No. 27.) As emphasized by the Court in its initial scheduling conference, extensions to dispositive motions will be strongly disfavored because it, in turns, requires delays to trial.

ORDER DENYING PLAINTIFF'S SECOND MOTION TO AMEND FIRST AMENDED COMPLAINT (DKT. NO. 63) - 7

When asked directly at the hearing on February 4, 2026, counsel for Plaintiff conceded that nothing in the proposed complaint indicates Plaintiff informed Defendants of her religious beliefs.  Instead, the argument is that the nexus between Plaintiff's alleged "protected classifications" and Defendants' actions "was obvious."  (Dkt. No. 70 at 6.)  Plaintiff also argues, without citing to any relevant case law, that once Plaintiff made any reference to religious discrimination, Defendants had an obligation to affirmatively inquire further about why Plaintiff felt religious discrimination was occurring.  (*Id*.)[4]

Third, Plaintiff argues she was discriminated against because of her sex or sexual orientation because, by telling her she had to use the term "they" to refer to Harner and by finding her draft zine inappropriate, Defendants were not permitting her to express her views on gender and gender identity.  (Dkt. No. 70 at 2–3.)  But Plaintiff fails to explain why her views on gender and gender identity are part of Plaintiff's protected "sex/sexual orientation."  The Court considers Plaintiff's views on gender and gender identity as Plaintiff's viewpoint on gender, and viewpoint is not a protected classification under the WLAD.

Fourth, Plaintiff asserts that the *McDonnell Douglas* burden shifting analysis should apply in this case.  But Plaintiff does not provide any authority to support the application of the *McDonnell Douglas* framework to Plaintiff's WLAD claim.[5]

---

[4] Plaintiff cites *S.S. v. Alexander*, 177 P.3d 724 (Wash. Ct. App. 2008), for the proposition that "[de]liberate indifference to allegations may be sufficient for purposes of liability."  (*Id*. at 6–7.)  But *S.S.* involved a Title IX claim against the University of Washington, a recipient of federal funding.  Under Title IX, "'recipients of federal funding may be liable for 'subject[ing]' their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority.'"  *S.S.* 177 P.3d at 735 (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646–647 (1999)).  This matter does not involve a Title IX claim.

[5] Notably, in Plaintiff's motion for reconsideration of the Court's initial decision granting Defendants' motion to dismiss, Plaintiff argued only that the Court "misunderstood [Plaintiff] in

ORDER DENYING PLAINTIFF'S SECOND MOTION TO AMEND FIRST AMENDED COMPLAINT (DKT. NO. 63) - 8

**III    ORDER**

Having considered Plaintiff's motion to amend her amended complaint (Dkt. No. 63), the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Plaintiff's motion to amend her amended complaint (Dkt. No. 63) is DENIED.

Dated this 23rd day of March, 2026.

David G. Estudillo
United States District Judge

---

her presentation of the facts" but raised no argument on the Court's application of the law.  (Dkt. No. 32 at 3.)

ORDER DENYING PLAINTIFF'S SECOND MOTION TO AMEND FIRST AMENDED COMPLAINT (DKT. NO. 63) - 9